**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| VLSI TECHNOLOGY LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>INTEL CORPORATION,<br><br>　　　　Defendant | **Lead Case**: 1:19-cv-977-ADA<br><br>(*Consolidated for pretrial purposes only with* Nos. 6:19-cv-254-ADA, 6:19-cv-255-ADA, 6:19-cv-256-ADA) |

**DEFENDANT INTEL CORPORATION'S BRIEF REGARDING WHETHER
THE COURT MAY RETRANSFER THE CASE TO THE WACO DIVISION**

# TABLE OF CONTENTS

ARGUMENT ................................................................................................................. 3

I.     The Court's Original Transfer Ruling Cannot Be Disturbed Except Under the "Most
       Impelling and Unusual Circumstances".......................................................................... 3

II.    The Circumstances that Led the Court to Find that Austin Is "Clearly More Convenient"
       than Waco Continue to Exist .......................................................................................... 4

III.   The Closure of the Austin Courthouse Does Not Warrant Retransfer............................. 5

       A.     The Temporary Closure of the Austin Courthouse Does Not Frustrate the Purpose
              of the Court's Original Transfer Order ................................................................ 5

       B.     It Is Impossible to Predict Whether the Austin Courthouse Will Remain Closed in
              January ................................................................................................................ 7

       C.     Even if the *Cragar* Standard Were Satisfied, Retransfer Would Be Inappropriate
              Because It Would Not Promote the Parties' or the Public's Interests ................... 8

IV.    It Would Be Unfairly Prejudicial to Intel to Retransfer the Case at this Late Juncture...... 9

V.     VLSI's Proposal for Trying the Case in November 2020 Is Unsupported and Logistically
       Unworkable ................................................................................................................ 10

CONCLUSION.............................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adobe Inc.*,
-- F. App'x --, 2020 WL 4308164 (Fed. Cir. 2020)................................................................9

*Campbell v. Dynamic Cranes, LLC*,
2005 WL 2562091 (S.D. Tex. 2005) ......................................................................................6

*In re Cragar Industries, Inc.*,
706 F.2d 503 (5th Cir. 1983) ....................................................................................... *passim*

*Emke v. Compana LLC*,
2009 WL 229965 (N.D. Tex. 2009)........................................................................................7

*Exist, Inc. v. Vermont Country Store, Inc.*,
2019 WL 5310476 (D. Vt. 2019) ...........................................................................................3

*Fairstein v. Netflix, Inc.*,
2020 WL 5701767 (M.D. Fla. 2020) ......................................................................................7

*Green Aire for Air Conditioning W.L.L. v. Salem*,
2020 WL 4734909 (E.D. Cal. 2020)........................................................................................7

*HAB Carriers, Inc. v. Arrow Truck Sales, Inc.*,
2009 WL 2589108 (D.N.J. 2009) ....................................................................................4, 6, 8

*JTH Tax, Inc. v. Mahmood*,
2010 WL 2175843 (N.D. Miss. 2010) ......................................................................... *passim*

*Mohamed v. Mazda Motor Corp.*,
90 F. Supp. 2d 757 (E.D. Tex. 2000) .....................................................................................9

*Nunes v. Cable News Network, Inc.*,
2020 WL 2616704 (E.D. Va. 2020).....................................................................................6, 8

*Odem v. Centex Homes, Inc.*,
2010 WL 2382305 (N.D. Tex. 2010)......................................................................................9

*Plywood Panels, Inc. v. M/V Thalia*,
141 F.R.D. 689 (E.D. La. 1992)..............................................................................................6

*Quicksilver Resources, Inc. v. Eagle Drilling, LLC*,
2008 WL 3165745 (S.D. Tex. 2008) .......................................................................................3

*Robert Bosch Healthcare Systems, Inc. v. Cardiocom, LLC*,
    2014 WL 2702894 (N.D. Cal. 2014) ...................................................................................7

