**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| VLSI TECHNOLOGY LLC, | |
| Plaintiff, | Cause No. 6:21-cv-00057-ADA |
| v. | ███████████████ |
| INTEL CORPORATION, | |
| Defendant. | |

## DEFENDANT INTEL CORPORATION'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING UNCLEAN HANDS

# TABLE OF CONTENTS

| | | | |
|---|---|---|---|
| I. | | INTRODUCTION | 1 |
| II. | | FINDINGS OF FACT | 1 |
| | A. | The Parties | 1 |
| | B. | ██████████████████████████ | 1 |
| | | 1. | ████████████████ | 1 |
| | | 2. | ████████████████ | 4 |
| | | 3. | ████████████████ | 6 |
| | | 4. | ████████████ | 10 |
| | | 5. | ████████████████ | 14 |
| | C. | ████████████████████████████████ | 16 |
| | | ████████████████ | 17 |
| | D. | ████████████████████████ | 20 |
| | | 1. | Shifting infringement theories force Intel to defend against ever-moving targets. | 20 |
| | | 2. | ████████████████████████ | 24 |
| | | 3. | ████████████████████ | 31 |
| | | 4. | ████████████ | 34 |
| III. | | CONCLUSIONS OF LAW | 36 |
| | A. | Federal Rule of Civil Procedure 52 Provides for Partial Judgment on Bench Trial Issues. | 36 |
| | B. | The Doctrine Of Unclean Hands | 36 |
| | | 1. | Unclean hands is rooted in equity and requires that a litigant has acted fairly. | 36 |
| | | 2. | Unclean hands is a flexible doctrine. | 37 |
| | | 3. | Business and litigation misconduct can constitute unclean hands. | 38 |
| | C. | Conclusions Of Law Relating To NXP, Fortress, And VLSI's Unclean Hands | 39 |
| | | 1. | ████████████████ | 39 |

2. ███████████████████████████████████. ....................................... 40

3. VLSI and its collaborators' unconscionable acts were pursued to enhance VLSI's legal position in this action. ....................................... 43

D. Unclean Hands Bars VLSI's Recovery.................................................. 43

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott Point of Care, Inc. v. Epocal, Inc.*,
  2012 WL 12897957 (N.D. Ala. 2012) ..................................................................38

*Aptix Corp. v. Quickturn Design Sys., Inc.*,
  269 F.3d 1369 (Fed. Cir. 2001)......................................................................38, 43

*Aristocrat Techs. v. Int'l Game Tech.*,
  No. C-06-03717 RMW, 2010 WL 2486194 (N.D. Cal. June 15, 2010)................36

*Fairchild v. All Am. Check Cashing, Inc.*,
  815 F.3d 959 (5th Cir. 2016) ...............................................................................36

*Finjan, Inc. v. Juniper Network, Inc.*,
  2018 WL 4181905 (N.D. Cal. 2018) ....................................................................37

*Gilead Scis., Inc. v. Merck & Co.*,
  888 F.3d 1231 (Fed. Cir. 2018)...............................................................37, 38, 43

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*,
  322 U.S. 238 (1944)..............................................................................................38

*Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*,
  343 F. Supp. 2d 272 (D. Del. 2004), *aff'd*, 488 F.3d 982 (Fed. Cir. 2007) ............37

*Keystone Driller Co. v. Gen. Excavator Co.*,
  290 U.S. 240 (1933).........................................................................................37, 43

*Kuehnert v. Texstar Corp.*,
  412 F.2d 700 (5th Cir. 1969) ...............................................................................43

*Martin Midstream Partners v. Boone Towing Inc.*,
  207 F. App'x 439 (5th Cir. 2006) .........................................................................36

*Ott v. Goodpasture, Inc.*,
  1996 WL 754008 (N.D. Tex. 1996).......................................................................37

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,
  324 U.S. 806 (1945).........................................................................................36, 43

*Regeneron Pharm., Inc. v. Merus N.V.*,
  864 F.3d 1343 (Fed. Cir. 2017)............................................................................37

*Thanedar v. Time Warner, Inc.*,
    352 F. App'x 891 (5th Cir. 2009) ..........................................................................36

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    649 F.3d 1276 (Fed. Cir. 2011) (en banc)...............................................................38

**Other Authorities**

Fed. R. Civ. P. 50..................................................................................................................36

Fed. R. Civ. P. 52.........................................................................................................1, 35, 36

**Exhibits**

The exhibits cited in this submission as "Ex. __" are attached to the declaration of Amanda L. Major, filed as an attachment hereto.

## I.    INTRODUCTION

Defendant Intel Corp. ("Intel"), by its counsel, submits the following proposed findings of fact and conclusions of law in support of its Rule 52 Motion for Judgment that Recovery Is Barred Under the Doctrine of Unclean Hands, filed concurrently herewith.

## II.   FINDINGS OF FACT

### A.    The Parties

FF1.    Defendant Intel is a corporation duly organized and existing under the laws of the State of Delaware, having a regular and established place of business at 1300 S. Mopac Expressway, Austin, Texas 78746.  (Dkt. 171 ¶ 3.)

FF2.    Plaintiff VLSI Technology LLC ("VLSI") is a Delaware limited liability company with a registered office at Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801. (Dkt. 121-01 ¶ 1).

### B.    ███████████████████████████

#### 1.    ███████████████████████

FF3.    Fortress Investment Group ("Fortress") is an alternative asset manager or investment management firm. █████████████████



FF4.    NXP Semiconductors is a semiconductor company that makes chips for, among other things, digital networking and automotive electronics.  (2/22 Tr. [Spehar (NXP)] 262:9-12,

263:7-19.)  NXP has about 29,000 employees and sells thousands of products.  (2/22 Tr. [Spehar (NXP)] 262:21-263:4; 2/23 Tr. [Bearden (NXP)] 347:14-17.)

