**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

VLSI TECHNOLOGY LLC,

     Plaintiff,

    v.

INTEL CORPORATION,

     Defendant.

No. 6:21-cv-00057-ADA

████████████

**PLAINTIFF VLSI TECHNOLOGY LLC'S OPPOSITION TO DEFENDANT
INTEL CORPORATION'S RULE 59 MOTION FOR A NEW TRIAL (D.I. 594)**

10939953

## <u>**TABLE OF CONTENTS**</u>

<u>**Page**</u>

INTRODUCTION AND LEGAL STANDARD ..........................................................................1

I.     THE COURT PROPERLY ADMITTED RELEVANT SETTLEMENT
AGREEMENTS...........................................................................................................1

     A.     These Settlement Agreements Were Relevant To Intel's Licensing Practices .....1

     B.     VLSI's Evidence Regarding These Agreements Was Proper Rebuttal................4

     C.     The Court's Jury Instructions Do Not Entitle Intel To A New Trial...................5

II.     INTEL'S MOTION FOR A NEW TRIAL BASED ON ITS FAILED DAMAGES
*DAUBERT* MOTIONS SHOULD BE DENIED ...............................................................6

     A.     The Admission Of Dr. Sullivan's Regression Analysis Was Proper ...................6

     B.     The Admission Of Dr. Sullivan's Contribution Apportionment Was Proper .......8

     C.     The Admission Of VLSI's Technical Expert Opinions Was Proper....................8

     D.     Dr. Sullivan Did Not Violate The Entire Market Value Rule............................10

     E.     Dr. Sullivan Did Not Introduce A New Per-Unit Damages Model At Trial ......11

III.     THE JURY INSTRUCTIONS DO NOT REQUIRE A NEW TRIAL...........................12

     A.     The Court's Hypothetical Negotiation Instruction Was Proper .........................12

     B.     The Court's Resolution Of Doubts Instruction Was Proper................................13

IV.     MR. PASCARELLA'S TESTIMONY WAS PROPERLY EXCLUDED......................14

V.     THE COURT PROPERLY EXCLUDED EVIDENCE REGARDING FORTRESS....16

VI.     INTEL'S MOTION FOR A NEW TRIAL BASED ON VLSI'S STATEMENTS
REGARDING MR. STOLARSKI'S MEDICAL ISSUES SHOULD BE DENIED ......18

VII.     THE WEIGHT OF THE EVIDENCE SUPPORTS THE JURY'S VERDICT .............19

CONCLUSION ....................................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arbuckle Mountain Ranch of Tex., Inc. v. Chesapeake Energy Corp.*,
 810 F.3d 335 (5th Cir. 2016) .......................................................6

*Arctic Cat Inc. v. Bombardier Rec. Prods. Inc.*,
 876 F.3d 1350 (Fed. Cir. 2017).....................................................9

*Bayer Healthcare v. Baxalta Inc.*,
 989 F.3d 964 (Fed. Cir. 2021)........................................................4

*Bazemore v. Friday*,
 478 U.S. 385 (1986)........................................................................8

*Belden Inc. v. Berk-Tek LLC*,
 805 F.3d 1064 (Fed. Cir. 2015)......................................................4

*Carson v. Polley*,
 689 F.2d 562 (5th Cir. 1982) .........................................................6

*Chan v. Coggins*,
 294 F. App'x 934 (5th Cir. 2008) .................................................15

*Colburn v. Bunge Towing, Inc.*,
 883 F.2d 372 (5th Cir. 1989) .........................................................3

*Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*,
 809 F.3d 1295 (Fed. Cir. 2015).....................................................15

*Datatreasury Corp. v. Wells Fargo & Co.*,
 758 F. Supp. 2d 382 (E.D. Tex. 2010) ...........................................1

*Eason v. Fleming Cos.*,
 No. 92-1390, 1993 WL 360736 (5th Cir. 1993) ............................4

*Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*,
 927 F.3d 1292 (Fed. Cir. 2019).......................................................2

*Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*,
 No. 2:15-cv-00037-RWS (E.D. Tex.), D.I. 485................................12

*Ericsson, Inc. v. D-Link Sys., Inc.*,
 773 F.3d 1201 (Fed. Cir. 2014)................................................6, 13

*ESW Holdings, Inc. v. Roku, Inc.*,
  No. 6:19-cv-44-ADA (W.D. Tex.), D.I. 172 ........................................................12

*Hansen v. Johns-Manville Prod.*,
  734 F.2d 1036 (5th Cir. 1984) ..........................................................................6

*Huawei Techs. Co. v. T-Mobile US, Inc.*,
  2017 U.S. Dist. LEXIS 218166 (E.D. Tex. Sept. 10, 2017) ..................................7

*i4i Ltd. P'ship v. Microsoft Corp.*,
  598 F.3d 831 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011) .................................19, 20

*Intel Corp. v. Tela Innovations, Inc.*,
  2021 WL 1222622 (N.D. Cal. Feb. 11, 2021) .............................................. *passim*

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
  694 F.3d 51 (Fed. Cir. 2012).......................................................................2, 20

*Manpower, Inc. v. Ins. Co. of Pa.*,
  732 F.3d 796 (7th Cir. 2003) .........................................................................6, 8

*Maxell, LTD. v. ZTE USA Inc.*,
  5:16-cv-00179-RWS (E.D. Tex.)......................................................................12

*McPherson v. Rowe*,
  366 F. App'x 43 (11th Cir. 2010) ...................................................................12

*Mondis Tech. v. LG Elecs.*,
  2011 U.S. Dist. LEXIS 78482 (E.D. Tex. June 14, 2011)....................................12

*Morgan v. Com. Union Assurance Cos.*,
  606 F.2d 554 (5th Cir. 1979) ...........................................................................4

*MV3 Partners LLC v. Roku, Inc.*,
  No. 6:18-cv-308-ADA (W.D. Tex.), D.I. 379 .....................................................12

*Nestier Corp. v. Menasha Corp.-Lewisystems Div.*,
  739 F.2d 1576 (Fed. Cir. 1984)........................................................................13

*Orthoflex, Inc. v. ThermoTek, Inc.*,
  986 F. Supp. 2d 776 (N.D. Tex. 2013) ...............................................................9

*Peterson v. Wilson*,
  141 F.3d 573 (5th Cir. 1998) ..........................................................................10

*Prism Techs. LLC v. Sprint Spectrum L.P.*,
  849 F.3d 1360 (Fed. Cir. 2017)..........................................................................5

*Retractable Techs. v. Becton, Dickinson & Co.*,
   2009 WL 8725107 (E.D. Tex. Oct. 8, 2009) ........................................................................3

*RMail Ltd. v. Amazon.com, Inc.*,
   2019 WL 10375642 (E.D. Tex. June 12, 2019)....................................................................2

*Sentius Int'l, LLC v. Microsoft Corp.*,
   2015 WL 451950 (N.D. Cal. Jan. 27, 2015) .......................................................................3

