**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

VLSI TECHNOLOGY LLC,

          Plaintiff,

    v.

INTEL CORPORATION,

          Defendant.

**PUBLIC VERSION**

Case No. 6:21-cv-00057-ADA

█████████████

**DEFENDANT INTEL CORPORATION'S REPLY IN SUPPORT OF
<u>RULE 59 MOTION FOR A NEW TRIAL</u>**

**TABLE OF CONTENTS**

I.     A NEW TRIAL IS REQUIRED BECAUSE THE NONCOMPARABLE INTEL
       AGREEMENTS SHOULD HAVE BEEN EXCLUDED. ................................................ 1

       A.    The Intel Settlement And Cross-License Agreements Were Irrelevant,
             Highly Prejudicial, And Improper Rebuttal. ............................................. 1

       B.    The Jury Instructions Regarding Comparable Agreements Were
             Erroneous. ................................................................................................ 3

II.    A NEW TRIAL IS REQUIRED BECAUSE DR. SULLIVAN'S OPINION
       SHOULD HAVE BEEN EXCLUDED. .................................................................. 4

       A.    Dr. Sullivan Relied On An Unreliable Regression Analysis. ...................... 4

       B.    Dr. Sullivan Applied A Profit-Sharing Theory That Is Contrary To Law. ............. 5

       C.    Dr. Sullivan Relied On Flawed Inputs From VLSI's Technical Experts. .............. 6

       D.    Dr. Sullivan Violated The Entire Market Value Rule. ............................... 7

       E.    Dr. Sullivan's New Per-Unit Damages Model Should Have Been
             Excluded. .................................................................................................. 7

III.   ERRORS IN THE JURY INSTRUCTIONS WARRANT A NEW TRIAL. .................... 8

       A.    The Hypothetical Negotiation Instruction Was Erroneous And Prejudicial. ........... 8

       B.    The Resolution Of Doubts Instruction Was Erroneous And Prejudicial. .............. 8

IV.    A NEW TRIAL IS REQUIRED DUE TO MR. PASCARELLA'S EXCLUSION. .......... 9

V.     A NEW TRIAL IS REQUIRED BASED ON FORTRESS'S EXCLUSION. ................... 9

VI.    A NEW TRIAL IS REQUIRED BASED ON VLSI'S STATEMENTS TO THE
       JURY REGARDING MR. STOLARSKI'S DISAPPEARANCE FROM TRIAL. ......... 10

VII.   THE APPROPRIATE REMEDY IS A NEW TRIAL ON INFRINGEMENT,
       INVALIDITY, AND DAMAGES. .......................................................................... 10

CONCLUSION ............................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Garretson v. Clark*,
111 U.S. 120 (1884)..................................................................................................4

*Huawei Technologies Co. v. T-Mobile US*,
2017 WL 7052466 (E.D. Tex. 2017) ........................................................................5

*Intel Corp. v. Tela Innovations, Inc.*,
2021 WL 1222622 (N.D. Cal. 2021) ........................................................................2

*Looksmart Group, Inc. v. Microsoft Corp.*,
2019 WL 4009263 (N.D. Cal. 2019) ........................................................................5

*Lucent Technologies, Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009)................................................................................8

*Power Integrations, Inc. v. Fairchild Semiconductor International, Inc.*,
711 F.3d 1348 (Fed. Cir. 2013)................................................................................5

*Radio Steel & Manufacturing Co. v. MTD Products, Inc.*,
788 F.2d 1554 (Fed. Cir. 1986)................................................................................6

*U.S. v. Redd*,
562 F.3d 309 (5th Cir. 2009) ...................................................................................8

*Rembrandt Vision Technologies, L.P. v. Johnson & Johnson Vision Care, Inc.*,
725 F.3d 1377 (Fed. Cir. 2013)................................................................................8

*ResQNet.com, Inc. v. Lansa, Inc.*,
594 F.3d 860 (Fed. Cir. 2010)..................................................................................2

*RMail Ltd v. Amazon.com, Inc.*,
2019 WL 10375642 (E.D. Tex. 2019) ......................................................................2

*St. Clair Intellectual Property Consultants v. Acer, Inc.*,
935 F. Supp. 2d 779 (D. Del. 2013)..........................................................................5

*Stragent LLC v. Intel Corp.*,
2014 WL 1389304 (E.D. Tex. 2014) ....................................................................5, 6

*Uniloc USA, Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011).........................................................................4, 5, 7

*VirnetX Inc. v. Cisco Systems, Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014).......................................................................................4

*Water Technologies Corp. v. Calco, Ltd.*,
    850 F.2d 660 (Fed. Cir. 1988).........................................................................................6

**EXHIBITS**

The exhibits cited in this reply as "Ex. __" are attached to the Declaration of Jeffrey A. Dennhardt, filed as an attachment to this reply.