*Russell v. UI International Corp.*,
    685 F. Supp. 172 (N.D. Ill. 1988) .....................................................................................6

*Triad Systems Financial Corp. v. Stewart's Auto Supply, Inc.*,
    47 F. Supp. 2d 1332 (N.D. Ala. 1999) ..............................................................................3

*United States v. Koenig*,
    290 F.2d 166 (5th Cir.1961) .............................................................................................3

*Villegas v. Unate*,
    2015 WL 1540819 (N.D. Tex. 2015).................................................................................1

*Wiedo v. Securian Life Insurance Co.*,
    2020 WL 5219536 (E.D. Ky. 2020) ...............................................................................6, 8

*Zamber v. American Airlines, Inc.*,
    2020 WL 3163037 (N.D. Tex. 2020).............................................................................4, 9

**Statutes**

28 U.S.C. § 1404(a) ......................................................................................................... *passim*

28 U.S.C. § 1404(b) .......................................................................................................................1

**Other Authorities**

*Data*, Tex. Health & Hum. Servs.,
    https://dshs.texas.gov/coronavirus/additionaldata.aspx ...................................................8

John Werner, *Baylor Suspends Football Activities Due to COVID Issues*, Waco
    Tribune-Herald (Oct. 8, 2020) .........................................................................................8

*Texas Covid Map and Case Count*, N.Y. Times,
    https://www.nytimes.com/interactive/2020/us/texas-coronavirus-cases.html......................8

Waco-McLennan Cnty Pub. Health Dist., https://covidwaco.com/county/....................................8

## PRELIMINARY STATEMENT

The Court has asked whether it has the authority to **retransfer** this case to Waco, after having already transferred from that division based on the finding that it is "clearly more convenient" to litigate in Austin.  The Court does not have such authority on the facts here.

Although a court may transfer a case to another division if it finds that division is "clearly more convenient" under 28 U.S.C. § 1404(a),[1] the Court's discretion to do so here is limited by its original transfer ruling, which must be treated as law of the case.  That ruling cannot be disturbed except under the "most impelling and unusual circumstances," for example, when unanticipatable post-transfer events would frustrate the purpose of the original transfer.  *In re Cragar Indus., Inc.*, 706 F.2d 503, 505 (5th Cir. 1983).  Such events are those occurring within the litigation that make the underlying goal that the transfer ruling sought to achieve in the first place (e.g., consolidation with a related case) unachievable (e.g., where the related case is subsequently dismissed).  Such circumstances are not present here.

Instead the circumstances that led the Court to find that Austin is "clearly more convenient" than Waco continue to exist.  The Court predicated its ruling on Austin's status as home to relevant documents and witnesses, including seventeen of the eighteen living inventors and NXP (the company from which the asserted patents originated), as well as Austin's localized interest in deciding the case.  The basis for the Court's original ruling is thus just as sound today as it was when the Court first transferred the case—in fact, it is even more so now that VLSI has added an additional Austin-based witness to its trial witness list since the Court's original ruling (there are now six individuals on the parties' trial witness lists who reside in Austin).

---

[1]  In cases where **both** parties agree, a court may transfer to another division under 28 U.S.C. § 1404(b).  But Intel does not consent to intra-district retransfer back to Waco, and so that provision does not apply here.  *See Villegas v. Unate*, 2015 WL 1540819, at *3 n.5 (N.D. Tex. 2015) (denying intra-district transfer and noting that § 1404(a), not § 1404(b), applies when one party does not consent).

The temporary closure of the Austin courthouse due to COVID-19, and thus the possibility that trial may be delayed, does not provide a basis to deviate from the Court's original transfer ruling for several reasons.  First, COVID-19 is an external crisis not specific to this case. It is therefore quite unlike the litigation-based events that courts have found sufficient to warrant retransfer (e.g., dismissal of a related case).  In any event, time to trial was not among the considerations on which the Court based its original transfer ruling—the Court instead relied on Austin's connection to the patents, the witnesses, and the evidence.  Thus, any delay in going to trial in Austin does not frustrate the underlying reason for transfer there in the first place. Further, the Court already found that Austin has a localized interest in deciding this case.  It contravenes the public interest to have Waco jurors decide Austin issues under normal circumstances, and especially now, when such jurors would have to risk their health and safety.