FF5.    In 2015, NXP acquired Freescale Semiconductor.  (2/22 Tr. [Spehar (NXP)] 299:4-6.)  Along with the acquisition of Freescale, NXP acquired all of Freescale's patents—of which Freescale had "a lot."  (2/22 Tr. [Spehar (NXP)] 271:18-272:8). ████████████████████

████████████████████████████████████████████████████

FF6.    ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████  ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

FF7.    ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

---

[1] ████████████████████████████████████████

FF8. ██████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████

FF9. ██████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████

FF10. █████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████

FF11. █████████████████████████████████████

██████████████████████████████████████████



).)

**2.**

FF12.

FF13.

FF14.

FF15.



FF16.

FF17.

FF18.　█████████████████████████████████████

████████████████████████████████████████████

███████████████

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

█████████████████████████████

FF19.　█████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████

██　　██████████████████████████████████
　　　████████████

　████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████

　████████████████████████████████████████

███　███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

FF22.



FF26.



**4.**

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████

FF30.   ██████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████

FF31.   ██████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████   ███████████████████████████.

██████████████████████████████████████████████████

█████████████████████████████████████

FF32.   ████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████

FF33.   ████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████

FF34.   ████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

_____

[2] ██████████████████████████████████████████████████
████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

FF35.    ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████

FF36.    ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

**5.**

FF41.

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████.

FF42.  ██████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████

FF43.  ██████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████ 2/22 Tr.

[Spehar] 274:8-14.)

FF44.  ██████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████

FF45. ███████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████

FF46. ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

**C.** ██████████████████████████████████████████████
███████████

FF47.  The enforcement strategy VLSI—██████████████████████—has pursued as detailed herein relies on assertion of claim after claim from patent after patent and the apparent expectation that, even if many assertions are not successful, eventually some assertion will be. █

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████

FF48. ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████

FF49.  ██████████████████████████. ███████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████

FF50.  ██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████

1.  ████████████████████████████████.

██████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████



FF52.   On October 2, 2017, VLSI asserted eight patents against Intel in the Northern District of California.  (*See* Complaint, *VLSI Tech. LLC v. Intel Corp.*, No. 17-cv-05671 (Dkt. 1) (N.D. Cal. Oct. 2, 2017) ("California Litigation").)

FF53.   Just over eight months later, on June 28, 2018, VLSI asserted five more patents against Intel in the District of Delaware.  (*See* Complaint, *VLSI Tech. LLC v. Intel Corp.*, No. 18-cv-00966 (D.I. 1) (D. Del. June 28, 2018) ("Delaware Litigation").)

FF54. ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████

FF55.   By the end of February 2019, the Patent Trial and Appeals Board ("PTAB") instituted *inter partes* review ("IPR") proceedings finding that challenged claims of six of the eight patents asserted in the California Litigation were more likely than not unpatentable.[3]   The court

---

[3] *See, e.g.*, *Intel Corp. v. VLSI Tech. LLC*, IPR2018-01105, Paper 17 (P.T.A.B. Dec. 4, 2018) (instituting IPR on U.S. Patent No. 7,709,303); *Intel Corp. v. VLSI Tech. LLC*, IPR2018-01035, Paper 8 (P.T.A.B. Feb. 5, 2019) (instituting IPR on U.S. Patent No. 7,268,588; *Intel Corp. v. VLSI Tech. LLC*, IPR2018-01144, Paper 17 (P.T.A.B. Feb. 7, 2019) (instituting IPR on U.S. Patent No. 8,004,922); *Intel Corp. v. VLSI Tech. LLC*, IPR2018-01107, Paper 16 (P.T.A.B. Feb. 12, 2019) (instituting IPR on U.S. Patent. No. 8,268,672); *Intel Corp. v. VLSI Tech. LLC*, IPR2018-01040, Paper 15 (P.T.A.B. Feb. 13, 2019) (instituting IPR on U.S. Patent No. 7,706,207); *Intel Corp. v. VLSI Tech. LLC*, IPR2018-01312, Paper 10 (P.T.A.B. Feb. 20, 2019) (instituting IPR on U.S. Patent No. 8,020,014); *Intel Corp. v. VLSI Tech. LLC*, IPR2018-01661, Paper 9 (P.T.A.B. Mar. 1, 2019) (same).

then stayed the case with VLSI's agreement.  (*See* Order Granting Stipulation Regarding Motion to Stay, *VLSI Tech. LLC v. Intel Corp.*, No. 17-cv-05671 (Dkt. 261) (N.D. Cal. Mar. 11, 2019).)

FF56.   On March 1, 2019—the ***same day*** that VLSI agreed to stay the California Litigation pending IPRs and just one month after finalizing its selection of additional NXP patent families for purchase—VLSI asserted six of the recently purchased patents against Intel in the District of Delaware.  (*See* Complaint, *VLSI Tech. LLC v. Intel Corp.*, No. 19-cv-00426 (D.I. 1) (D. Del. Mar. 1, 2019); Stipulation Regarding Stay Pending *Inter Partes* Review, *VLSI*, No. 17-cv-05671, Dkt. No. 253 (N.D. Cal. Mar. 2, 2019); ███████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████

FF57.   Intel filed a motion to consolidate the two cases in the District of Delaware on March 20, 2019.  (*See* Intel Corporation's Motion to Consolidate, *VLSI Tech. LLC v. Intel Corp.*, No. 19-cv-00426 (D.I. 8) (D. Del. Mar. 20, 2019).)   The day after Intel filed its reply brief in support of consolidation (D.I. 14), VLSI voluntarily dismissed the second Delaware case.  (*See VLSI Tech. LLC v. Intel Corp.*, No. 19-cv-00426 (D.I. 15) (D. Del. Apr. 11, 2019).)