*Siemens Med. Sols. USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*,
   637 F.3d 1269 (Fed. Cir. 2011)........................................................................................12

*Siler-Khodr v. Univ. of Tex. Health Sci. Ctr. San Antonio*,
   261 F.3d 542 (5th Cir. 2001) .............................................................................................8

*Spectralytics, Inc. v. Cordis Corp.*,
   649 F.3d 1336 (Fed. Cir. 2011)....................................................................................4, 20

*Speedfit LLC v. Woodway USA, Inc.*,
   2019 WL 1436306 (E.D.N.Y. Mar. 29, 2019) ............................................................15, 16

*St. Clair Intellectual Prop. Consultants v. Acer, Inc.*,
   935 F. Supp. 2d 779 (D. Del. 2013)...................................................................................7

*State Contracting & Eng'g Corp. v. Condotte Am., Inc.*,
   346 F.3d 1057 (Fed. Cir. 2003)........................................................................................14

*Stragent, LLC v. Intel Corp.*,
   2014 WL 1389304 (E.D. Tex. Mar. 6, 2014) .....................................................................7

*TiVo, Inc. v. EchoStar Commc'ns Corp.*,
   516 F.3d 1290 (Fed. Cir. 2008)..........................................................................................9

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011)...........................................................................11, 14, 15

*United States v. Le*,
   512 F.3d 128 (5th Cir. 2007) ...........................................................................................19

*United States v. Sadler*,
   488 F.2d 434 (5th Cir. 1974) .............................................................................................4

*United States v. Sepulveda-Hernandez*,
   752 F.3d 22 (1st Cir. 2014) ..............................................................................................11

*United States v. Valencia*,
   600 F.3d 389 (5th Cir. 2010) .............................................................................................7

*Virnetx, Inc. v. Cisco Sys.*,
 767 F.3d 1308 (Fed. Cir. 2014)..................................................................................9, 14, 15

*Whitehead v. Food Max of Miss., Inc.*,
 163 F.3d 265 (5th Cir. 1998) ...................................................................................................1

*Williams v. Slade*,
 431 F.2d 605 (5th Cir. 1970) .................................................................................................20

**Rules**

Fed. R. Civ. P. 26............................................................................................................................12

Fed. R. Civ. P. 59(a) ........................................................................................................................1

Fed. R. Evid. 104(a) .......................................................................................................................14

\* Unless otherwise noted, internal citations and subsequent history are omitted, and emphasis is added.

\*\* Exhibits are attached to the Declaration of Jordan Nafekh, filed concurrently herewith.

## INTRODUCTION AND LEGAL STANDARD

Rule 59(a) of the Federal Rules of Civil Procedure allows a court to order a new trial "where the jury's verdict is 'against the great weight of the evidence' or will result in a 'miscarriage of justice.'" *Datatreasury Corp. v. Wells Fargo & Co.*, 758 F. Supp. 2d 382, 385 (E.D. Tex. 2010); *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 269 (5th Cir. 1998) (Courts "should not grant a new trial on evidentiary grounds unless the verdict is against the great weight of the evidence."). There is no basis for a new trial here. Intel's requests for a new trial should each be denied, as the Court's jury instructions and rulings were all either proper or erred solely to the benefit of Intel.

## I. THE COURT PROPERLY ADMITTED RELEVANT SETTLEMENT AGREEMENTS

Retreading old arguments, Intel contends the Nvidia, Intergraph, MicroUnity, Transmeta, and DEC settlements were improperly admitted. Intel is wrong; this evidence was proper rebuttal.

### A. These Settlement Agreements Were Relevant To Intel's Licensing Practices

At trial, VLSI's expert, Dr. Sullivan, presented an affirmative reasonable royalty opinion regarding the amount of damages. *See* 2/24 Tr. 588:16-674:23. In contrast, VLSI's licensing expert, Mark Chandler, was a ***rebuttal*** expert: he did not present a royalty number or offer the settlement agreements as comparable. Instead, he rebutted and contextualized Intel expert Mr. Huston's one-sided presentation of allegedly comparable licenses. Sealed Tr. 119:11-13, 128:3-11.

Mr. Huston offered twenty agreements and ███████████ as allegedly comparable. DDX-13.25, 31, 35; Sealed Tr. [Huston] 117:21-130:22. ████████████████████████████ *id.* 119:4-10, 125:23-126:1. Though Mr. Huston said the agreements established "████████████ ████████████████████████████████████████ ██████████████████████ he ***omitted*** from his direct examination the fact that Intel had entered into other licenses for much higher amounts. *Id.* 148:10-13. In rebuttal, Mr. Chandler

explained that Mr. Huston provided an incomplete picture of Intel's licensing practices:



Sealed Tr. 151:12-23. Mr. Chandler used the settlement agreements to demonstrate the discrepancy

between Mr. Huston's claim and Intel's actual licensing history, **not** to "support" a damages award.

As a rebuttal expert, Mr. Chandler was not required to give a comparability analysis of the

settlements, and Intel does not dispute that Mr. Chandler offered no opinion on a damages amount.

The cases Intel cites are inapposite; they support the irrelevant proposition that non-comparable

license agreements cannot be relied upon by a party to articulate a damages **amount** (*i.e.*, *Georgia-*

*Pacific* factor 2)—they do **not** address situations where licenses are offered to rebut testimony that

low-value agreements set the "going rate" for microprocessor patent licenses. *See, e.g.*, *Elbit Sys.*

*Land & C4I Ltd. v. Hughes Network Sys., LLC*, 927 F.3d 1292, 1300 (Fed. Cir. 2019) (discussing

"**what Hughes reasonably should pay** as a royalty…."); *LaserDynamics, Inc. v. Quanta Comput.,*

*Inc.*, 694 F.3d 51, 77–78 (Fed. Cir. 2012) (regarding an affirmative damages opinion).

As Mr. Chandler did not rely on the settlements for any proposed damages amount, non-

comparability did not bar their admissibility. *RMail Ltd. v. Amazon.com, Inc.*, 2019 WL 10375642,

at *5 (E.D. Tex. June 12, 2019) (excluding non-comparable licenses only in "the factor 2 context,"

and stating the order "does not address [the party's] reliance on those four licenses in any other

context"). *Intel Corp. v. Tela Innovations, Inc.*, 2021 WL 1222622 (N.D. Cal. Feb. 11, 2021) is

instructive. In that case, Intel argued the plaintiff's expert "improperly relies on several previous

licenses involving Intel with large lump sum payments up to $1.5 billion that are non-comparable."

*Id.* at *33. The plaintiff argued, and the court agreed, that he "uses these figures to shed light on

Intel's general licensing practices, including its purported willingness to make 'significant lump sum payments where it recognizes infringement risks.'" *Id.* The court distinguished Intel's case law—which Intel cites here—because "the Federal Circuit there was reviewing … non-comparable agreements [that] were proffered *as the evidence to support the award*." *Id.*

None of Intel's arguments warrant a new trial. *First*, none of Intel's cited testimony suggests Mr. Chandler "invited the jury to rely on the noncomparable agreements" for a damages amount. Mot. at 3. He merely explained ████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████ He twice confirmed it was *Dr. Sullivan* who conducted VLSI's royalty analysis. 3/1 Tr. 1506:15-1507:9, 1514:8-10.