I.    **A NEW TRIAL IS REQUIRED BECAUSE THE NONCOMPARABLE INTEL AGREEMENTS SHOULD HAVE BEEN EXCLUDED.**

A.    **The Intel Settlement And Cross-License Agreements Were Irrelevant, Highly Prejudicial, And Improper Rebuttal.**

VLSI concedes that Federal Circuit law does not permit relying on noncomparable agreements to support the amount of a damages award.  (Dkt. 606 ("Resp.") 2.)  This alone requires a new trial because VLSI did emphasize the *amounts* of noncomparable Intel settlement agreements, which the jury used to determine its damages award.  (Dkt. 594 ("Mot.") 3-4.)[1]

VLSI nevertheless asserts that the settlements were relevant to "rebut[] and contextualize[] Intel expert Mr. Huston's" testimony regarding comparable licenses.  (Resp. 1.)  This is wrong for multiple reasons.  To begin, VLSI's contention that the noncomparable settlements were properly admitted as "rebuttal" is contradicted by the record:  the Court ruled those agreements were admissible *before* Mr. Huston testified.  (3/1 Tr. 1328:1-1331:20.)  VLSI further claims that the settlements were " ███████████████████████████████████████████████."  (Resp. 2.)  But Mr. Huston's reasonable royalty testimony was properly based on amounts Intel paid pursuant to *comparable* agreements.  (3/1 Tr. [Huston] 1364:5-1366:8; Sealed Tr. [Huston] 117:21-132:6; D-125-134; D-137-145; D-1583.)  VLSI is also incorrect in suggesting that Mr. Huston testified on direct examination that "Intel ' ██████████████████████████████.'"  (Resp. 1.)  For this proposition, VLSI cites ███████████████████████████████ ████████████████████████████████████████████ Sealed Tr. [Huston]

---

[1] While VLSI disputes that the jury based its damages award on the noncomparable agreements (Resp. 4), ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████  (*See* Mot. 4.)

1

148:10-13.)[2]  VLSI also ignores that Mr. Huston acknowledged that " 

" (Sealed Tr. [Huston] at 148:20-22), and that the

amounts paid in the agreements he analyzed

showed the value of technology that is comparable to the asserted patents in agreements that are

economically comparable to the hypothetical negotiation (*id.* at 117:21-132:6).

Under Federal Circuit precedent, VLSI's evidence of ***noncomparable*** licenses simply

cannot rebut Mr. Huston's analysis based on ***comparable*** licenses.  *ResQNet.com, Inc. v. Lansa,*

*Inc.*, 594 F.3d 860, 871-72 (Fed. Cir. 2010) (patentee cannot "inflate … royalty analysis with

conveniently selected licenses" without "economic or other link to the technology").[3]  VLSI does

not identify a single Federal Circuit case allowing ***noncomparable*** agreements for any purpose,

much less to address the _____ amount to be paid for a patent license (*see* Resp. 2).

VLSI also does not dispute that the noncomparable agreements should have been excluded

because they were ***settlements*** "tainted by the coercive environment of patent litigation."  (*See*

Mot. 2-3.)  Instead, VLSI cites two unpublished district court cases to assert that noncomparable

agreements may be admissible if not used to support the damages award.  But neither case

allowed a party to introduce the ***amounts*** of the noncomparable agreements, let alone in rebuttal

to comparable agreements.  *See Intel Corp. v. Tela Innovations, Inc.*, 2021 WL 1222622, at *33

(N.D. Cal. 2021); *RMail Ltd v. Amazon.com, Inc.*, 2019 WL 10375642, at *5 (E.D. Tex. 2019).