Second, it would be inappropriate for the Court to base its retransfer determination on a contingency—i.e., the Austin courthouse being unavailable for trial in January—that might not ever occur.  Intel hopes that both the Austin and the Waco courthouses will be open in January. But given the uncertain nature of the pandemic, such things cannot be predicted with any reasonable level of certainty.

Third, Intel has relied on the original transfer decision and would be significantly prejudiced if the case were retransferred to Waco.  For the past year, Intel has developed its defenses on the assumption that the case would be tried in Austin.  It has taken discovery, adduced evidence, and prepared for trial in reliance on the Court's original transfer ruling. VLSI, by contrast, would not be prejudiced if the Court were to retain the case in Austin.  VLSI seeks primarily monetary damages in this case, and the technology involved is relatively old— the asserted patents were issued between 2009 and 2012, and Intel's accused products were

2

introduced as early as 2012.  VLSI would consequently suffer no prejudice even if there were a delay of a month (or a few months).

In sum, these are not circumstances that would authorize or justify retransfer to Waco. The Court should retain the case in the Austin Division.

## ARGUMENT

### I.    The Court's Original Transfer Ruling Cannot Be Disturbed Except Under the "Most Impelling and Unusual Circumstances"

The Court's original transfer ruling must be treated as law of the case and thus cannot be lightly disturbed.  *See In re Cragar Indus., Inc.*, 706 F.2d 503, 505 (5th Cir. 1983) ("If [a] motion to transfer is granted and the case is transferred to another district, the transferee-district should accept the ruling on the transfer as the law of the case … ." (quoting *United States v. Koenig*, 290 F.2d 166, 173 n.11 (5th Cir.1961), *aff'd*, 396 U.S. 121 (1962))); *Exist, Inc. v. Vt. Country Store, Inc.*, 2019 WL 5310476, at *4 (D. Vt. 2019) ("Motions to retransfer are highly disfavored … ."); *cf. Quicksilver Res., Inc. v. Eagle Drilling, LLC*, 2008 WL 3165745, at *5 (S.D. Tex. 2008) (denying second transfer motion and noting that the "[p]olicies supporting the law of the case doctrine apply with even greater force to transfer decisions," and that "principles of law of the case should be applied to promote finality in venue disputes").

Indeed, once a motion to transfer is granted, the transferee court "should not re-transfer 'except under the most impelling and unusual circumstances.'"  *Cragar*, 706 F.2d at 505 (quoting *Koenig*, 290 F.2d at 173 n.11).  Such circumstances arise when "unanticipatable post-transfer events frustrate the original purpose for transfer."[2]  *Id.*  By their nature, unanticipatable events are extremely rare.  *See Triad Sys. Fin. Corp. v. Stewart's Auto Supply, Inc.*, 47 F. Supp. 2d 1332, 1338 (N.D. Ala. 1999) ("[R]e-transfer of a case is, and should be, a highly unusual

---

[2]  Such circumstances can also arise where the original transfer ruling is "manifestly erroneous." *Cragar*, 706 F.2d at 505.  But nobody contends that is the case here.

event.  A re-transfer should not be ordered unless the circumstances are exceptional." (citing *Cragar*, 706 F.2d at 503)).   Such events are those unforeseeable circumstances within the litigation that occur after the transfer ruling and that change the dynamics of the case in a way that undermines the very reason for transferring in the first place.  *JTH Tax, Inc. v. Mahmood*, 2010 WL 2175843, at *2 (N.D. Miss. 2010).  The moving party bears the burden to show that such events exist by clear and convincing evidence.  *HAB Carriers, Inc. v. Arrow Truck Sales, Inc.*, 2009 WL 2589108, at *1 (D.N.J. 2009).