FF58.   That same day, on April 11, 2019, VLSI filed ***three*** additional suits against Intel in the Western District of Texas, including this action, asserting the same six patents it had asserted in the second Delaware case and two additional patents.  (*See* Dkt. 1 (asserting three patents—one of which was originally asserted in the second Delaware case); *VLSI Tech. LLC v. Intel Corp.*, No. 19-cv-00255 (Dkt. 1) (W.D. Tex. Apr. 11, 2019) (asserting two patents—both of which were originally asserted in the second Delaware case); *VLSI Tech. LLC v. Intel Corp.*, No. 19-00256 (Dkt. 1) (W.D. Tex. Apr. 11, 2019) (asserting three patents against Intel—all of which were originally asserted in the second Delaware case).

FF59.   Finally, on May 5, 2019, VLSI asserted two additional patents against Intel in two separate actions in China.  (*See VLSI Tech. LLC v. Intel (China) Co., Ltd.*, No. (2019) Hu 73 Zhi Min Chu 356 (Shanghai) (asserting one patent against Intel before the Shanghai Intellectual Property Court on May 5, 2019); *VLSI Tech. LLC v. Intel (China) Co., Ltd.*, No. (2019) Yue 03 Min Chu 3135 (Shenzhen) (asserting one patent against Intel in the Shenzhen Intermediate Court on May 5, 2019); Ex. 21, Moreland [Fortress] Dep. 126:15-127:10.)

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████

████████  ████████████████████████████████.

FF61.   In its original complaint in this action, VLSI asserted three patents against Intel – U.S. Patent No. 7,523,373 (the "'373 patent"), titled "Minimum Memory Operating Voltage Technique"; U.S. Patent No. 7,726,759 (the "'759 patent"), titled "System and Method of Managing Clock Speed in an Electronic Device"; and U.S. Patent No. 8,156,357 (the "'357 patent"), titled "Voltage-based Memory Size Scaling in a Data Processing System."  (Dkt. 1).

### 1.   Shifting infringement theories force Intel to defend against ever-moving targets.

FF62.   Consistent with the overarching enforcement strategy, VLSI's assertion strategy in this action has emphasized the volume of the assertions over the merit of the allegations, resulting in VLSI having to change its infringement theories to try to maintain its claims—all with the aim and effect of impairing Intel's ability to defend itself.

---

[4] This case was originally docketed as case number 6:19-cv-00254.  It was consolidated for pretrial purposes with VLSI's other cases in this District under case number 1:19-cv-977, but was assigned a new case number—6:21-cv-00057—on January 21, 2021, after it was transferred to the Waco division of the Western District of Texas.

FF63.  In connection with the '373 patent, VLSI initially accused the last level cache in Intel's Ivy Bridge family of microprocessors.  (Dkt. 1  ¶¶ 45-59.)  VLSI later abandoned this allegation altogether, tacitly acknowledging its original basis for alleging infringement of the '373 patent had no merit.  Specifically, on March 6, 2020, VLSI filed a First Amended Complaint that expressly identified a different component—the C6 SRAM power multiplexer—in the Haswell product family as accused.  (Dkt. 121-01 ¶¶ 57-69.)

FF64.  VLSI's revised position was flawed, even according to its technical expert.  As part of VLSI's allegations in its Amended Complaint, for the claim 1 limitations that require "testing the memory to determine the operating voltage of the memory that is a minimum operating voltage; storing, in a non-volatile manner, the value of the minimum operating voltage," VLSI alleged that "Intel tests the memory to determine its minimum operating voltage, and stores the value of that voltage as a 'VID code' in fuses, a type of non-volatile memory."  (*Id.* ¶ 59.)  But by the time of trial, VLSI's technical expert, Dr. Thomas Conte, offered opinions that did not rely on any VID code; instead, Dr. Conte exclusively pointed to the RING_RETENTION_VOLTAGE fuse value as the alleged stored minimum operating voltage required by the claims.  (Ex. 24, Sealed Tr. [Conte] 3:15-5:21, 24:19-25:5; PDX.4.53-PDX.4.56, PDX.4.105.)

FF65. VLSI's Amended Complaint also incorporated its January 31, 2020 Final Infringement Contentions by reference.  (Dkt. 121-01 ¶ 48 n.5 (incorporating infringement contentions by reference); Ex. 25, '373 Final Infringement Contentions.)  In those contentions, VLSI accused **ten generations** of Intel's microprocessors containing a C6 SRAM power multiplexer of infringing the '373 patent.  (Ex. 25, '373 Final Infringement Contentions at 1-2.)  But again, VLSI's technical expert did not agree.  At trial, Dr. Conte admitted that eight of the ten generations (referred to as the "Lake" products) did not infringe the '373 patent:

Q.  For the '373 patent, the only products listed you accuse of infringing are Haswell and Broadwell, correct?

A. Yes.

Q.  You do not accuse any of the Skylake and later products … of infringing the '373 patent, correct?

A.  Correct.

(2/23 Tr. [Conte] 447:5-11.)

FF66.  VLSI thus had no basis for asserting the '373 patent when it originally filed its complaint, and even after it shifted to a new accused feature and new accused products, it pursued a theory and products that its own expert did not find to be viable.  But, VLSI merely shifted its infringement theory once again, thereby requiring Intel to defend against an ever-moving target.

FF67.  With respect to VLSI's allegations concerning the '759 patent, even VLSI's technical expert, Dr. Conte, employed this same strategy of shifting away from positions once their flaws became clear.  Specifically, at trial, Dr. Conte changed his testimony regarding what aspect of Intel's products satisfied one of the key disputed claim limitations for claims in the '759 patent.