*Second*, Intel alleges "VLSI relied on the settlements to improperly suggest past wrongdoing by Intel." Mot. at 3. Not so. Intel does not cite any record support for its bare assertion, and the cases it cites are inapposite. *Sentius Int'l, LLC v. Microsoft Corp.*, 2015 WL 451950, at *6 (N.D. Cal. Jan. 27, 2015) involved the admissibility of a JMOL decision, not a settlement agreement. *See also Retractable Techs. v. Becton, Dickinson & Co.*, 2009 WL 8725107, at *2 (E.D. Tex. Oct. 8, 2009) (excluding references to prior litigations, not settlement agreements).

*Third*, Intel contends "VLSI used the settlements to evade the Court's *Daubert* and *in limine* rulings, which barred VLSI and Mr. Chandler from portraying Intel as a 'patent holdout'." Mot. at 3. But Intel again cites no record support for its assertion, much less any Intel objection. *See Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 375–76 (5th Cir. 1989). Rather, Intel admits "Mr. Chandler did *not* utter the phrase 'patent holdout.'" Mot. at 3. He just articulated differences between "real world" and hypothetical negotiations to show the low relevance of Intel's evidence:

> Q.  Now, we've heard a lot about so-called real-world licenses and offers from Mr. Huston. Are there ways in which a hypothetical negotiation differs from a negotiation in the real world?
>
> A.  Yes. There's many ways. … So you have a willing licensee and you have a willing licensor. In the real world, a company such as Intel can just simply refuse to reach an agreement, and then the patent owner is forced to take them to court to pursue a license.

3/1 Tr. 1502:2-22. Even if Mr. Chandler **had** made a "patent holdout" argument (he did not), Intel has not demonstrated that any such argument—which accurately describes Intel's patent licensing practices—would be "unfair[]" to Intel (Mot. at 4). *See Intel Corp.*, 2021 WL 1222622, at \*33.

Finally, there is no support for Intel's speculation that the jury based its damages on any settlement. A "jury is entitled to choose a damages award within the amounts advocated by the opposing parties." *Bayer Healthcare v. Baxalta Inc.*, 989 F.3d 964, 983 (Fed. Cir. 2021). Intel "does not really know if the jury based its award" on any settlement, and a source having a given number does "not somehow put the number … off limits to the jury." *Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1346-47 (Fed. Cir. 2011). The damages awards here were well-supported by the record; for both patents, the jury awarded amounts between those advocated by the parties.

### B.     VLSI's Evidence Regarding These Agreements Was Proper Rebuttal

Intel next contends "VLSI was required to offer its damages evidence in its case-in-chief." Mot. at 5. Not so. Mr. Chandler's testimony was offered as rebuttal to Mr. Huston. The Court was well within its discretion to allow this rebuttal. *See United States v. Sadler*, 488 F.2d 434, 435 (5th Cir. 1974). Rebuttal denotes "evidence introduced by a Plaintiff to meet **new facts** brought out in his opponent's case in chief." *Morgan v. Com. Union Assurance Cos.*, 606 F.2d 554, 555 (5th Cir. 1979). Mr. Huston's relied-upon agreements were **new facts** that **Intel** offered in its case-in-chief.

None of Intel's cited cases suggest Mr. Chandler's testimony was improper. *See Eason v. Fleming Cos.*, No. 92-1390, 1993 WL 360736, at \*7 (5th Cir. 1993) (testimony excluded because the "purpose … was to **corroborate** the testimony of Eason"); *Belden Inc. v. Berk-Tek LLC*, 805

F.3d 1064, 1080-82 (Fed. Cir. 2015) (excluding evidence submitted *in reply*, not rebuttal). Having chosen to present a faulty comparable license analysis, Intel cannot object to proper rebuttal.

### C.   The Court's Jury Instructions Do Not Entitle Intel To A New Trial

Contrary to Intel's assertion, the Court did not err in declining to instruct the jury that it may consider "whether any payment terms set forth in the license agreement were influenced by a desire to avoid the cost and burden of further litigation, and thus do not reflect the value that the parties attributed to the patented invention." Mot. at 5-6. As *neither* party relied on the settlement agreements to show the "value" of the inventions, Intel's jury instruction was unnecessary.

Intel's assertion that "[t]he omission … was prejudicial because it encouraged the jury to consider the settlements without accounting for the value attributable to ending litigation," Mot. at 6, makes no sense. The *omission* of an instruction cannot *encourage* the jury to do anything. Intel does not cite any purported improper encouragement. It also ignores that *in the same instruction*, the Court *did* inform the jury that when considering other licenses, the jury "*must account for any differences* between those licenses and the hypothetically negotiated license," even calling out the state of being "in a lawsuit" as one such factor to consider. D.I. 563 at Instr. No. 34.

Even if VLSI had relied on the settlements as comparable (it did not), Intel has not shown any related value adjustment would have been favorable to VLSI. Indeed, *Intel* likely would have benefited from consideration of those licenses, as such licenses are often *under*valued: patentees may be "influenced by a desire to avoid the costs and burden of further litigation," Mot. at 5-6, because they cannot afford litigation against a powerful defendant. *See, e.g.*, *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1369 (Fed. Cir. 2017) ("the earlier suit's settlement figure may be *too low* to the extent that it was lowered *by the patent owner's* discounting of value by a probability of losing on validity or infringement"). Thus, Intel has not even provided a cogent explanation for how it was purportedly prejudiced by the omission of its instruction.

## II.   INTEL'S MOTION FOR A NEW TRIAL BASED ON ITS FAILED DAMAGES *DAUBERT* MOTIONS SHOULD BE DENIED

Intel next recycles its *Daubert* arguments against Dr. Sullivan, mischaracterizing the facts, Dr. Sullivan's analysis, and the law. For the reasons the Court rejected Intel's original attacks on Dr. Sullivan's detailed work (*see, e.g.*, D.I. 454, incorporated here), the Court should again reject Intel's claims. Dr. Sullivan employed fact-intensive analysis carefully tailored to the technological benefits of the asserted patents, with methodologies that have been repeatedly published, peer reviewed, and used in licensing negotiations. *See, e.g.*, 2/24 Tr. 605:20-611:21, 671:5-674:23; *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 808 (7th Cir. 2003) ("[R]egression analysis [is] a proven statistical methodology used in a wide variety of contexts."). This aligns directly with Federal Circuit authority that "[t]he essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). Intel's motion ignores this well-settled law and the extensive academic and legal support for Dr. Sullivan's methodology.[1]