Finally, VLSI does not dispute that the noncomparable agreements' probative value (if

---

[2] To the extent VLSI suggests this question opened the door to the noncomparable agreements, this Court should further reject that argument because, as VLSI elsewhere acknowledges, "[a] party cannot use cross-examination to 'open the door' to evidence it seeks to offer."  (Resp. 17; *see* 3/1 Tr. 1331:9-10 (The Court: "I don't believe that anyone gets to, on cross, open a door.").)

[3] Indeed, in the second trial, this Court acknowledged as much and excluded these same agreements (Ex. A at 1449:19-1465:13, 1525:19-1529:22) and instructed the jury that noncomparable agreements "should not be used to determine … the amount or form of any reasonable royalty award" (Ex. B at 1595:20-23).

any) was outweighed by unfair prejudice to Intel.  (*See* Mot. 3-4.)   Indeed, ████████████

████████████████████████████████████████████████████████████

████████████████████████████████   (Sealed Tr. [Chandler] 151:12-154:14; 3/1

Tr. [Chandler] 1502:2-1503:18, 1515:23-1516:6; *id.* [Closing] 1621:15-1622:8; PDX10.93-

10.96.)[4]   Nor can VLSI deny that by emphasizing the large numbers from the noncomparable

agreements and focusing on them in closing, it suggested to the jury that Intel should pay similar

amounts here.   (*See* Mot. 4.)   Thus, because the noncomparable agreements were highly

prejudicial and should have been excluded, the verdict should be set aside.

## B.        The Jury Instructions Regarding Comparable Agreements Were Erroneous.

VLSI does not dispute that Intel's proposed instruction—which would have told the jury

it could consider whether a settlement payment "do[es] not reflect the value that the parties

attributed to the patented invention"—was a correct statement of law.  (*See* Mot. 5-6.)   Instead,

VLSI contends the instruction's omission was not prejudicial because "Intel does not cite any

purported improper encouragement" to use the noncomparable agreements for an improper

purpose. (Resp. 5.)   But the instruction was necessary because VLSI put the settlement amounts

before the jury, improperly suggesting that they be used to determine a reasonable royalty—

which the jury did.  (*See supra* pp. 1-3; *see also* Ex. B at 1595:20-23.)  VLSI's claim that Intel

likely would have benefitted from consideration of the settlements strains credulity, and is belied

by both the record and Federal Circuit precedent.  (*See* Mot. 5-6; *supra* pp. 1-3.)

---

[4] VLSI contends that Intel did not object to Mr. Chandler's testimony portraying Intel as a patent
holdout, but that is simply not true. (*E.g.*, 3/1 Tr. 1327:9-25, 1330:19-25, 1502:23-25; Dkt. 542
at 1.)  VLSI is also incorrect that this testimony "accurately describes Intel's patent licensing
practices"—it does not, as the overwhelming evidence of ██ *comparable* patent agreements
showed. (*See supra* pp. 1-2.)

II.     **A NEW TRIAL IS REQUIRED BECAUSE DR. SULLIVAN'S OPINION SHOULD HAVE BEEN EXCLUDED.**

A.      **Dr. Sullivan Relied On An Unreliable Regression Analysis.**

VLSI's attempts to defend Dr. Sullivan's flawed regression-based damages model all fail.

*First*, while VLSI asserts there is "evidence of regressions being used to value patented features" (Resp. 7), it does not (and cannot) dispute that the trial record was devoid of any evidence that Intel, Freescale, or anyone else had ever used a regression for this purpose (*see* Mot. 7). Indeed, Dr. Sullivan admitted he could not identify "*any* license agreement … that was *ever* negotiated using" his regression-based methodology. (Mot. 6-7 n. 7.) VLSI points to Dr. Sullivan's statements on "how to use regression in litigation" (2/24 Tr. [Sullivan] 610:16-20), but nothing in Dr. Sullivan's testimony establishes that regression is an acceptable, or reliable, way to calculate a reasonable royalty for patent infringement (it is not).

*Second*, VLSI admits that Dr. Sullivan's regression included the value of non-accused products and features (Resp. 8), and Dr. Sullivan testified that he used his regression to determine damages for both patents (2/24 Tr. [Sullivan] 654:18-657:18). Therefore, contrary to VLSI's assertion (Resp. 8), Dr. Sullivan's damages numbers clearly *include* the value of *non-accused* products and features. While VLSI contends this error was justified (Resp. 9), its excuse conflicts with precedent requiring a patentee to "seek only those damages attributable to the infringing features." *VirnetX Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014).