Even where the *Cragar* standard is met, moreover, a court must still perform a § 1404(a) analysis to ensure that retransfer would promote the parties' and the public's interests.  *See HAB Carriers*, 2009 WL 2589108, at *3-4 ("While the Fifth Circuit in *Cragar* did not consider whether retransfer would be prejudicial to the non-moving party, some district courts have considered the parties' private interest factors before determining that retransfer was appropriate."); *JTH Tax*, 2010 WL 2175843, at *2 (after finding that the *Cragar* standard was met, analyzing the private and public interest factors under § 1404(a)); *see also Zamber v. Am. Airlines, Inc.*, 2020 WL 3163037, at *5 (N.D. Tex. 2020).

## II.    The Circumstances that Led the Court to Find that Austin Is "Clearly More Convenient" than Waco Continue to Exist

On October 7, 2019, the Court transferred this case from Waco to Austin, finding that "the Austin Division is 'clearly more convenient' than the Waco Division."  (D.I. 78, at 10.) That ruling was based on the following facts:  (1) Intel has a campus in Austin, which employs Austin residents, (2) most of the patents originated in Austin, where third party NXP is based, and documents are therefore more easily accessible there, (3) seventeen of the eighteen living inventors reside in Austin, while none resides in Waco, (4) "the Austin Division has a greater localized interest" than Waco in deciding the case, and (5) Austin is more convenient "from a

traffic point-of-view." (*Id.* at 5-10.)  Notably, time to trial was not among the bases for the Court's transfer ruling.

The transfer ruling was correct, and the underlying bases for transfer from Waco to Austin remain just as sound today as they were one year ago.  If anything, the current circumstances make Austin even ***more*** appropriate for trial now.  Since the Court's ruling, VLSI has added an Austin-based witness—Cindy Simpson, VLSI's second of two employees—to its trial witness list.  There are therefore six Austin-based individuals that the parties may call at the first trial.  Further, Intel may need access to its Austin facility during trial—e.g., to set up source code computers and meet with Intel personnel.  Thus, Austin is even more relevant to the case today than it was one year ago.

## III.    The Closure of the Austin Courthouse Does Not Warrant Retransfer

The only changed circumstance since the Court's original ruling is the current closure of the Austin courthouse in November due to COVID-19.  But, while the pandemic qualifies as an unanticipatable post-transfer event, it does not frustrate the original purpose for transfer from Waco to Austin, nor would retransfer promote the parties' or the public's interests.  It therefore cannot serve as the basis for retransfer under the *Cragar* standard.

### A.    The Temporary Closure of the Austin Courthouse Does Not Frustrate the Purpose of the Court's Original Transfer Order

In the few cases in which courts have found retransfer warranted, a post-transfer ***litigation*** event made the goal that the transfer order sought to achieve unrealizable.  In *JTH Tax*, for example, the original transfer ruling was predicated on the fact that a related case was then-pending in the transferee forum, and consolidation of the cases would "expedite the proceedings and facilitate disposition of the disputes between the parties."  2010 WL 2175843, at *1. Subsequent to the transfer, however, the transferee court remanded the related case to state court.

5

*Id.* at *2.  At that point, because the two actions could no longer be consolidated, "the original purpose of the transfer—consolidation of the two actions for judicial economy—[was] frustrated" such that the *Cragar* standard was satisfied.[3]  *Id.*; *see also, e.g.*, *Russell v. UI Int'l Corp.*, 685 F. Supp. 172, 176 (N.D. Ill. 1988) (retransferring where consolidation was no longer possible); *Plywood Panels, Inc. v. M/V Thalia*, 141 F.R.D. 689, 690-91 (E.D. La. 1992) (retransferring where third-party complaints filed after original transfer presented significant personal jurisdiction problems in the transferee forum); *HAB Carriers*, 2009 WL 2589108, at *2-3 (retransferring after a party in the originally transferred case was unexpectedly dismissed).