FF68.  The claims of the '759 patent that VLSI asserted at trial all required a "request" to change a "clock frequency of a high-speed clock."  (PTX-0005 ['759 patent], claims 14, 17, 18, 24.)

FF69.  At trial, Dr. Conte testified that the Core-Active instruction in the accused Intel products satisfied the "request" limitation for his literal infringement opinion.  (Ex. 24, Sealed Tr. [Conte] 39:4-44:8, 47:10-16; PDX.4.144, PDX.4.169-PDX.4.174, PDX.4.185-PDX.4.187.)  Dr. Conte also testified that telemetry data called "C0 residency" data served as the required "request" for his infringement opinion under the doctrine of equivalents.  (Ex. 24, Sealed Tr. [Conte] 53:14-57:20; PDX.4.203-PDX.4.213; 2/23 Tr. [Conte] 466:16-20.)

FF70.  But, as Dr. Conte admitted during cross-examination, he had given different testimony at his deposition.  Specifically, he had testified at his deposition that the C0 residency data was "not precisely" the "request" required by the '759 patent claims.  (2/23 Tr. [Conte] 466:16-25, 467:14-24.)  Dr. Conte also admitted on cross-examination that he had not identified Core_Active as the "request" when asked at his deposition what served as the "request."  (*Id.* at 476:14-21.)

FF71.  With respect to the '357 patent, VLSI's original complaint accused the voltage-reduction capability of the Dynamic Cache Shrink feature in Intel's Ivy Bridge products.  (Dkt. 1 ¶¶ 15-27.) █████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████

FF72.  In response, Intel disclosed that the Dynamic Cache Shrink feature in these six product families—as well as the majority of products in the Ivy Bridge family—did ***not*** have the accused voltage-reduction capability.  (Ex. 27, Intel Corporation's Responses and Objections to Plaintiff VLSI Technology LLC's First Set of Interrogatories (Nos. 1-21) at 81-82.)

FF73.  █████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████

FF74.   Also by the time of filing its amended complaint, VLSI still had not disclosed any theory as to how Intel's products satisfied the requirement of claims 9-20 involving a "request" to reduce or decrease the "power supply voltage." 

FF75.   But during expert discovery, VLSI's technical expert, Dr. Mitchell Thornton, offered opinions

FF76.   On October 8, 2020, Intel filed a motion for summary judgment of noninfringement of the '357 patent.  (Dkt. 255.)  After briefing and argument, the Court granted summary judgment of noninfringement of all asserted claims of the '357 patent.  (Dkt. 573).

## 2.   VLSI, Fortress, and NXP cooperate to shield evidence, only to selectively disclose new information at trial.

FF77.   VLSI, Fortress, and NXP employed additional tactics with respect to discovery in the course of enforcing the patents asserted in this action.   As described below, from the outset,

all three sought to cooperate to limit the information provided to Intel while also cherry picking and selectively deploying helpful evidence to disadvantage Intel.

FF78. ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████  █████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████

FF79. ████████████████████████████████████████████████

████████████████████████████████  ████████████████  █████████████

████████████████████████████████████████████████████████

████████████████████████████

FF80. Because of these circumstances, VLSI itself had little documentation and information concerning the ████████, the amendments thereto, or the acquired patents to provide to Intel in the course of discovery. ██████████████████████████████████████

████████████████████████████████████████████████████████

██████

      ████████████████████████████████████████████████████

      █████████████████

….



FF81.   Intel was thus required to use third-party discovery mechanisms to pursue relevant

discovery from Fortress and NXP, which both Fortress and NXP resisted. *See* Respondent Fortress

Investment Group LLC's Memorandum of Law in Opposition to Movant Intel Corporation's

Motion to Compel Production of Documents, *Intel Corp. v. Fortress Inv. Grp. LLC*, 19-mc-00023,

Dkt. 16 (S.D.N.Y. Jan. 30, 2019) (resisting Intel's discovery requests); NXP USA Inc's Opposition

to Intel Corporation's Opposed Motion to Compel Compliance with Subpoena, *Intel Corp. v. NXP*

*USA, Inc.*, 18-mc-80193, Dkt. 7-1 (N.D. Cal. Sept. 28, 2018) (resisting production of

communications between NXP and Fortress despite there being no common ***legal*** interest).[5]   And

both took the position that, as third parties, certain discovery was not required of them.

FF82.   For instance, NXP repeatedly resisted providing discovery and/or conducting the

searches requested by Intel because NXP was not a named party in the litigation.  (*See, e.g.*, Ex.

42, 5/13/20 Letter from Mr. Jablon to Ms. Major (providing "non-party NXP USA, Inc.['s]"

response resisting numerous discovery-related issues raised by Intel); Ex. 30, 4/14/20 Letter from

---

[5] Because of the overlapping issues in the litigations brought by VLSI against Intel in the
Northern District of California and the District of Delaware, the protective orders in the actions
permit use of confidential discovery produced in any one case in the other cases.  (*See, e.g.*, Dkt.
75 ¶¶ 16(f), 17(d)).  Accordingly, some of the relevant discovery obtained from NXP and
Fortress was first sought and produced in those other cases.

Mr. Jablon to Ms. Major (resisting Intel document requests on the basis that they would purportedly "impose a grossly unfair and disproportionate burden on non-party NXP"); Ex. 31, 2/10/20 Letter from Mr. Jablon to Ms. Major (claiming that "NXP is not a party to the litigation between Intel and VLSI" as justification for multiple discovery issues raised by Intel).