### A.   The Admission Of Dr. Sullivan's Regression Analysis Was Proper

Intel first argues that the Court's *Daubert* ruling was incorrect and Dr. Sullivan's regression analysis was "unreliable" because it allegedly did not apportion "between the patented feature and the unpatented features." Mot. at 7-8. But Dr. Sullivan explained at trial how he carefully used his

---

[1] Intel argues in a footnote that the clerk's inclusion of a few extra exhibits with the hundreds given to the jury warrants a new trial. *See* D.I. 594 n.8. By relegating this argument to a footnote with no real substance, Intel has waived it. *Arbuckle Mountain Ranch of Tex., Inc. v. Chesapeake Energy Corp.*, 810 F.3d 335, 339 (5th Cir. 2016) ("Arguments subordinated in a footnote are . . . waived."). Further, Intel does not contend the exhibits were inadmissible, or that they add anything to the record. The exhibits just show Dr. Sullivan's damages calculations, which he presented during his testimony. And although he did not discuss certain numbers on the public record for confidentiality reasons, those numbers appear in admitted exhibits, including PTX-3903 and PTX-3904. As the few extra exhibits were duplicative of other record evidence, their inclusion was irrelevant and nonprejudicial. *See Hansen v. Johns-Manville Prod.*, 734 F.2d 1036, 1040 (5th Cir. 1984) ("[I]mproper admission of evidence that is merely cumulative . . . is harmless error."); *Carson v. Polley*, 689 F.2d 562, 570 (5th Cir. 1982) (new trial only where the jury "inadvertently considered *inadmissible* evidence").

regression model to do exactly that—to "provid[e] the mathematical relationship between price and clock speed *separate and apart* from all of the other features and factors." 2/24 Tr. 614:3-23.

Rather than actually show a failure to apportion, Intel makes only two arguments: (i) that any regression was inadmissible because "there was no evidence that Intel, Freescale, or anyone else had ever used a regression method to value a patented feature," and (ii) that Dr. Sullivan's regression analysis included "non-accused products and features." Mot. at 7-8. The first argument is false; the second misapprehends Dr. Sullivan's regression and regression analysis generally.

*First*, contrary to Intel's claim, there is in fact evidence of regressions being used to value patented features, including evidence at trial and extensive evidence in VLSI's opposition to Intel's *Daubert*. *See, e.g.*, 2/24 Tr. [Sullivan] 610-11; D.I. 454 at 8-9 (citing *Huawei Techs. Co. v. T-Mobile US, Inc.*, 2017 U.S. Dist. LEXIS 218166, at *29 (E.D. Tex. Sept. 10, 2017) ("Dr. Vander Veen's mobile data pricing regression analysis adequately approximates the value of the underlying technology…."); *St. Clair Intellectual Prop. Consultants v. Acer, Inc*., 935 F. Supp. 2d 779, 782 (D. Del. 2013) (using hedonic regression for damages)). The Fifth Circuit has recognized that regressions can be used to "understand[] the relationship between a dependent and an explanatory variable," and are "a powerful tool." *United States v. Valencia*, 600 F.3d 389, 427 (5th Cir. 2010). Intel's reliance on *Stragent, LLC v. Intel Corp*., 2014 WL 1389304 (E.D. Tex. Mar. 6, 2014), is misplaced. The *Stragent* court was criticizing not the regression—as Intel suggests—but the expert's decision, having completed his regression, to then adopt an improper "rule-of-thumb" that arbitrarily assigned equal value to all 19 features. *Stragent*, 2014 WL 1389304 at *4. Dr. Sullivan did no such thing. He controlled for the relationship between price and frequency, then applied the results to the technically apportioned benefits identified by VLSI's technical experts. In sum, regression models of many different kinds have been accepted by federal courts, in many

- 7 -

different contexts. *E.g.*, *Manpower*, 732 F.3d at 808; *Siler-Khodr v. Univ. of Tex. Health Sci. Ctr. San Antonio*, 261 F.3d 542, 547 (5th Cir. 2001). Intel's own failure to use this lauded tool in its negotiations does not prevent others from applying it for its long-established purpose.

**Second**, as Dr. Sullivan explained at trial, he included non-accused products and features so that he ***could*** reliably apportion. *E.g.*, 2/24 Tr. 617-22. Removing data for other products and features was not econometrically appropriate and would have made his model less reliable. *Id.* Intel's criticisms are not valid, but even if they were, they at most go to weight, not admissibility. *Bazemore v. Friday*, 478 U.S. 385, 400 (1986) ("While the omission of variables from a regression analysis may render the analysis less probative … [n]ormally, failure to include variables will affect the analysis' probativeness, not its admissibility."). Ultimately, Intel does not claim that Dr. Sullivan's ***damages calculations*** include non-accused products or features, and they do not. Accordingly, there was no failure to apportion, much less any error that warrants a new trial.

### B. The Admission Of Dr. Sullivan's Contribution Apportionment Was Proper

Intel next repeats its *Daubert* argument that Dr. Sullivan's apportionment allegedly gave "100% of the profits attributable to the alleged use of the patents" to VLSI. Mot. at 8. Not so. Dr. Sullivan looked to each party's contribution to the incremental profits associated with the patented inventions, and apportioned to return significant profits to Intel. *E.g.*, 2/24 Tr. 660-64. This case-specific analysis provided nearly ███████ dollars in incremental profits to Intel, and was based on Intel's confidential spending on accused products, removing it far from any rule of thumb. *See id.*

### C. The Admission Of VLSI's Technical Expert Opinions Was Proper

Intel next attacks the technical inputs to Dr. Sullivan's analysis. Once again, the Court properly rejected each of Intel's challenges at the *Daubert* stage, and none justifies a new trial.

**First**, Intel challenges Dr. Conte's and Dr. Annavaram's calculations of incremental benefits. But Intel's quibbles with their testing, which used Intel's own tools, concern Intel's claim

that the testing did not extend to every variant of the accused products. As already briefed in D.I. 447-448, which VLSI incorporates, there is no such requirement. *See Virnetx, Inc. v. Cisco Sys.*, 767 F.3d 1308, 1328-29 (Fed. Cir. 2014) (damages "may involve some degree of approximation" and require only "a ***reasonable estimate*** of the value of [the] claimed technology"); *Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 790 (N.D. Tex. 2013) ("Expert testimony is not unreliable simply because there are differences between the test unit and the unit at issue.").

Intel also mischaracterizes the evidence, which established that the calculated benefits for each patent provided a ***conservative*** measure of the inventions' value, making them not only representative but likely to ***undervalue*** VLSI's contributions. *E.g.*, Sealed Tr. [Conte] 29:7-24, 70:2-17, 71:12-72:2; 2/24 Tr. [Annavaram] 542:9-19, 574:4-575:1. Further, as this Court already determined, this type of complaint, even if true, would not justify exclusion or a new trial. *See, e.g.*, *TiVo, Inc. v. EchoStar Commc'ns Corp.*, 516 F.3d 1290, 1308 (Fed. Cir. 2008) ("[T]here is nothing improper about an expert testifying in detail about a particular device and then stating that the same analysis applies to other allegedly infringing devices"); *Arctic Cat Inc. v. Bombardier Rec. Prods. Inc.*, 876 F.3d 1350, 1369-70 (Fed. Cir. 2017) (later technology used to value product).