*Third*, VLSI does not dispute (or even acknowledge) that Dr. Sullivan's regression model *did not include* the accused features he purported to assess. (*See* Mot. 8; Resp. 8.) This is fatal to VLSI's response and confirms Dr. Sullivan's methodology failed to satisfy the apportionment requirement and was insufficiently tied to the facts of the case. *Garretson v. Clark*, 111 U.S. 120, 121 (1884); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011).

***Finally***, VLSI is incorrect that Dr. Sullivan's multiple methodological missteps "go to weight, not admissibility." (Resp. 8.) The flaws in Dr. Sullivan's regression required exclusion. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1373-74, 1377 (Fed. Cir. 2013).[5] VLSI's cited cases do not hold otherwise: neither *Huawei Technologies Co. v. T-Mobile US*, 2017 WL 7052466, at *3 (E.D. Tex. 2017), nor *St. Clair Intellectual Property Consultants v. Acer, Inc.*, 935 F. Supp. 2d 779, 782 (D. Del. 2013), approved using a regression model that—like Dr. Sullivan's—included **non-accused** products and features and did ***not*** include the accused features. VLSI's other cases did not involve patent issues at all.

**B.      Dr. Sullivan Applied A Profit-Sharing Theory That Is Contrary To Law.**

VLSI disputes that Dr. Sullivan's damages model awarded VLSI 100% of the alleged profits attributable to the patents (Resp. 8), but the record speaks for itself. Dr. Sullivan purported to calculate the revenues that Intel allegedly made from the asserted patents, deducted Intel's "total spending," and then testified that the ***entire*** remainder represented VLSI's alleged damages—all without identifying any evidence that parties to the hypothetical negotiation would have agreed to such an approach. (2/24 Tr. [Sullivan] 661:11-664:20; Dkt. 264 at 12-15.) Further, while VLSI argues that Dr. Sullivan's opinion was "based on Intel's confidential spending on accused products" (Resp. 8), Dr. Sullivan never explained how this "spending" had any connection to the facts of this case or the hypothetical negotiation (*see* Mot. 8). Accordingly, Dr. Sullivan's opinion should have been excluded because his profit-split "was arbitrary, unreliable, and irrelevant," *see Uniloc*, 632 F.3d at 1318, and because a 100-0 profit split in VLSI's favor defies economic and common sense, *see Looksmart Grp., Inc. v. Microsoft*

---

[5] VLSI fails to distinguish *Stragent LLC v. Intel Corp.*, which excluded a regression-based model that "relie[d] on arbitrary assumptions" with "no basis in the facts of this case," 2014 WL 1389304, at *4 (E.D. Tex. 2014)—just what Dr. Sullivan did in using a regression that included the value of **non-accused** products/features to value **accused** features that were ***not*** included.

*Corp.*, 2019 WL 4009263, at *2-4 (N.D. Cal. 2019).   Indeed, Dr. Sullivan's opinion was essentially an attempt at disgorgement of Intel's profits, which is not a legally permissible remedy.  (*See* Resp. 10 (admitting Dr. Sullivan calculated royalty "***based only on*** the inventions' [alleged] contribution to Intel's incremental ***profits***").)  *See Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 673 (Fed. Cir. 1988) ("[I]nfringer's profits are not … a measure of the patent[ee's] damages."); *Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 788 F.2d 1554, 1557 (Fed. Cir. 1986).

### C.      Dr. Sullivan Relied On Flawed Inputs From VLSI's Technical Experts.

VLSI tries to defend Dr. Sullivan's reliance on flawed inputs by asserting that damages may involve some degree of approximation.  (Resp. 8-10.)  It cannot deny, however, the multiple errors that make these inputs unreliable and not tied to the facts of this case.  (*See* Mot. 9-11.)