The circumstances here are not at all analogous.  First, the pandemic, which resulted in the closure of the Austin courthouse in November, is not a litigation-based event.  It is an external crisis that affects all cases in all venues and does not disproportionately affect this particular case, let alone the Court's original transfer ruling in this case.  *Cf. Wiedo v. Securian Life Ins. Co.*, 2020 WL 5219536, at *7 (E.D. Ky. 2020) (noting in § 1404(a) context that "[t]he present pandemic is ubiquitous and undoubtably placing a strain on courts across the country," and rejecting "speculation that the court systems in the two venues are affected disproportionately"); *Nunes v. Cable News Network, Inc.*, 2020 WL 2616704, at *6 n.3 (E.D. Va. 2020) (noting that the court has, "like most courts in the country, been affected by the pandemic … , and the magnitude of any delays in trying the case [elsewhere] due to the pandemic is not likely to be so significant").  Intel is aware of no case in which any court has retransferred based on circumstances such as these.[4]

---

[3]  The court went on to analyze whether transfer would be appropriate under § 1404(a).  *See* 2010 WL 2175843, at *2.

[4]  Although some courts have considered natural crises (e.g., COVID-19 and Hurricane Katrina) to be relevant to an ***original*** transfer analysis under § 1404(a), *see, e.g.*, *Campbell v. Dynamic Cranes, LLC*, 2005 WL 2562091, at *3 (S.D. Tex. 2005); *Green Aire for Air Conditioning*

Second, any delay in the trial date as a result of the pandemic does not frustrate the purpose of the original transfer.  Even if there were a possibility to try the case sooner in Waco, a later trial date in Austin does not make the underlying goal that the Court's original transfer ruling sought to achieve impossible.  This is because the Court's original transfer ruling was ***not*** predicated on time-to-trial considerations.  Instead, the Court's ruling was predicated on Austin's status as the situs of relevant documents and witnesses, and its interest in deciding the case.  Those factual predicates for the Court's ruling remain present today.   And none of those predicates is negated by the fact that the parties may have to wait longer than originally anticipated to try the case in Austin.  *See Emke v. Compana LLC*, 2009 WL 229965, at *4 (N.D. Tex. 2009) (denying retransfer where certain bases for the original transfer ruling—i.e., "the location of witnesses, and the location of documentary evidence"—had not changed so as to frustrate the purpose of the original transfer); *Robert Bosch Healthcare Sys., Inc. v. Cardiocom, LLC*, 2014 WL 2702894, at *2, 6 (N.D. Cal. 2014) (denying retransfer where "[c]onvenience of this venue provides an independent basis for the transfer").

### B.      It Is Impossible to Predict Whether the Austin Courthouse Will Remain Closed in January

Even if the pandemic, and thus the temporary closure of a courthouse, could be considered an impelling and unusual circumstance sufficient to warrant retransfer as a general matter (which it is not), it would not warrant retransfer here.  It would be speculative to assume that the Austin courthouse will remain closed in January.   Basing a retransfer on which

---

*W.L.L. v. Salem*, 2020 WL 4734909, at *7 (E.D. Cal. 2020); *Fairstein v. Netflix, Inc.*, 2020 WL 5701767, at *7 (M.D. Fla. 2020), Intel is aware of no case in which such considerations were found to be relevant to a ***retransfer*** analysis.  In any event, even these cases support Intel's position because they stand for the proposition that, during the pandemic, "the amount of witness travel ought to be minimized," *Fairstein*, 2020 WL 5701767, at *8, and that "[r]elative court congestion … is only a 'minor factor' in the transfer analysis" that "'alone cannot control the overall balance of this Court's decision on a motion to transfer,'" *Green Aire*, 2020 WL 4734909, at *6-7.