FF83.  Likewise, Fortress flatly refused to provide discovery relating to (among other things) ███████████████████████████████████████

██████████████████████████████████████████████

████████████████████████  (Ex. 32, 4/16/2020 Non-Party Fortress' Objections and Responses to Intel's Rule 30(b)(6) Subpoena at 11-12, Topic 12.)  Fortress instead asserted that Intel should obtain the requested discovery from VLSI.  (*Id.*)

FF84.  But VLSI's CEO Michael Stolarski ████████████████████████



FF85.  Thus, although NXP and Fortress both ████████████████████

████████████████████████████████████████  (*see supra* FF3-FF50), both hid behind their status as so-called "third parties" during discovery in this action.

FF86. ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████ (████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████

FF87.  By the time of trial, however, VLSI and NXP wholly abandoned any suggestion that NXP was merely a third party to the action and made NXP an integral part of the trial:  the *only fact witnesses* who testified at trial during VLSI's presentation of evidence were NXP employees.  (2/22 Tr. [Spehar] 261:25-262:4; 2/23 Tr. [Bearden] 323:15-19, 324:7-8.)

FF88.  In fact, although prior to trial VLSI identified its CEO Michael Stolarski as a witness it planned to call at trial (Dkt. 398-4 at 2) and introduced Mr. Stolarski to the jury as VLSI's representative (2/22 Tr. 15:15-16, 18:7-13, 208:17-25), VLSI later reversed course.  ██

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████

FF89.   The presentation by VLSI—particularly Mr. Spehar's testimony—illustrates the egregious tactics in which NXP, Fortress, and VLSI engaged to enhance VLSI's ability to enforce the asserted patents while obstructing Intel's ability to defend itself.

FF90.   Intel first sought Mr. Spehar's deposition after VLSI identified him as a potential trial witness.  (*See* Intel's Opposition to Jim Spehar's Motion to Quash and/or Limit Subpoenas, *VLSI Technology LLC v. Intel Corp.*, Misc. Case No. 1:19-mc-00988-ADA (Dkt. 2) (W.D. Tex. Oct. 17, 2019) (detailing Intel's service of subpoena on Mr. Spehar after VLSI disclosed him as a trial witness).  In negotiating logistics regarding the first deposition of Mr. Spehar (for the co-pending Delaware Litigation), NXP's and Mr. Spehar's counsel at Irell & Manella LLP represented that:

FF91.

FF92.  ███████████████████████████████████████████

███████████████████████████████████████ at trial, Mr. Spehar reversed course

and testified regarding NXP's general licensing practices, ██████, and NXP's relationship with

VLSI.  (2/22 Tr. [Spehar] 272:9-273:5, 274:8-12, 288:18-21.)  Specifically, he testified that NXP

stood to benefit from VLSI's assertion of the patents against Intel and that NXP would take any

recovery it received and invest in product development.  (*Id.* at 274:8-22.)

FF93.  ███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████ at trial, Mr. Spehar provided new information regarding the

investors that might benefit from any verdict for VLSI.  Specifically, Mr. Spehar testified that

"teachers unions," "pension funds," and "Texas A&M" would benefit from any recovery by VLSI.

(2/22 Tr. [Spehar] 300:1-12.)

FF94.  ███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████

FF95.  Before asking the jury to award more than $2 billion in damages, VLSI's counsel

nevertheless emphasized Mr. Spehar's testimony that "teachers unions," "pension funds," and

"Texas A&M" would benefit from any recovery in this case during the closing.  (3/1 Tr. [VLSI

Closing] 1623:21-24.)

FF96.  The jury returned its verdict awarding $2.175 billion to VLSI the next day.  (Dkt.

564.)

FF97.   These circumstances relating to Mr. Spehar's testimony illustrate NXP's, Fortress's, and VLSI's coordination— ███████████████ —to shield evidence from Intel, only to selectively disclose information when helpful to VLSI's case.

### 3.   VLSI successfully keeps Fortress out of the case based on material misrepresentations.

FF98.   While VLSI and NXP sought to amplify NXP's role at trial, as described below, it prevented any mention of NXP's true partner in this case—Fortress.

FF99.   The Court originally ruled that Intel could reference Fortress at trial, finding there was ████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████

FF100. The Court reversed course, however, after ███████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████

FF101. ██████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████      ███████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████

FF102. ████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████

FF103. ████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████



████████████████████████████████████████

FF104. After VLSI's counsel made these representations that conflicted with the record evidence and the Court precluded mention of Fortress in the opening, VLSI went on to paint a misleading picture of itself and its relationship with NXP.

FF105. Starting with the opening statement, VLSI's counsel portrayed VLSI as a "very small company" that had "teamed up" with NXP to engage in a "cycle of innovation" in which NXP invents the patents, teams up with VLSI to assert them, and then invests any proceeds back into its inventions.  (2/22 Tr. [VLSI Opening] 212:6-213:23; PDX3.12; 2/22 Tr. [Spehar] 274:8-276:10; PDX13.3; 2/23 Tr. [Bearden] 330:12-20; 3/1 Tr. [VLSI Closing] 1558:11-21; PDX10.5; PDX10.6.)  The jury was also told that NXP needed VLSI because VLSI "work[s] with technology specialists," "people who are knowledgeable about patent law," and "[p]eople who can figure out if they have the appropriate information, whether there is or is not infringement being conducted by some other company."  (2/22 Tr. [VLSI Opening] 212:17-213:2.)