Intel next points to a series of well-supported choices Dr. Conte and Dr. Annavaram made in deciding which models to test, which products to focus on, and which alternatives to consider. Intel again rehashes arguments VLSI already refuted in D.I. 447 and 448. In each case, Intel misdescribes Dr. Conte's and Dr. Annavaram's work, then cites testimony from its own witnesses disagreeing with them. For example, Intel says Dr. Annavaram observed the power associated with the ring domain (rather than ring wires) in working with Dr. Conte to apportion Speed Shift's benefits to the '759 Patent. But as Dr. Conte explained, █████████████████████ ████████████████████████████████████████████████████████████████

████████████████████████████ Similarly, for the '373 Patent, Intel again claims that Dr. Annavaram chose "the wrong results from the tests (using Core C7, not Package C7)." Mot. at 9. This is also incorrect. Dr. Annavaram specifically testified that he based his calculations only on power savings during the Package C7 state, not Core C7. 2/24 Tr. 570:1-571:4. Ultimately, Intel's mischaracterizations and supposed disagreement with these conclusions cannot justify a new trial. *See Peterson v. Wilson*, 141 F.3d 573, 577 (5th Cir. 1998) ("[C]ourts cannot . . . grant a new trial simply because [the court] would have come to a different conclusion than the jury did.").

Finally, Intel argues that Dr. Conte's opinion about the relationships between power, performance, and speed were based on one document and "were contradicted" by other evidence. Mot. at 10-11. But again, Intel's presentation of supposedly contrary evidence does not mean the jury had to accept Intel's evidence instead of VLSI's. VLSI presented more than sufficient evidence supporting these relationships. *See, e.g.*, Sealed Tr. [Conte] 30:12-31:17, 71:19-72:6. *See also* D.I. 457 (incorporated here). The jury then performed its classical function of weighing both sides' evidence and reaching a conclusion. A new trial is not warranted.

### D.        Dr. Sullivan Did Not Violate The Entire Market Value Rule

Intel next argues that Dr. Sullivan violated the entire market value rule. Not so. As Intel's argument makes clear, Dr. Sullivan did not calculate damages based on Intel's overall revenues. Instead, Dr. Sullivan calculated fully apportioned incremental revenues, deducted costs, and calculated a reasonable royalty based only on the inventions' contribution to Intel's *incremental* profits. Regardless, by not raising any methodology challenge at *Daubert*, Intel has waived it.

Intel also suggests Dr. Sullivan's reference to total accused product sales as a *starting point* for calculating apportioned revenues was somehow prejudicial. It was not. As this Court held, accused revenues were relevant to calculating damages. 1/20/2021 Hr'g Tr. 57:17. Intel tries to warp Dr. Sullivan's statements into an admission, ████████████████████████████

perform his calculations without disclosing the first number used. D.I. 362-6 [Sullivan Dep.] 142:13-19 (explaining "███████████████████████████████████████ ██████████"). There is no rule preventing an expert from showing his work—indeed, it would have been highly prejudicial to prevent Dr. Sullivan from doing so. *Uniloc* does not hold otherwise. It simply explains that patentees should not calculate damages as a percentage of total revenues unless the inventions create the basis for customer demand, and that it was improper for an expert to attempt to justify damages "by reference to a prepared pie chart, showing Microsoft's $19.28 billion in revenue with a 2.9% sliver representing his calculated royalty rate." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011). Dr. Sullivan did not apply a royalty rate percentage to Intel's total accused revenues to calculate damages, and never relied on those revenues to justify his result. At trial, Intel also never sought a ruling on any objections to the demonstratives showing the total accused revenues, thereby waiving this argument.

### E.    Dr. Sullivan Did Not Introduce A New Per-Unit Damages Model At Trial

Intel's final complaint about Dr. Sullivan's methodology is that he was permitted to divide two numbers long known to Intel—his calculated reasonable royalty, and the number of accused units. This was not a new methodology, and it was not a surprise. Any of Intel's four damages experts could have performed this simple calculation. As the Court concluded, allowing Dr. Sullivan to be a "human calculator" did not prejudice Intel. 2/24 Tr. 648-49. When other courts have addressed this, they have consistently held witnesses are entitled to do simple math to explain their positions. *See, e.g.*, *United States v. Sepulveda-Hernandez*, 752 F.3d 22, 34–35 (1st Cir. 2014) (affirming decision to allow a witness to perform multiplications and additions, explaining that "the district court did not abuse its discretion in permitting the chemist to perform simple multiplication"; "[s]imple arithmetic, such as ordinary multiplication, is a paradigmatic example of the type of everyday activity that goes on in the normal course of human existence"). Intel's

lone case relates to matters far afield, including an expert whose "research involved national security matters," such that he "was unable" to produce related documents and thus prevented the other side from "examin[ing] the studies that formed the basis" of his opinions. *Siemens Med. Sols. USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc*., 637 F.3d 1269, 1286 (Fed. Cir. 2011). *Cf. McPherson v. Rowe*, 366 F. App'x 43, 45 (11th Cir. 2010) (explaining that testimony using a "generally-accepted mathematical formula" "is not the type of information that Rule 26 requires an expert to include in his report"). Intel's recycled motion for a new trial should be denied.

## III.     THE JURY INSTRUCTIONS DO NOT REQUIRE A NEW TRIAL

### A.     The Court's Hypothetical Negotiation Instruction Was Proper

Intel argues that it was error to instruct the jury that "[u]nlike in a real world negotiation, all parties to the hypothetical negotiation are presumed to believe that the patents are valid and infringed and that both parties were willing to enter into an agreement." Mot. at 13. Intel is wrong.

*First*, the Court's instruction was an accurate statement of law used repeatedly in this Court and elsewhere. *See MV3 Partners LLC v. Roku, Inc.*, No. 6:18-cv-308-ADA (W.D. Tex.), D.I. 379 at Instr. No. 26 (identical instruction).[2] It is well-settled that the hypothetical negotiation is not a "real world" negotiation. *Mondis Tech. v. LG Elecs.*, 2011 U.S. Dist. LEXIS 78482, at *23 (E.D. Tex. June 14, 2011) (explaining that a "license in the 'real-world' with uncertainty regarding the validity of the patents and infringement" was unlike "the hypothetical negotiation").

*Second*, Intel has shown no prejudice. Intel claims that the instruction "undermined Intel's credibility" or "improperly favored VLSI's damages theory over Intel's." Mot. at 13. Not so. The instruction was an objective statement of law. It did not reference any party or suggest that

---

[2] *See also, e.g.*, *ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-cv-44-ADA (W.D. Tex.), D.I. 172 at Instruction No. 1.27 (same); *Maxell, LTD. v. ZTE USA Inc.*, 5:16-cv-00179-RWS (E.D. Tex.), D.I. 223 at Instruction No. 7.1 (same); *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, No. 2:15-cv-00037-RWS (E.D. Tex.), D.I. 485 at Instruction No. 10.1.1 (similar).

the jury should take a particular view of any evidence. Intel is not entitled to its own set of laws.