*First*, VLSI does not deny that Dr. Annavaram generated his estimates by testing only a small subset of accused products and assuming (without basis) the results represented all accused products.  (Mot. 9-10.)  Instead, VLSI defends its narrow testing because its "calculated benefits … provided a ***conservative*** measure of the inventions' value."  (Resp. 9.)  But "a conservative opinion … does not equate to a scientific one."  *Stragent*, 2014 WL 1389304, at *4.[6]

*Second*, for the '759 products, VLSI asserts that the ring domain was the proper measure for apportionment of the accused Speed Shift feature.  (Resp. 9.)  But VLSI does not (and cannot) deny that the ring domain includes components beyond the accused ring bus, including the CBO and LLC.  (2/24 Tr. [Annavaram] 564:17-566:5; 2/26 Tr. [Grunwald] 1232:8-1234:1.)

*Third*, VLSI claims Dr. Annavaram "based his ['373 patent] calculations only on power savings during the Package C7 state, not Core C7."  (Resp. 10.)  But VLSI cannot deny that Dr. Annavaram used Core C7 "to select the residency and workload settings in the Intel Power

---

[6] VLSI does not even attempt to defend Dr. Annavaram's flawed reliance on ***non-accused*** processors (i) to select the Power Model inputs for the '373 patent testing (*see* Mot. 9) or (ii) to verify the reliability of Fox2 for the '759 patent testing (*see* Mot. 10).

Model"—which directly affected his power calculations—even though Core C7 "does not reflect use of" the accused C6 SRAM.  (2/24 Tr. [Annavaram] 578:7-581:1; *see* Mot. 10.)

**Finally,** VLSI concedes that Dr. Conte's opinion about the relationships between power, performance, and speed was based on an ambiguous statement from one document for a **non-accused** product.  (Resp. 10.)  Thus, neither Dr. Sullivan nor the jury could reasonably credit or rely on Dr. Conte's testimony in determining damages for the accused products.  (Mot. 10-11.)

### D.    Dr. Sullivan Violated The Entire Market Value Rule.

VLSI does not deny that Dr. Sullivan repeatedly referred to the total accused revenues despite never establishing that the asserted patents are the basis for customer demand for the accused products.  (*See* Mot. 11.)  VLSI instead argues that evidence of Intel's revenues was not prejudicial because it was "relevant to calculating damages" (Resp. 10-11), while also asserting (inconsistently) that Dr. Sullivan "did not calculate damages based on Intel's overall revenues" (*id.* at 11-12).  Dr. Sullivan did use Intel's total accused revenues to calculate damages (*e.g.*, 2/24 Tr. [Sullivan] 652:9-658:2), but—either way—the unfair prejudice resulting from disclosure of this ▮▮▮▮▮ figure greatly outweighed any probative value and required its exclusion.

VLSI further claims Dr. Sullivan did not "justify [his] damages" with reference to Intel's revenues, like the *Uniloc* expert who contrasted "$19.28 billion in revenue with a 2.9% **sliver** representing his calculated royalty rate."  (Resp. 11 (quoting *Uniloc*, 632 F.3d at 1318).)  But that is just what Dr. Sullivan did:  he defended his analysis as representing "a fraction – think of it in a small piece, **a sliver**, if you will, of the overall revenues."  (2/24 Tr. [Sullivan] 656:7-9.)[7]

### E.    Dr. Sullivan's New Per-Unit Damages Model Should Have Been Excluded.

Dr. Sullivan's per-unit model was not a "simple calculation," but a new expert opinion

---

[7] Intel has not "waived" any entire market value rule argument.  (*See* Resp. 10, 11.)  Intel moved *in limine* (Dkt. 362 at 12-14) and objected at trial (2/24 Tr. 517:2-519:8, 628:12-633:2; Dkt. 520 at 1-2).  VLSI's counsel even agreed that Intel "preserv[ed]" this objection.  (2/24 Tr. 626:3-10.)

that VLSI admits was ***not*** disclosed in Dr. Sullivan's report. (*See* Resp. 11.)  Its introduction

was prejudicial because Intel did not have an opportunity to develop evidence in response to the

"different considerations" raised by this new methodology. *Lucent Techs., Inc. v. Gateway, Inc.*,

580 F.3d 1301, 1325-26 (Fed. Cir. 2009); *see Rembrandt Vision Techs., L.P. v. Johnson &*

*Johnson Vision Care, Inc.*, 725 F.3d 1377, 1381-82 (Fed. Cir. 2013) (precluding undisclosed

expert theories because one "purpose of the expert disclosure rule is to … arrange for expert

testimony from other witnesses").  Neither of VLSI's cited cases, *Sepulveda-Hernandez* and