courthouse is open ***now***, when both courthouses are subject to the ***same*** crisis, is inappropriate. *Cf. Wiedo*, 2020 WL 5219536, at *7; *Nunes*, 2020 WL 2616704, at *6.  In fact, a comparison of the current COVID-19 infection rates in the two judicial divisions demonstrates the difficulty in making predictions months in advance.  The COVID-19 infection rate for the last seven days in McLennan County (Waco) is currently worse than in Travis County (Austin).[5]  Thus, if anything, current data counsel in favor of retaining the case in Austin, not retransferring it.

### C.    Even if the *Cragar* Standard Were Satisfied, Retransfer Would Be Inappropriate Because It Would Not Promote the Parties' or the Public's Interests

Even where the *Cragar* standard is met, a court must still perform a § 1404(a) analysis to ensure that retransfer would promote the parties' and the public's interests.  *See HAB Carriers*, 2009 WL 2589108, at *2-3; *JTH Tax*, 2010 WL 2175843, at *2; *Zamber*, 2020 WL 3163037, at *5.  As described above, the Court already found that transfer from Waco to Austin promoted the private and public interest factors, and nothing has changed so as to disturb that finding.  (*See supra* pp. 4-5.)  And even if it were possible for the parties to proceed to trial sooner in Waco, retransfer still would not promote the public's interest.  To the contrary, the public interest counsels in favor of retaining the case in Austin.  It would contravene the public interest to have Waco jurors decide an Austin issue in the best of times.  It would be especially detrimental to the public interest to request that Waco jurors risks their health and safety during a pandemic in order to do so.  In any event, the "perceived ability to more quickly schedule a trial" in one forum over another cannot receive undue weight in the § 1404(a) analysis.  *In re Adobe Inc.*, -- F.

---

[5]    (*See, e.g.*, *Texas COVID-19 Data*, Tex. Health & Hum. Servs., https://dshs.texas.gov/coronavirus/additionaldata.aspx (last visited Oct. 15, 2020, 12:28 PM); *Texas Covid Map and Case Count*, N.Y. Times, https://www.nytimes.com/interactive/2020/us/texas-coronavirus-cases.html (last visited Oct. 15, 2020, 12:26 PM); John Werner, *Baylor Suspends Football Activities Due to COVID Issues*, Waco Tribune-Herald (Oct. 8, 2020), https://wacotrib.com/sports/college/baylor/baylor-suspends-football-activities-due-to-covid-issues/article_e6ba7b6a-09aa-11eb-b974-f72d34914056.html.)

App'x --, 2020 WL 4308164, at *2-3 (Fed. Cir. 2020).  That consideration alone thus cannot

outweigh the many other factors that weigh against retransfer.

Accordingly, even if the *Cragar* standard were satisfied in this case, retransfer would not

promote the parties' and the public's interests.

## IV.    It Would Be Unfairly Prejudicial to Intel to Retransfer the Case at this Late Juncture

Intel would be significantly prejudiced if this case were retransferred to Waco at this late

juncture.  For the past year, Intel has relied on the Court's original transfer ruling in preparing its

case for trial.  For example, Intel examined Austin-based witnesses in depositions assuming that,

if Intel chooses to call them, they will be available for trial.  There is no assurance that such

witnesses would travel to Waco, which is more than 100 miles away from Austin.  Intel has also

spent significant time and effort addressing logistical considerations for holding trial in Austin,

including arranging for hotel and workspace accommodations for its attorneys and witnesses.  In

view of Intel's reliance, it would be unfairly prejudicial to retransfer the case back to Waco just

three months before trial.  *See Odem v. Centex Homes, Inc.*, 2010 WL 2382305, at *2 (N.D. Tex.

2010) (refusing to retransfer where, after the case was originally transferred, "substantial

discovery was conducted by all the parties," and finding that the defendant "would be prejudiced

by retransfer at this late stage of the proceedings"), *adopted*, 2010 WL 2367332 (N.D. Tex.