FF106. But throughout trial, no fact witness could fully describe VLSI.  (2/22/21 Tr. [Spehar] 282:4-283:23, 288:7-289:8, 299:9-20; 2/23/21 Tr. [Bearden] 362:21-363:19.)  The jury never heard that NXP had, ███████████████████████████████████

███████████████████████████████████████████████████

FF107. VLSI also created the misimpression that NXP would be the primary beneficiary if VLSI were to recover money from this action.  For example, VLSI's counsel told the jury during opening statements that—through a "cycle of innovation"—NXP would receive income from VLSI to invest in NXP's own research and development. (2/22 Tr. [VLSI Opening] 213:-13; PDX4.12.)   Mr. Spehar, NXP's Vice-President of Research and Development who VLSI introduced as NXP's corporate representative, testified that NXP "could significantly benefit" from "VLSI's assertion of the patents in this case" and would use that money for its own product development.  (2/22 Tr. [Spehar] 274:8-22; PDX13.3.)  And Mr. Bearden, a named inventor on the '373 patent and NXP employee, told the jury that NXP would take "any recoveries" in this case:

Q. And do you know whether NXP has an interest in this case?

A. So I understand that NXP has assigned the '373 patent to VLSI, and that ***NXP does have an interest in any recovery that may come about by VLSI's efforts***, right? I personally do not have any interest in the case, but ***if Intel is found to infringe, then NXP would benefit. And my understanding is that NXP would take any recoveries and go off and invest it in the next generation of design.***

(2/23 Tr. [Bearden] 330:12-20 (emphases added).)

FF108. ███████████████████████████████████████████

███████████████

FF109. The jury thus did not hear about VLSI's origins, how it is funded, or all the parties that stand to benefit if VLSI were to recover money in this action.

### 4.    VLSI pursues claims that NXP could not.

FF110. ███████████████████████████████████████████

███████████████████████████████████

FF111. ███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████



FF114.

FF115. At the same time, NXP retained a financial interest in the litigation and stood to

gain from VLSI's assertion of the '357 patent and

FF116.

III.    **CONCLUSIONS OF LAW**

A.    **Federal Rule of Civil Procedure 52 Provides for Partial Judgment on Bench Trial Issues.**

CL1.    In a bench trial, "[i]f a party has been fully heard on an issue … and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 52(c).

CL2.    Under Rule 52(c), "[a] judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a)." *Id.* Under Rule 52(a), "the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a).

CL3.    "Rule 52(a) only requires weighing the evidence to determine whether the plaintiff has proven his case." *Thanedar v. Time Warner, Inc.*, 352 F. App'x 891, 897 (5th Cir. 2009).

CL4.    A motion under Rule 52 in a bench trial is the parallel to a Rule 50 motion for judgment as a matter of law in a jury trial. *Martin Midstream Partners v. Boone Towing Inc.*, 207 F. App'x 439, 440 (5th Cir. 2006).

CL5.    On a Rule 52 motion, the court "does not … draw any inferences in favor of the non-moving party and … [instead] make[s] a determination in accordance with its own view of the evidence." *Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 964 n.1 (5th Cir. 2016).

B.    **The Doctrine Of Unclean Hands**

1.    **Unclean hands is rooted in equity and requires that a litigant has acted fairly.**

CL6.    The doctrine of unclean hands "is rooted in the historical concept of court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith…. Thus while equity does not demand that its suitors shall have led blameless lives, as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in

issue." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814-15 (1945) (internal quotation marks and citations omitted).

CL7.   Unclean hands bars a patentee's recovery against an accused infringer if "some unconscionable act of [the patentee] has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation." *Aristocrat Techs. v. Int'l Game Tech.*, No. C-06-03717 RMW, 2010 WL 2486194, at *2 (N.D. Cal. June 15, 2010) (quoting *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933)).

CL8.   In other words, unclean hands bars recovery when the conduct at issue "reasonably … enhanced the claimant's legal position as to either the creation of or the enforcement of the legal rights at issue." *Gilead Scis., Inc. v. Merck & Co.*, 888 F.3d 1231, 1240 (Fed. Cir. 2018).

### 2.    Unclean hands is a flexible doctrine.

CL9.   Unclean hands is a flexible doctrine.  "[T]he doctrine necessarily gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant." *Id.* at 1239 (internal quotation marks omitted).

CL10.  In evaluating whether a litigant has unclean hands, "[t]he court is not bound by any formula, restraint or limitation which restricts the free and just exercise of its equitable discretion. Any willful act, which can rightfully be said to transgress equitable standards, is sufficient." *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 343 F. Supp. 2d 272, 321 (D. Del. 2004) (citation omitted), *aff'd*, 488 F.3d 982 (Fed. Cir. 2007); *see also Ott v. Goodpasture, Inc.*, 1996 WL 754008, at *4 (N.D. Tex. 1996) (same).

CL11.  The unclean hands inquiry requires a court to consider the totality of the circumstances.  *Gilead*, 888 F.3d at 1240 (affirming judgment of unclean hands and noting that the court's decision rests "on the totality of the evidence-supported misconduct … , not individual elements alone"); *Finjan, Inc. v. Juniper Network, Inc.*, 2018 WL 4181905, at *7 (N.D. Cal. 2018)

37

(denying motion to strike unclean hands defense because the "totality of [the defendant's] allegations presents a troubling scheme" when considering "the forest instead of the trees"); *cf. Regeneron Pharm., Inc. v. Merus N.V.*, 864 F.3d 1343, 1364 (Fed. Cir. 2017) (affirming adverse inference as to inequitable conduct based in part on patentee's litigation misconduct, where the misconduct and the underlying inequitable conduct were intertwined).