**B.      The Court's Resolution Of Doubts Instruction Was Proper**

Intel next argues it was prejudiced by a neutral instruction and a single word "infringer" in a title taken out of context. Mot. at 14-15. However, Intel's assertion of "obvious[] prejudice," *id.* at 14, ignores that the instruction was limited to resolving doubts against the "party [who] has failed to keep proper records" and was only directed to "confusion or difficulty that [the jury] encounter[s] in resolving ***that*** [i.e., record keeping] issue"—***not*** a blanket resolution of all doubts.

Intel's suggestion that Instruction No. 33's title (which begins with "Damages" and comes from AIPLA's Model Jury Instructions, § V.10.3 (2019)) calls Intel an "infringer" is unsupported. Instruction No. 33 is part of the damages section of the charge, which begins with an admonition that damages should be considered only "***if*** you find that Intel infringed any valid claim," and notes that the Court is "not suggesting which party should win this case, on any issue." D.I. 563 at Instr. No. 29. Intel's argument would suggest that ***all*** instructions on infringement or damages prejudice the defendant, and ***all*** instructions on invalidity prejudice the plaintiff. That plainly is not the case.

Intel also asserts it was error to include Instruction No. 33 because allegedly the issue of record keeping was not before the jury. Not so. Intel questioned VLSI's experts regarding, for example, the sufficiency of products, accused features, and financial data in their damages models. *See* Part II, *supra*. Intel thus made an issue of alleged absence of information or documentation, resulting from Intel's own incomplete records. But even if the instruction were extraneous (it was not), Intel has not shown any prejudicial error. The instruction is neutral as to the party ("if you determine that ***either party*** has failed to keep proper records…," *id.* at 14), and Intel's cited cases discuss error from ***necessary*** instructions ***not given***, not ***extraneous*** instructions ***given***. *Nestier Corp. v. Menasha Corp.-Lewisystems Div.*, 739 F.2d 1576, 1578–80 (Fed. Cir. 1984) (finding no error where instruction ***not given*** was extraneous); *Ericsson, Inc.*, 773 F.3d at 1235 (finding error

from *failure to give* instructions, while noting that omission of extraneous instructions is not error).

Finally, Intel offers the jury's requests for demonstratives or for Mr. Stolarski's deposition as purported examples of alleged jury confusion, but these are unrelated to "keep[ing] proper records": the jury knew these documents existed, but was informed that they could not be provided. D.I. 559, 561. Intel's claims of prejudice are untethered from both the facts and Instruction No. 33.

## IV.   MR. PASCARELLA'S TESTIMONY WAS PROPERLY EXCLUDED

Intel's latest one-page motion regarding Mr. Pascarella simply rehashes its arguments in opposition to VLSI's *Daubert* motion. As already explained, Mr. Pascarella's testimony failed *every step* of the *Daubert* test, and his opinions were properly excluded under controlling caselaw. *See* D.I. 276 at 2-14; 12/15/2020 Hr'g Tr. at 3-5. VLSI will readdress only certain key points here.

Importantly, the Federal Circuit has repeatedly affirmed that "rules of thumb" not tied to the infringer's use of the inventions are improper. *See, e.g.*, *Uniloc*, 632 F.3d at 1314; *Virnetx*, 767 F.3d at 1333. Mr. Pascarella's opinions contravened this principle: under his framework, damages should be no more than a level of annualized "return" on the patent owners' "investment"— regardless of what value the inventions had, what use were made of the inventions, and what the inventions even were. *See* D.I. 276 at 3-6. Under this "ROI" approach, the parties would agree to the same royalty for a patent that generated no value and a patent that generated billions of dollars; Alexander Graham Bell's telephone patent would be valued no different from any other.

Not surprisingly, this approach is improper, and the Court's exclusion was justified on multiple grounds. ***First***, for Mr. Pascarella's opinions to be admissible, a court would need to determine that he was qualified. FED. R. EVID. 104(a). This step alone justifies exclusion, because he is not. Mr. Pascarella is a former investment banker with no experience in determining a royalty for a processor patent, who has never been admitted as an expert in a patent case. Ex. A, 17:14-18:4, 18:19-19:3, 29:13-29:17, 33:16-33:19; *see State Contracting & Eng'g Corp. v. Condotte Am.,*

*Inc.*, 346 F.3d 1057, 1073 (Fed. Cir. 2003) (rejecting testimony where expert "had no experience in placing a value on a patent and did not have any knowledge regarding reasonable royalties").[3]

**Second**, a court would need to determine that Mr. Pascarella's opinions were reliable, but Mr. Pascarella's opinions failed all prongs of the *Daubert* test. He has never performed the type of ROI analysis he was offering here. Ex. A 19:4-21:1, 93:19-94:14. His use of ROI has never been peer-reviewed, *id.* 38:20-39:11, or accepted, as relevant to a reasonable royalty calculation. *See Chan v. Coggins*, 294 F. App'x 934, 938-39 (5th Cir. 2008). And some of Mr. Pascarella's reference ROIs were negative, further underscoring the unreliability of his opinions. *See* D.I. 276 at 9.

**Third**, Mr. Pascarella's opinions were properly excluded as irrelevant. Royalty damages must be tied "***to the invention's value***" to the infringer. *Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1302 (Fed. Cir. 2015); *see also Virnetx*, 767 F.3d at 1326-29 (rejecting approach untied to the invention and its contribution to accused products). Mr. Pascarella does not know what value the patents contributed to Intel's products. Ex. A, 70:1-71:5. He could not identify any accused features. *Id.* 103:17-108:16, 109:12-113:16, 100:17-101:4. He did not consider the profitability of any accused product. *Id.* 77:2-20, 79:23-80:19; Ex. B, 288:9-289:1. His opinions are generic, would apply to any patent, and are inadmissible for the same reasons the Federal Circuit rejected the opinions in *Uniloc* and *Virnetx*. *E.g.*, *Uniloc*, 632 F.3d at 1313, 1315.

**Fourth**, and finally, Mr. Pascarella's opinions should be rejected for the same reason past ROI and similar analyses have been rejected. For example, *Speedfit LLC v. Woodway USA, Inc.*,

---

[3] Mr. Pascarella also has never negotiated the price of a patent license. Ex. A, Pascarella Dep. 118:5-119:1. He has never licensed a patent. *Id.* 114:7-114:21. He has never been consulted on the appropriate royalty rate for a patent. *Id.* 119:7-121:15. He has never bought or sold a patent. *Id.* 121:16-122:9. He has no experience in patent licensing. *Id.* 38:6-13. He has never published an article about patent licensing, nor has he published an article about his novel return-on-investment theory. *Id.* 38:20-39:11. He does not know what factors would be used to calculate damages for patent infringement. *Id.* 90:10-90:25. He has no experience in connection with acquiring patents other than in the context of acquisitions of companies that own patents. *Id.* 124:11-125:18.