*Rowe* (Resp. 11-12), affirmed the introduction of a new damages opinion first unveiled at trial.[8]

## III.    ERRORS IN THE JURY INSTRUCTIONS WARRANT A NEW TRIAL.

### A.    The Hypothetical Negotiation Instruction Was Erroneous And Prejudicial.

VLSI asserts that the Court's instruction contrasting the hypothetical negotiation with a

real-world negotiation was an accurate statement based on "well-settled" law. (Resp. 12.)  But

VLSI cites an unpublished district court decision, while ignoring Intel's cited cases holding that

real-world facts are highly relevant to determining a reasonable royalty (which trial testimony

confirmed). (*See* Mot. 13.)  VLSI's claim that "Intel has shown no prejudice" (Resp. 12-13) is

wrong because the instruction was contrary to law and also placed a thumb on the scale against

Intel's damages presentation—which focused on "real-world" evidence. (*See* Mot. 13-14.)

### B.    The Resolution Of Doubts Instruction Was Erroneous And Prejudicial.

VLSI asserts that the "resolution of doubts" instruction was not erroneous because it was

a neutral instruction limited to resolving doubts against the party who failed to keep proper

records. (Resp. 13-14.)  That is incorrect for many reasons.  Although VLSI says the instruction

---

[8] The jury's receipt of ***unadmitted*** exhibits was highly prejudicial—they contained excerpts from Dr. Sullivan's report and damages numbers that were ***not*** part of the trial record. (Mot. 7 n.8.) Contrary to VLSI's assertion (Resp. 6 n.1), Intel did not waive this argument by "present[ing] it] in a footnote." *See U.S. v. Redd*, 562 F.3d 309, 314 (5th Cir. 2009) (no waiver where argument was "several sentences," cited caselaw, and "was enough to put [opposing party] on notice").

does not call Intel an "infringer" (Resp. 13), that is plainly contradicted by the instruction's title (Dkt. 563 at 39).  And VLSI's excuse that the instruction "is part of the damages section of the charge" does not alleviate the harm to Intel, especially because (as VLSI admits) the instruction was not limited to damages issues.  (*See* Resp. 13.)  VLSI also incorrectly asserts that record-keeping was an issue for the jury because "Intel questioned VLSI's experts regarding … the sufficiency of products, accused features, and financial data[.]" (*Id.*)  But Intel's questions were about methodology, ***not*** record-keeping.  Finally, VLSI does not dispute that most admitted exhibits were ***Intel documents***.  (*See* Mot. 14-15.)  Thus, Intel has shown prejudicial error.

## IV.    A NEW TRIAL IS REQUIRED DUE TO MR. PASCARELLA'S EXCLUSION.

Recycling arguments from *Daubert* briefing, VLSI contends that Mr. Pascarella's testimony was properly excluded.  (Resp. 15-16.)  But VLSI does not even attempt to address Intel's showing that the exclusion of Mr. Pascarella's testimony prevented Intel from contextualizing VLSI's damages demand and prejudiced Intel's ability to respond to testimony from VLSI's witnesses.  (*See* Mot. 15-16.)  Other than its rehashed arguments, VLSI's only argument is to assert that the Court's exclusion of Mr. Pascarella was "harmless" because "the jury was aware of all that Mr. Pascarella could have told them." (Resp. 16 n. 4.)  That is incorrect.  Due to Mr. Pascarella's exclusion, the jury received ***no*** evidence regarding the ***appropriate*** expected return on investment for the asserted patents or how VLSI's demand was inconsistent with any real-world investment.  (Dkt. 276-3 ¶¶ 18-19, 45, 61, 99, 114-116, 124.)