2010); *cf. Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 760 (E.D. Tex. 2000) (noting

that courts should not transfer cases where the non-moving party would be prejudiced, for

example where transfer is contemplated "on the eve of trial").

It cannot reasonably be argued that VLSI would be prejudiced by retaining the case in

Austin.  Should VLSI ultimately prevail at trial, it would be compensated for any minimal delay

between now and trial by recovering pre-judgment interest.  Thus, there simply is no exigency to

rush this case to trial now, and certainly not in the face of a pandemic.

## V.    VLSI's Proposal for Trying the Case in November 2020 Is Unsupported and Logistically Unworkable

As directed by the Court, Intel conferred with VLSI about a January trial date.  As Intel informed the Court, Mr. Lee has a teaching commitment at Harvard Law School—for a course that he helped create and has taught for ten years—during January 5-25, 2021.  Mr. Lee also has a claim construction hearing before the ITC in *In the Matter of Certain Electronic Devices*, Inv. No. 337-TA-1208 (I.T.C.), on January 21, 2021.  To accommodate the Court and VLSI's counsel's stated commitments, however, Mr. Lee has offered to have another faculty member teach the last three days of his class and arrange for another attorney to argue at the claim construction hearing so that Intel could begin a trial in this case on Wednesday, January 20, 2021.  This would allow each party 20-22 hours to present its case if the trial concluded the following Friday, January 29.

Intel understands that VLSI, by contrast, would like the trial to begin on November 16, 2020, or earlier, in Waco.  As explained above, the Court does not have authority to order retransfer to Waco at any time, let alone in November.  In any event, it would be nearly impossible from a logistical standpoint to make arrangements for a trial in Waco in just one month, as the parties have, up until now, been planning for a trial in Austin.  Should the Court order retransfer to Waco over Intel's objection, Intel submits that a trial could not realistically occur in Waco before January 2021.

## CONCLUSION

For the reasons stated above, the circumstances here do not authorize or justify retransfer to Waco.  Regardless of when the trial begins, it should proceed in Austin.

Dated: October 15, 2020

OF COUNSEL:

William F. Lee (*Pro Hac Vice)*
Joseph J. Mueller (*Pro Hac Vice*)
Louis W. Tompros (*Pro Hac Vice)*
Kate Saxton (*Pro Hac Vice*)
WILMER CUTLER PICKERING HALE
  & DORR LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
Email: william.lee@wilmerhale.com
Email: joseph.mueller@wilmerhale.com
Email: louis.tompros@wilmerhale.com
Email: kate.saxton@wilmerhale.com

Gregory H. Lantier (*Pro Hac Vice*)
Amanda L. Major (*Pro Hac Vice*)
WILMER CUTLER PICKERING HALE
  & DORR LLP
1875 Pennsylvania Avenue
Washington DC 20006
Tel: (202) 663-6000
Email: gregory.lantier@wilmerhale.com
Email: amanda.major@wilmerhale.com

Mary V. Sooter (*Pro Hac Vice*)
WILMER CUTLER PICKERING HALE
  & DORR LLP
1225 Seventeenth St.
Denver, Colorado 80202
Tel: (720) 274-3135
Email: mindy.sooter@wilmerhale.com

Respectfully submitted,

*/s/ Stephen Ravel*
J. Stephen Ravel
Texas State Bar No. 16584975
KELLY HART & HALLMAN LLP
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6429
Email: steve.ravel@kellyhart.com

James E. Wren
Texas State Bar No. 22018200
1 Bear Place, Unit 97288
Waco, Texas 76798
Tel: (254) 710-7670
Email: james.wren@baylor.edu

*Attorneys for Intel Corporation*

11

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that on October 15, 2020 all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

*/s/ J. Stephen Ravel*
J. Stephen Ravel