### 3.    Business and litigation misconduct can constitute unclean hands.

CL12.  Pre-litigation business conduct and litigation misconduct are sufficient to invoke unclean hands.  *Gilead*, 888 F.3d at 1240-1247; *see also Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 251 (1944) (reversing finding of patent infringement and ordering judgment be set aside due to plaintiff's presentation of false testimony and fabrication of evidence); *Abbott Point of Care, Inc. v. Epocal, Inc.*, 2012 WL 12897957, at *9 (N.D. Ala. 2012) (denying patentee's motion for summary judgment of no unclean hands where defendant alleged that patentee brought its lawsuit "as a business strategy to drain [defendant's] resources and scare away potential customers").

CL13.  Unclean hands can apply to litigation misconduct.  *See Gilead*, 888 F.3d at 1244-47 (affirming district court ruling barring assertion of patents for, inter alia, litigation misconduct); *Aptix Corp. v. Quickturn Design Sys., Inc.*, 269 F.3d 1369, 1374-75 (Fed. Cir. 2001) (affirming district court dismissal of action for litigation misconduct).

CL14.  There is no materiality requirement for unclean hands.  *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011) (en banc) ("[T]his court's development of a materiality requirement for inequitable conduct does not (and cannot) supplant Supreme Court precedent.  Though inequitable conduct developed from these cases, the unclean hands doctrine remains available to supply a remedy for egregious misconduct like that in the Supreme Court cases.").

CL15.  A party must prove unclean hands by clear and convincing evidence.  *Aptix*, 269 F.3d at 1374.

### C.      Conclusions Of Law Relating To NXP, Fortress, And VLSI's Unclean Hands

CL16.  In this case, numerous unconscionable acts lead the Court to conclude that the doctrine of unclean hands bars VLSI's recovery against Intel for infringement of the '373, '759, and '357 patents.  The Court finds that NXP, Fortress, and VLSI's common enterprise to pursue an inequitable patent monetization scheme, the constant evolution of VLSI's infringement positions, their cooperation to shield evidence and then disclose select evidence to gain advantage at trial, and their efforts to mislead the jury regarding the nature of the VLSI-NXP relationship and those who stand to share in litigation proceeds evidences VLSI's and its collaborators' unclean hands.

### 1.      VLSI, Fortress, and NXP's patent monetization scheme has involved unconscionable conduct.

CL17.  The first set of unconscionable acts barring VLSI's recovery from Intel for infringement of the '373, '759, and '357 patents concerns NXP, Fortress, and VLSI's pursuit of an inequitable monetization scheme.  As detailed in paragraphs FF47-FF60 above, VLSI, Fortress, and NXP have pursued a high-volume patent assertion strategy aimed at bringing Intel to its knees by filing wave after wave of litigation—thus far consisting of seven lawsuits in which VLSI has asserted 23 patents.  As also detailed above in paragraphs FF37-FF46, they have arranged themselves in a manner that permits VLSI to pursue endless assertions, without regard to how meritorious they are and with limited downside risk.  They have thus devised a scheme that weaponizes patent assertions.  The Court concludes that these egregious business and enforcement tactics constitute unconscionable conduct by VLSI's and its allies, and warrant invoking the doctrine of unclean hands against VLSI.

      2.      **VLSI, Fortress, and NXP engaged in unconscionable conduct specific to enforcement of patents in this action.**

CL18.  The Court further concludes that, in pursuing this monetization scheme, VLSI engaged in additional specific unconscionable conduct concerning each of the asserted patents.

CL19.  As described in paragraphs FF63-FF66 above, VLSI initially asserted the '373 patent in connection with a different product family and a different accused feature than VLSI presented to the jury at trial, but then abandoned those infringement allegations—thus acknowledging that the basis for filing its original complaint was not supportable.   In an amended complaint, VLSI accused a different feature and ten different product families as accused products, but even then articulated a different infringement theory than its technical expert (Dr. Thomas Conte) explained at trial, and accused eight product families that Dr. Conte conceded did not infringe the patent.  The Court finds that VLSI's repeated shifting of infringement positions for the '373 patent and assertions in connection with product families its own expert conceded did not infringe, constitutes egregious conduct that enhanced VLSI's legal position as to enforcement of the patent and prejudiced Intel.

CL20.  As described in paragraphs FF67-FF70 above, VLSI's infringement positions with respect to the '759 patent continued evolving as late as trial in this action.  At trial, VLSI's technical expert, Dr. Thomas Conte, testified that different aspects of Intel's products satisfied the key disputed claim element than what he had pointed to just months earlier at his deposition.  The Court finds that VLSI's shifting of infringement positions for the '759 patent as late as trial constitutes egregious conduct that enhanced VLSI's legal position as to enforcement of the patent and prejudiced Intel.

CL21. As described in paragraphs FF71-FF75 above, VLSI failed to disclose ███
█████████████████████████████████████████████████████████████████. Further,

despite having information that six accused product families did not have the accused functionality, VLSI persisted in accusing those product families but never even had its technical expert, Dr. Mitchell Thornton, consider technical documents relating to those families.  The Court finds that VLSI's assertion tactics with respect to the '357 patent, including its assertions in connection with product families its own expert did not investigate, were egregious.  This conduct enhanced VLSI's legal position as to enforcement of the patent and prejudiced Intel.

CL22.  VLSI's unsupportable and/or changing infringement positions regarding the asserted patents demonstrate VLSI's repeated pursuit of infringement positions that lacked merit. These tactics—which were facilitated by ███████████████████████████████████ ██████████████████████—disadvantaged Intel, including by requiring it to waste resources and to defend against ever-evolving targets.  These assertion tactics constitute unconscionable litigation conduct and warrant invoking the doctrine of unclean hands.