2019 WL 1436306 (E.D.N.Y. Mar. 29, 2019), involved an opinion much like Mr. Pascarella's. Speedfit's expert asserted that the parties would have agreed to a $250,000 upfront payment, based on "Woodway's claim that it invested $150,000 in improving Speedfit's treadmill, and calculating the yield on this investment assuming an 18% rate of return from the time of the payment." *Id.* at *2. The court excluded that opinion as speculative and conjectural, holding that "[t]here is an insufficient basis for the court to conclude that the parties would have agreed to such an upfront payment in any hypothetical negotiation." *Id.* at *11. In sum, the Court was right to exclude Mr. Pascarella's opinions, and Intel's motion for a new trial on this basis should be denied.[4]

## V.      THE COURT PROPERLY EXCLUDED EVIDENCE REGARDING FORTRESS

Intel contends the Court erred by excluding certain evidence concerning non-party Fortress Investment Group LLC ("Fortress"). Intel is wrong. Under the circumstances, it would have been error for the Court to allow Intel to offer the evidence. It certainly was not error to exclude it.

Leading up to trial, Intel made it abundantly clear that it intended to attack Fortress in front of the jury. *None* of what Intel wanted to tell the jury about Fortress has any relevance to the issues in this case. By way of example,

---

[4] Even if the exclusion of Mr. Pascarella's opinions had been an error, it would have been a harmless one. The jury was informed, repeatedly, of the prices associated with past acquisitions of the patents-in-suit; indeed, Intel's trial presentation placed great emphasis on this. *See, e.g.*, Sealed Tr. [Huston] 112:6-117:18, 131:8-10; 3/1 Tr. [Intel Closing] 1597:4-10. Thus, the jury was aware of all that Mr. Pascarella could have told them: that, because of the enormous value Intel has derived from the patented technologies, these patents were good investments.

*Id.* at 2-3 (citing evidence).

In light of these attacks, the Court ruled Intel had to pre-clear evidence concerning Fortress before offering it at trial. Midway through trial, Intel designated, and VLSI objected to, snippets of deposition testimony regarding Fortress █████████████████████████████████████ ███████████████████████████████. *See* Exs. C, D, 2/25/2021 Emails to Court. The Court personally reviewed the disputed excerpts and excluded them. 2/26 Tr. 1030:5-25. That ruling was clearly correct. None of the snippets were relevant to infringement, damages, validity, or any other jury issue, and would further be misleading and confusing, and highly prejudicial.[5]

Intel incorrectly argues VLSI "opened the door" to testimony about Fortress by discussing VLSI's investors. But it was ***Intel*** that offered that evidence. ***Intel*** asked non-party witness James Spehar who besides NXP would benefit from VLSI's licensing, so Mr. Spehar identified some of VLSI's investors. 2/22 Tr. [Spehar] 300:1-12. A party cannot use cross-examination to "open the door" to evidence it seeks to offer. Moreover, in any event, since Fortress does not own VLSI, evidence concerning VLSI's investors does not "open the door" to evidence concerning Fortress.[6]

Finally, although Intel now characterizes the Court's ruling as precluding all evidence regarding Fortress, that is not correct. The Court merely required Intel to pre-clear that evidence. When Intel submitted certain testimony mid-trial, the Court properly excluded it. Intel could have submitted different excerpts for the Court's consideration, but Intel did not. Intel is not entitled to

---

[5] After the Court ruled against Intel on the handful of deposition excerpts that Intel's counsel submitted mid-trial concerning Fortress, on February 26, 2021, Intel filed a sealed offer of proof discussing additional evidence Intel had not previously offered or requested a ruling upon. D.I. 535. Intel did not obtain a ruling on the offer of proof, so the additional evidence it referenced should be disregarded. Regardless, the additional evidence concerning Fortress is merely more of the same and is properly excluded for the same reasons – it is irrelevant, confusing, and prejudicial.

[6] Intel also incorrectly contends that VLSI "opened the door" to Fortress by referring to VLSI as a "very small company" during opening statements. By parity of reasoning, under Intel's theory, saying anything about VLSI would have "opened the door" to the Fortress evidence. Intel is wrong – none of the Fortress evidence that Intel sought to offer somehow became relevant and not prejudicial simply because VLSI was accurately referred to as a "very small company."

a new trial on the basis that the Court excluded the limited excerpts that Intel submitted for review.

## VI. INTEL'S MOTION FOR A NEW TRIAL BASED ON VLSI'S STATEMENTS REGARDING MR. STOLARSKI'S MEDICAL ISSUES SHOULD BE DENIED

Intel attempts to create an illusion of an improper reason for Mr. Stolarski's absence, but the facts are mundane. Mr. Stolarski traveled to Texas to attend trial, which was delayed due to weather. D.I. 505. After attending initial proceedings, he had to leave for a medical issue.

Reasons for Mr. Stolarski's absence were *part of the evidentiary record*: indeed, as Intel's motion admits, Mr. Chandler testified "that he 'spoke with Mr. Stolarski' '[b]efore he had to leave for a medical issue'" during his direct examination. Mot. at 18 (quoting 3/1 Tr. 1501:16-23). Intel did not object to this testimony during the examination or outside the presence of the jury, or request a curative instruction. Indeed, Intel does not even appear to be objecting now. During trial, Intel did nothing at all, not through cross-examination, not before resting, and not before or after the jury charge.[7] Intel attempts to imply that the reasons for Mr. Stolarski's absence were revealed *after* it "had already relied on Mr. Stolarski's absence to make certain arguments to the jury" in closing. Mot. at 18. Not so. *Mr. Chandler testified hours before* Intel chose to argue that "No one from VLSI walked by you, took the oath and got on the stand. Not the CEO, Mr. Stolarski, who was introduced to you on the first day of jury selection and *who hasn't been here since*." 3/1 Tr. [Intel Closing] 1601:24-1602:3. In rebuttal, VLSI reminded the jury of Mr. Chandler's testimony. To the extent Intel's "credibility" was "undermined," Mot. at 18, it was by Intel's own hand.