## V.    A NEW TRIAL IS REQUIRED BASED ON FORTRESS'S EXCLUSION.

VLSI contends the Court properly excluded Fortress evidence because "[n]one of what Intel wanted to tell the jury about Fortress has any relevance[.]" (Resp. 16.)  But VLSI does not even acknowledge evidence that Intel would have offered through Mr. Huston (Dkt. 606-4 at 6-7; Dkt. 535 at 5)—which was clearly relevant to damages—or that Intel was deprived of the

Case 6:21-cv-00057-ADA   Document 624   Filed 05/28/21   Page 14 of 15

opportunity to cross-examine *VLSI's witnesses* about Fortress.  VLSI also does not dispute that

Fortress was relevant to complete the story VLSI told at trial about NXP's relationship with

VLSI (including the "cycle of innovation") and its financial interest in the litigation.  (Mot. 17;

*see* Ex. C at 57:8-62:8.)  Moreover, while VLSI claims its reference to itself as a "very small

company" did not open the door (Resp. 17 n.6), Intel should have been allowed to rebut that with

facts about the corporate structures behind VLSI and the significant funding Fortress provided.[9]

## VI.     A NEW TRIAL IS REQUIRED BASED ON VLSI'S STATEMENTS TO THE JURY REGARDING MR. STOLARSKI'S DISAPPEARANCE FROM TRIAL.

VLSI contends Intel is not entitled to a new trial because the alleged reasons for Mr.

Stolarski's absence were "part of the evidentiary record."  (Resp. 18.)  But Mr. Chandler's

gratuitous statement regarding Mr. Stolarski's absence was inadmissible hearsay, unfairly

prejudicial, and thus not properly in the record.  Moreover, contrary to VLSI's claims (Resp. 18-

19), VLSI's closing statements regarding Intel being allowed to play Mr. Stolarski's deposition

and Mr. Stolarski watching on Zoom were *not* record evidence—and Intel did object.  (Mot. 18.)

## VII.    THE APPROPRIATE REMEDY IS A NEW TRIAL ON INFRINGEMENT, INVALIDITY, AND DAMAGES.

Although VLSI disputes the multitude of errors identified by Intel in its motion, VLSI

does not dispute that if the Court agrees with Intel on any of the errors, the appropriate remedy is

a new trial on infringement, invalidity, and damages.  (*See* Mot. 19-20; Resp. 20.)[10]

### CONCLUSION

For the above reasons and those in Intel's motion, Intel respectfully requests a new trial.

---

[9] VLSI asserts that the Court did not preclude all evidence regarding Fortress (Resp. 17), but that is plainly contradicted by the Court's statement that "the Court is going to not permit the issue of Fortress to come into the trial."  (2/26 Tr. 1030:5-1032:12.)

[10] VLSI also argues that the jury's damages award was not "clearly excessive" (Resp. 19-20), but that assertion is contradicted by the real-world evidence presented at trial (*see* Dkt. 591 at 17).

10

Dated: May 21, 2021

Respectfully submitted,

OF COUNSEL:

/s/ *J. Stephen Ravel*

William F. Lee (*Pro Hac Vice*)
Louis W. Tompros (*Pro Hac Vice*)
Kate Saxton (*Pro Hac Vice*)
WILMER CUTLER PICKERING HALE
  & DORR LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
Email: william.lee@wilmerhale.com
Email: louis.tompros@wilmerhale.com
Email: kate.saxton@wilmerhale.com

J. Stephen Ravel
Texas State Bar No. 16584975
Kelly Ransom
Texas State Bar No. 24109427
KELLY HART & HALLMAN LLP
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6429
Email: steve.ravel@kellyhart.com
Email: kelly.ransom@kellyhart.com

Gregory H. Lantier (*Pro Hac Vice*)
Amanda L. Major (*Pro Hac Vice*)
WILMER CUTLER PICKERING HALE
  & DORR LLP
1875 Pennsylvania Avenue
Washington DC 20006
Tel: (202) 663-6000
Email: gregory.lantier@wilmerhale.com
Email: amanda.major@wilmerhale.com

James E. Wren
Texas State Bar No. 22018200
1 Bear Place, Unit 97288
Waco, Texas 76798
Tel: (254) 710-7670
Email: james.wren@baylor.edu

Harry L. Gillam, Jr.
Texas State Bar No. 07921800
GILLAM & SMITH, L.L.P.
303 South Washington Avenue
Marshall, Texas 75670
Tel: (903) 934-8450
Email: gil@gillamsmithlaw.com

*Attorneys for Intel Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record are being served with a copy of the foregoing document via electronic mail on May 21, 2021.

/s/ *J. Stephen Ravel*
J. Stephen Ravel

11