CL23.  Another set of unconscionable acts barring VLSI's recovery from Intel concerns NXP, Fortress, and VLSI's cooperation to withhold evidence from Intel, only to later cherry pick helpful facts to disclose when they perceived some advantage to doing so.  As detailed in paragraphs FF77-FF97 above, NXP, Fortress, and VLSI implemented their patent monetization scheme in such a way ██████████████████████████████████████ ██████████████████████████████████████.  NXP and Fortress resisted providing discovery that Intel sought—hiding behind their supposed third-party status despite their ████████ ██████████████████████ in VLSI's enforcement of the patents-in-suit.  But all coordinated their efforts—through shared counsel—to use evidence they perceived as helpful to their enforcement of the patents.  The Court finds such gamesmanship with evidence to constitute unconscionable conduct.

41

CL24. For instance, as discussed in paragraphs FF83-FF84 above, ███████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████ But VLSI's corporate representative did not have and could not

provide such information.  Nevertheless, at trial, NXP's corporate representative (James Spehar)—

███████████████████████████████—testified that teachers unions, pension

funds, and Texas A&M would benefit from any recovery by VLSI in this action.  During closing

arguments, VLSI's counsel then emphasized that these entities stood to benefit from any money

recovered.  The Court concludes that these tactics employed by NXP, Fortress, and VLSI constitute

litigation misconduct and warrant invoking the doctrine of unclean hands against VLSI.

CL25.  Another set of unconscionable acts barring VLSI's recovery from Intel concerns

the collaborators' efforts to mislead the jury regarding the nature of the VLSI-NXP relationship

and those who stand to share in litigation proceeds.  As detailed in paragraphs FF98-FF109, VLSI's

counsel made representations regarding Fortress and VLSI that conflicted with deposition

testimony of Fortress and NXP witnesses, as well as VLSI CEO Michael Stolarski.  Specifically,

these inconsistencies related to ████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████ In view of those representations, this Court determined to preclude

mention of Fortress in Intel's opening statement.  VLSI then took advantage of that ruling to paint

a misleading picture of VLSI and the entities that stand to recover from the litigation.  The Court

concludes that these tactics constitute unconscionable conduct and warrant invoking the doctrine

of unclean hands against VLSI.

CL26.  The Court concludes that the doctrine of unclean hands also bars VLSI's recovery against Intel for infringement of the '357 patent based on additional unconscionable acts in connection with efforts to enforce that patent.

CL27.  As detailed in paragraphs FF110-FF116 above, NXP, Fortress, and VLSI █████████



█████ The Court concludes that these actions constitute unconscionable misconduct, and warrant invoking the doctrine of unclean hands against VLSI.

### 3.      VLSI and its collaborators' unconscionable acts were pursued to enhance VLSI's legal position in this action.

CL28.  The Court concludes that each of the unconscionable acts detailed in CL17-CL27 "reasonably … enhanced the claimant's legal position as to … the enforcement of the legal rights at issue." *Gilead*, 888 F.3d at 1240.

### D.      Unclean Hands Bars VLSI's Recovery

CL29.  Upon a finding of unclean hands, courts regularly dismiss the claims asserted by the unclean litigant.  *See, e.g.*, *Precision*, 324 U.S. at 816, 820 (affirming dismissal of lawsuit); *Keystone*, 290 U.S. at 244, 247 (same); *Aptix*, 269 F.3d at 1369, 1374, 1378 (affirming dismissal of lawsuit based on plaintiff's unclean hands).

CL30.  Unclean hands also serves as a basis for barring recovery of damages.  *Gilead*, 888 F.3d at 1240 (affirming ruling that unclean hands barred monetary damages claim); *Kuehnert v. Texstar Corp.*, 412 F.2d 700, 704 (5th Cir. 1969) ("Although Kuehnert is not seeking equitable relief the doctrine remains applicable, since it expresses a general principle equally suited to damage actions.").

CL31.  The Court concludes that the appropriate remedy for each of the unconscionable acts identified above is to find the '373 patent, the '759 patent, and the '357 patent unenforceable against Intel and to bar VLSI's recovery against Intel for infringement of both the '373 and '759 patents, including vacating the jury's damages verdict and precluding any award of supplemental and post-judgment damages and pre-judgment interest.

Dated: April 9, 2021

OF COUNSEL:

William F. Lee (*Pro Hac Vice*)
Louis W. Tompros (*Pro Hac Vice*)
Kate Saxton (*Pro Hac Vice*)
WILMER CUTLER PICKERING HALE
  & DORR LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
Email: william.lee@wilmerhale.com
Email: louis.tompros@wilmerhale.com
Email: kate.saxton@wilmerhale.com

Gregory H. Lantier (*Pro Hac Vice*)
Amanda L. Major (*Pro Hac Vice*)
WILMER CUTLER PICKERING HALE
  & DORR LLP
1875 Pennsylvania Avenue
Washington DC 20006
Tel: (202) 663-6000
Email: gregory.lantier@wilmerhale.com
Email: amanda.major@wilmerhale.com

Respectfully submitted,

*/s/ J. Stephen Ravel*
J. Stephen Ravel
Texas State Bar No. 16584975
Kelly Ransom
Texas State Bar No. 24109427
KELLY HART & HALLMAN LLP
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6429
Email: steve.ravel@kellyhart.com
Email: kelly.ransom@kellyhart.com

James E. Wren
Texas State Bar No. 22018200
1 Bear Place, Unit 97288
Waco, Texas 76798
Tel: (254) 710-7670
Email: james.wren@baylor.edu

Harry L. Gillam, Jr.
Texas State Bar No. 07921800
GILLAM & SMITH, L.L.P.
303 South Washington Avenue
Marshall, Texas 75670
Tel: (903) 934-8450
Email: gil@gillamsmithlaw.com

*Attorneys for Intel Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via electronic mail on April 9, 2021.

*/s/ J. Stephen Ravel*
J. Stephen Ravel