For the other two statements in PDX10.72, Intel misstates the record. After Intel's objection, the Court decided to "take the slide down" as Intel asked, and Intel did not follow with any request

---

[7] Intel did not lack opportunities to object. Intel did not object after VLSI rested, 3/1 Tr. 1517:9-12, or after the Court asked, outside the presence of the jury, whether there was anything "to take up" prior to the last jury instruction being read, *id.* 1555:18-1556:22 (argument regarding verdict form and jury instructions), or when Intel renewed objections after closing. *Id.* 1629:14-1631:25.

for a curative instruction. Nor did Intel object when VLSI sought leave to discuss "other aspects about Mr. Stolarski" (which the Court allowed), or when VLSI discussed his depositions and the fact that many, like Mr. Stolarski, watched the trial on Zoom. 3/1 Tr. [VLSI Closing] 1616:17-1617:2. Even now in its motion, Intel does not claim these statements were inaccurate; Intel only seems to suggest that the statements were not record evidence. But *Intel* referred to Mr. Stolarski's deposition during multiple examinations, *e.g.*, 2/24 Tr. [Sullivan] 735:8-9, 739:19-740:8 ("Well, and you reviewed *Mr. Stolarski's deposition*?  A. … Yes."); 3/1 Tr. [Huston] 1381:2-7 ("Q. You understand VLSI's CEO Michael Stolarski has done work as a licensing attorney himself, right? … According to *his deposition*, had he ever used hedonic regression…?"), and the jury heard it was possible for people to watch the trial over Zoom, *e.g.*, 2/24 Tr. [Sullivan] 698:5-8, 720:10-12. Intel does not explain how these statements could have resulted in prejudice. They did not.

Intel's motion also does not identify any error by the Court. The simple fact of the matter is that Intel did not object to Mr. Chandler's testimony about Mr. Stolarski's absence, or to closing argument about Mr. Stolarski's deposition and Zoom. Under these circumstances, there is no error. *United States v. Le*, 512 F.3d 128, 134 (5th Cir. 2007) (no error where statements were not objected to, and when an objection was sustained but counsel did not request a curative instruction).

## VII.   THE WEIGHT OF THE EVIDENCE SUPPORTS THE JURY'S VERDICT

Intel concludes by claiming that the jury's damages verdict is "clearly excessive" and that its size alone warrants a new trial. But "[to] be excessive, the award must *exceed the 'maximum amount calculable* from the evidence.'" *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 857 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011). Intel ignores the evidence showing that ███████████ Intel products obtained substantial performance and power savings benefits from the asserted patents, Intel has made over ██████████ from those patented benefits, and even after paying VLSI the awarded damages, Intel will still make an additional ██████████ from its infringement. *See,*

*e.g.*, 2/24 Tr. [Sullivan] 593, 653-74; PDX7.74-76. Given that record, there is nothing excessive about the verdict. The jury's evidence-based decision to award a royalty based on "the use made of the invention by the infringer" as Section 284 requires cannot justify a new trial. This was not a decision ruled by "passion or prejudice" as Intel alleges; it was one based on facts, many of which, including that Intel sold nearly a billion accused products, Intel does not dispute.

Further, as discussed in Part I.A above, there is no merit to Intel's speculative assertion that the jury's damages verdict "appears to come from non-comparable settlement agreements." Mot. at 19. Intel "does not really know if the jury based its award on" any agreement, and a particular source matching an awarded number "did not somehow put the number . . . off limits to the jury"; the "jury was entitled to choose a damages award within the amounts advocated by the opposing parties." *Spectralytics*, 649 F.3d at 1346-47. Intel's allegations are pure speculation.

Intel's last argument is that, because damages issues allegedly "permeated the entire trial" and other rulings allegedly "affected Intel's entire case presentation," the only appropriate remedy is a new trial. Mot. at 19-20. But for all of the reasons discussed above, Intel has not shown that any of the Court's rulings was in error, much less that it suffered any prejudice. Accordingly, this final plea also fails.[8] The jury's award was extensively supported, and a new trial is not justified. *E.g.*, *i4i Ltd.*, 598 F.3d at 857 ("The damages award, while high, was supported by the evidence presented at trial, including the expert testimony—which the jury apparently credited.").

## CONCLUSION

For the foregoing reasons, VLSI requests that the Court deny Intel's motion for a new trial.

---

[8] Intel's cited cases fall far short of supporting any remedy under these circumstances. For example, in *LaserDynamics*, a new trial was based on a damages calculation that "appears to have been plucked out of thin air" with a "complete lack of economic analysis." *LaserDynamics*, 694 F.3d at 69. Most of Intel's remaining cases deal with the scope of new trial after an error has been established, in circumstances ranging from mundane contract terms to "various trial court horrors and aberrations which, if true, are unquestionably deplorable." *See Williams v. Slade*, 431 F.2d 605, 609 (5th Cir. 1970). There are no such facts here, and no basis for any new trial, much less one on multiple issues.

Respectfully submitted,

Dated:  May 7, 2021

By:  _/s/ Andy Tindel_____

Morgan Chu (*pro hac vice*)
Benjamin W. Hattenbach  (*pro hac vice*)
Iian D. Jablon  (*pro hac vice*)
Alan J. Heinrich  (*pro hac vice*)
Christopher T. Abernethy (*pro hac vice*)
Ian Robert Washburn  (*pro hac vice*)
Amy E. Proctor  (*pro hac vice*)
Elizabeth C. Tuan  (*pro hac vice*)
Dominik Slusarczyk  (*pro hac vice*)
Charlotte J. Wen  (*pro hac vice*)
Brian Weissenberg  (*pro hac vice*)
Benjamin Monnin  (*pro hac vice*)
Jordan Nafekh  (*pro hac vice*)
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, California   90067
Telephone: (310) 277-1010
Facsimile: (310) 203-7199
mchu@irell.com
bhattenbach@irell.com
ijablon@irell.com
aheinrich@irell.com
cabernethy@irell.com
iwashburn@irell.com
aproctor@irell.com
etuan@irell.com
dslusarczyk@irell.com
cwen@irell.com
bweissenberg@irell.com
bmonnin@irell.com
jnafekh@irell.com

Babak Redjaian  (*pro hac vice*)
**IRELL & MANELLA LLP**
840 Newport Center Drive, Suite 400
Newport Beach, California   92660
Telephone: (949) 760-0991
Facsimile: (949) 760-5200
bredjaian@irell.com

J. Mark Mann (Texas Bar No. 12926150)
mark@themannfirm.com
G. Blake Thompson (Texas Bar No. 24042033)
blake@themannfirm.com
**MANN | TINDEL | THOMPSON**
300 W. Main Street
Henderson, TX 75652
Telephone: (903) 657-8540
Facsimile:  (903) 657-6003

Andy Tindel (Texas Bar No. 20054500)
atindel@andytindel.com
**MANN | TINDEL | THOMPSON**
112 E. Line Street, Suite 304
Tyler, Texas 75702
Telephone: (903) 596-0900
Facsimile:  (903) 596-0909

Craig D. Cherry (Texas Bar No. 24012419)
craig@swclaw.com
**STECKLER, WAYNE, COCHRAN, CHERRY, PLLC**
100 N. Ritchie Road, Suite 200
Waco, Texas 76701
Telephone: (254) 776-3336
Facsimile:  (254) 776-6823

*Attorneys for VLSI Technology LLC*

## <u>CERTIFICATE OF SERVICE</u>

A true and correct copy of the foregoing instrument was served or delivered electronically via email, to all counsel of record, on May 7, 2021.


_____/s/ _Andy Tindel_____
Andy Tindel