**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **VLSI TECHNOLOGY LLC,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **6:21-cv-00057-ADA** |
| | § | **FILED UNDER SEAL** |
| **INTEL CORPORATION,** | § | |
| *Defendant.* | § | |
| | § | |

**AMENDED ORDER DENYING DEFENDANT INTEL'S RULE 52 MOTION FOR**
**JUDGMENT BARRING RECOVERY UNDER THE DOCTRINE OF**
**UNCLEAN HANDS**

Came on for consideration is Defendant Intel Corporation's Motion for Judgment Barring Recovery pursuant to Federal Rule of Civil Procedure 52(c) filed on April 9, 2021. Def.'s Mot., ECF No. 590. Plaintiff VLSI Technology LLC filed its Response in opposition on April 12, 2021. Pl.'s Resp., ECF No. 595. Intel filed its Reply on April 19, 2021. Def.'s Reply, ECF No. 596. After considering the Motion, the briefs filed by the Parties, and the applicable law, the Court **DENIES** the Motion.

**I. FACTUAL BACKGROUND**

VLSI Technology LLC ("VLSI") is a patent assertion entity that plays a role in an enforcement strategy developed by Fortress Investment Group ("Fortress"), NXP Semiconductors ("NXP"), and VLSI. Def.'s Mot. at 2. Under this strategy, NXP provides patent ownership rights to VLSI while maintaining a claim to a share of any potential licensing returns. Pl.'s Resp. at 4. VLSI is responsible for patent licensing and enforcement, while Fortress provides VLSI with capital funding. *Id.* Fortress serves as an asset manager for several investment funds that own VLSI's parent company, CF VLSI Holdings LLC, and these investment funds therefore indirectly own VLSI. *Id.* However, VLSI is independently run by its CEO and Board and is legally distinct from Fortress. *Id.*

As part of a Patent Purchase and Cooperation Agreement and a subsequent amended

1

agreement, NXP provided VLSI with several patents for the purpose of enforcement. *Id.* VLSI filed a suit alleging infringement of three of these patents[1] against Intel on April 11, 2019. *See* Pl.'s Compl., ECF No. 1. The Court granted summary judgment of noninfringement as to all asserted claims of the '357 patent after considering a respective motion from Intel. Def.'s Mot. at 6. Following trial, the jury returned a verdict finding infringement of the other two patents with damages in the amount of $2.175 billion. Jury Verdict, ECF No. 564 at 6.

In bringing this Motion, Intel argues that the judgment in favor of VLSI should be set aside due to inequitable conduct on VLSI's part. Def.'s Mot. at 1. Intel claims that VLSI engaged in an unconscionable scheme with its corporate allies—Fortress and NXP—that allowed VLSI to pursue patent litigation without significant risk to itself or its partners. *Id.* Intel further argues that this scheme has allowed VLSI to pursue serial assertions of patent infringement against Intel without regard to the merits of individual claims. *Id.* at 14. Finally, Intel asserts that VLSI engaged in various egregious litigation tactics when pursuing the current case. *Id.* at 4–5. Taken altogether, Intel contends that VLSI's behavior should bar any recovery for the case at issue under the doctrine of unclean hands. *Id.* at 1.

## II. STANDARD OF REVIEW

In a bench trial, "[i]f a party has been fully heard on an issue … and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 52(c). A motion under Rule 52 in a bench trial is the parallel to a Rule 50 motion for judgment as a matter of law in a jury trial. *Martin Midstream Partners v. Boone Towing Inc.*, 207 F. App'x 439, 440–441 (5th Cir. 2006). When considering a Rule 52(c) motion, the Court

---

[1] U.S. Patent Nos. 8,156,357 ("the '357 patent"), 7,523,373 ("the '373 patent"), and 7,726,759 ("the '759 patent").

is not required "to draw inferences in favor of the non-moving party" and may make its determination "in accordance with its own view of the evidence." *Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 963 n.1 (5th Cir. 2016).

The unclean hands doctrine bars recovery "when misconduct of a party seeking relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation." *Gilead Scis., Inc. v. Merck & Co.*, 888 F.3d 1231, 1239 (Fed. Cir. 2018) (quoting *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933)) (internal quotations omitted). Examples of misconduct evincing unclean hands include perjury, manufacture and suppression of evidence, and bribery. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1293 (Fed. Cir. 2011). The unclean hands doctrine requires that claimants "have acted fairly and without fraud or deceit as to the controversy at issue." *Gilead*, 888 F.3d at 1239 (quoting *Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814–15. The doctrine provides a "wide range to the equity court's use of discretion in refusing to aid the unclean litigant." *Id.* A party asserting an unclean hands defense "bears the burden of proving by clear and convincing evidence that [the opposing party] acted with unclean hands." *In re Omeprazole Patent Litig.*, 483 F.3d 1364, 1374 (Fed. Cir. 2007).

### III. DISCUSSION

Intel identifies a range of collective behaviors that it claims provide evidence of VLSI's unclean hands. *See generally* Def.'s Mot. at 1–11. The Court examines each of these contentions individually before considering them as a whole in its determination of Intel's Motion.

1. ***The business arrangement between VLSI, NXP, and Fortress***

Intel first argues that the business arrangement between VLSI, NXP, and Fortress is itself evidence of unclean hands, insofar as such an arrangement allows for a high volume of litigation

3

to be pursued by VLSI without regard to the merits and with limited downside risk for the entities involved. *Id.* at 14. Intel references seven lawsuits covering twenty-three patents that have been filed against it by VLSI. *Id.* at 4. Because Fortress and NXP are insulated from VLSI and the possible negative effects of VLSI's litigation, Intel claims that this litigation strategy is unconscionable and "uniquely inequitable." *Id* at 14.

In its Response, VLSI argues that it is a common practice of patent litigation to spread infringement claims across several separate suits and that this behavior is not evidence of unclean hands. Pl.'s Resp. at 7, n.2. Furthermore, VLSI argues that these other filings do not bear the required "immediate and necessary relation" to the specific patents-in-suit that is required for a finding of unclean hands in this particular case. *Id.* at 8. Even if these other filings did bear such a relation to this case, VLSI points out that Intel has not provided any evidence that VLSI's other filings were meritless or made in bad faith. *Id.* at 9. VLSI also asserts that business arrangements that limit the risks of patent enforcement through the use of private companies that do not practice the patents is not nefarious and is instead good business practice. *Id.* at 10. Even if this business arrangement was improper, VLSI contends that such an arrangement does not meet the degree or type of misconduct required for a finding of unclean hands. *Id.* at 10–11. Finally, VLSI claims that if Intel's unclean hands theory is correct, it would effectively preclude VLSI from enforcing its patents entirely. *Id.* at 11.

Intel responds in its Reply that VLSI's business arrangement with NXP and Fortress should be viewed with an eye toward the totality of circumstances surrounding VLSI's conduct in this case. Def.'s Reply at 2. In Intel's view, the argument that VLSI's business arrangement bears no "immediate and necessary relation" to this case ignores that said arrangement enhanced VLSI's position in enforcing the patents at issue, creating a relevant relation. *Id.* at 3. Intel then points to

specific litigation victories that Intel has secured in VLSI's infringement suits as evidence that VLSI is capable of weathering failures while continuing to pursue potentially meritless claims against Intel. *Id.* at 3. Regarding VLSI's preclusion argument, Intel states that it only references the business arrangement as it relates to tactics utilized in the current action, and that it only seeks to bar recovery for VLSI in this case. *Id.*

The Court first recognizes that Intel does not allege that VLSI's relationship with either NXP or Fortress is in any way illegal. *See generally* Def.'s Mot at 1–3. Nor does Intel explicitly assert that any of the twenty-three claims in any of VLSI's suits was brought without regard to the merits; Intel refers only to the *possibility* that VLSI might choose to "pursue endless assertions, without regard to how meritorious they are and with limited downside risk." *See* Def.'s Mot. at 14. Despite Intel's attempt to draw comparisons to *Abbott Point of Care Inc. v. Epocal, Inc.*, Intel provides no evidence that VLSI has litigated for any purpose—improper or otherwise—other than the assertion of VLSI's rights as a patent holder. *See* 2012 WL 12897957, at *9 (N.D. Ala. 2012) (finding unclean hands based on *evidence* that the plaintiff had brought its infringement claims in order to "drain [defendant's] resources and scare away potential customers"). The Court does not consider the mere *opportunity* to bring meritless litigation as evidence of unclean hands absent proof that VLSI actually brought such litigation.

Intel's complaint that VLSI and its business partners are immune from the consequences of frivolous litigation similarly does not survive scrutiny. VLSI disputes Intel's characterization of testimony from Fortress employees that the "invalidation of a VLSI patent has no effect on the value of the VLSI portfolio." Pl.'s Resp. at 9, n.3 (quoting Def.'s Mot. at 3–4). However, even if Intel's interpretation of this testimony was correct, VLSI (along with the Fortress funds invested in VLSI's parent company) still bears all of the monetary costs and risks typically associated with

pursuing litigation; Intel may not believe that these costs are "meaningful," but the costs themselves are no less tangible. *See* Def.'s Mot. at 14. Intel also seems to believe that VLSI's ability to shrug off the reputational harm of "appear[ing] litigious" is unconscionable. *See Id.* But there is no legal nor moral obligation on the part of a plaintiff to suffer from reputational consequences after bringing a lawsuit. In the same vein, there is no obligation for a patent owner to possess substantial assets for a defendant to target through a counterclaim, and this would effectively limit patent enforcement to wealthy patent owners. The Court does not find the arbitrary threshold of exposure that Intel would require from plaintiffs relevant to the issue of whether VLSI acted with unclean hands in this case.

In any event, the business arrangement between VLSI, NXP, and Fortress is not the sort of "misconduct" that supports a finding of unclean hands. The Fifth Circuit has found that litigious business strategies alone do not fall under the umbrella of "serious misrepresentations" that are required for an unclean hands defense. *See Energy Intel. Grp., Inc. v. Kayne Anderson Cap. Advisors, L.P.*, 948 F.3d 261, 268 & n.4 (5th Cir. 2020). Accordingly, the Court does not find the relationship between VLSI, NXP, and Fortress to be evidence of unclean hands.

### 2. *Changes in VLSI's infringement theories*

Intel argues that VLSI's infringement theories underwent significant changes during this litigation, and that this behavior is consistent with VLSI's overarching enforcement strategy of favoring assertion volume over merit. Def.'s Mot. at 5. Intel states that the original infringement assertions for one of the patents tried to the jury—the '373 patent—were abandoned by VLSI prior to trial and were replaced by assertions identifying different accused product families and a different accused feature. *Id.* at 15. Intel further argues that VLSI's technical expert offered testimony at trial regarding an infringement theory related to the '759 patent that was inconsistent

with an earlier deposition. *Id.* Intel also implies that VLSI did not have a sufficient basis to bring the '357 patent that was ultimately removed from the case through summary judgment and argues that VLSI's lack of a clear infringement theory for this patent prejudiced Intel in its preparation of a defense. *See Id.* at 16. According to Intel, these "moving targets" unfairly enhanced VLSI's position in enforcing its patents and support a finding of unclean hands. *Id.*

VLSI responds that developing and refining infringement theories throughout the course of litigation is common and expected behavior for plaintiffs. Pl.'s Resp. at 11. VLSI contests Intel's assertion that VLSI's expert witness gave testimony inconsistent with his deposition regarding the '759 patent. *Id.* at 11–12. VLSI also notes that its preliminary infringement contentions with respect to the '373 patent were supplemented prior to the final deadline to amend, that this supplement relied on confidential information that VLSI did not have access to prior to discovery, and that leave to file this supplement was granted without opposition from Intel. *Id.* at 12. VLSI argues that Intel cannot claim that VLSI's updated infringement theories are improper, especially because VLSI prevailed at trial with said theories. *Id.* at 13. VLSI concludes with the observation that Intel could have objected to these infringement theories at the time of supplementation or at trial, and that its decision to sit on its hands should not be rewarded. *Id.* at 13–14.

In its Reply, Intel reasserts that VLSI's expert witness was inconsistent between his trial testimony and his pre-trial deposition. Def.'s Reply at 4. Intel also notes that VLSI did not address Intel's claims regarding the '357 patent and argues that VLSI's evolving infringement theories for the '373 patent involved drastic changes from its initial contentions rather than mere streamlining. *Id.* Finally, Intel argues that changing infringement theories are sufficient to give rise to unclean hands, and that VLSI's shifting of its theories throughout litigation prejudiced Intel's ability to develop its defenses. *Id.* at 4–5.

The Court goes to great lengths to prevent defendants from being unduly prejudiced by changes in infringement contentions. As part of standard procedure, the Court requests reasonable amendments to preliminary infringement contentions based on newly identified material, and requires leave of court for any amendment adding patent claims to address scheduling issues. Order Governing Proceedings – Patent Case at 8 n.8. The Court also provides a deadline for plaintiffs to submit final infringement contentions and requires leave of court for any amendments to contentions after that date. *Id.* at 9–10.

With respect to the '373 patent, Intel claims that it was left with a "compressed schedule to develop its defenses" following the changes that VLSI made to its preliminary contentions. Def.'s Mot. at 16. Yet Intel did not oppose VLSI's timely Motion asking leave to amend the contentions in question, nor did it object to VLSI's presentation of the offending infringement theories at trial. Pl.'s Resp. at 13. Intel does not explain why it did not raise these issues earlier in the litigation, nor why it did not seek an extended schedule to prepare its defenses. *See* Def. Mot. at 15–16; Def.'s Reply at 3–5. To the extent that these changes were prejudicial, the opportunity to remedy that prejudice was ignored by Intel, and the Court can only presume that Intel was not overly concerned with these changes at the time that they were made. Furthermore, if Intel truly believed that VLSI "did not have a sufficient basis to assert the '373 patent in the first place," the proper course of action would be moving for summary judgment, as Intel did for the '357 patent. *See* Def.'s Mot. at 16.  Accordingly, the Court does not find that VLSI's conduct with regard to the '373 patent is evidence of unclean hands.

Intel's argument with regard to the '759 patent is prey to similar logic. Intel claims that the theories presented by VLSI's expert at trial were different from those theories provided at an earlier deposition. Def.'s Mot. at 15. Putting aside the fact that VLSI disputes Intel's characterization of

this testimony (*See* Pl.'s Resp. at 11–12), Intel had the opportunity to raise these supposed inconsistencies on cross-examination. Intel laments the fact that it "had to respond *at trial* to VLSI's technical expert's changed positions." *See* Def.'s Mot. at 16 (emphasis in original). But any contradictions between the expert's testimony, expert report, or deposition were the responsibility of Intel to identify and bring to the attention of the Court, and cross-examination was the proper time to do so. Intel did not voice these concerns at trial, and the Court is inclined to view this as a misstep on the part of Intel rather than wrongdoing on the part of VLSI. The Court will not step in to save Intel from a lack of diligence and does not find VLSI's conduct with regard to the '759 patent to be evidence of unclean hands.

Intel's contentions regarding the '357 patent are left unaddressed by VLSI's Response. *See* Pl.'s Resp. at 15–16. However, even assuming that Intel's portrayal of VLSI's deficient infringement theory is correct, Intel does not mention ever bringing any of these deficiencies to the Court's attention. *See* Def.'s Mot. at 6, 16; Def.'s Reply at 4. Intel implies that VLSI's lack of candor was part of a strategy to waste Intel's time and resources in order to enhance VLSI's position. *See* Def.'s Mot. at 16. However, Intel does not provide any evidence that VLSI refused to withdraw its contentions for this purpose, nor is that purpose an obvious inference for the Court to make. *Cf. Therasense*, 649 F.3d at 1290 (Fed. Cir. 2011) (stating that for the related doctrine of inequitable conduct, inappropriate intent must be "the single most reasonable inference to be drawn from the evidence"). Despite the Court's agreement that VLSI should have withdrawn its accusations against certain product families once it became clear that those families did not include the accused functionality, the Court does not find VLSI's conduct regarding the '357 patent to be clear evidence of unclean hands.

### 3. *VLSI's alleged gamesmanship with evidence*

Intel claims that VLSI, NXP, and Fortress took advantage of VLSI's status as an independent legal entity to shield evidence from Intel prior to trial, choosing later to selectively disclose said evidence. Def.'s Mot. at 16. Intel contends that it was unable to obtain relevant evidence requested from NXP and Fortress given their designation as third parties. *Id.* at 17. As an example of selective disclosure, Intel points to the testimony of NXP employee James Spehar. *Id.* Despite statements in Mr.Spehar's deposition that he was unaware of the identity of certain Fortress investors, Intel asserts that Mr.Spehar's trial testimony revealed that he was knowledgeable about the topic. *Id.* Intel argues that this amounts to suppression of evidence, and that VLSI's position in enforcing the patents-in-suit was unfairly enhanced as a result. *Id.* at 18.

In its Response, VLSI notes that it fully complied with Intel's interrogatory requests for documents identifying the particular Fortress funds which had an ownership interest in VLSI. Pl.'s Resp. at 14. VLSI also mentions that Intel cannot point to any procedural rule or discovery order that VLSI, NXP, or Fortress violated, and that Intel should have moved to compel discovery or sought other appropriate relief regarding this information if it believed said information was being improperly withheld. *Id.* at 14–15.

With respect to Mr.Spehar's testimony, VLSI first points out that Intel elicited the offending testimony from Mr.Spehar, undermining Intel's argument that this was selective disclosure on VLSI's part. *Id.* at 15. VLSI further argues that if Intel found this testimony to be inconsistent with Mr.Spehar's past representations, it could have objected or impeached him on cross-examination yet chose not to do so. *Id.* at 15 n.7. In addition, VLSI contends that Intel engaged in evidence suppression of its own by refusing to provide a simulator that was necessary for VLSI's damages analysis, and that Intel should not benefit from an unclean hands defense

when Intel's own hands are unclean. *Id.* at 16.

Intel contends that VLSI does not address Intel's argument that the arrangement between VLSI, NXP, and Fortress allowed VLSI to shield evidence from Intel. Def.'s Reply at 5. Intel further argues that the interrogatory information provided by VLSI regarding Fortress investors was less detailed and specific relative to Mr. Spehar's testimony. *Id.* at 5–6. According to Intel, the information provided by Mr.Spehar at trial is clear evidence of gamesmanship, and argues that the disclosure of this information at trial is the fault of VLSI and its business structure with NXP and Fortress. *Id.* at 6. Finally, Intel argues that it did not suppress information about its simulator and that VLSI could have moved to compel production of simulation software if VLSI believed it was being improperly withheld. *Id.* at 7.

Despite Intel's general complaints about its inability to obtain "all relevant evidence" related to the patents in question, the only inaccessible evidence specifically identified by Intel is the identity of Fortress investors with an interest in VLSI's holding company. *See* Def.'s Mot. at 16–18; Def.'s Reply at 5–7. As VLSI points out, Intel had the opportunity to convince the Court of the relevance of this information via a motion to compel if Intel believed discovery was warranted. Pl.'s Resp. at 14–15. Intel cannot point to any discovery order or procedural rule that VLSI, NXP, or Fortress violated, and the Court will not condemn facially valid discovery refusals as evidence of unclean hands. *See Id.* at 14.

With regard to Mr.Spehar's testimony, the Court must once again recognize that the appropriate tools to remedy potential prejudice were available to Intel, either through objection or impeachment on cross-examination. *See Id.* at 15 n.7. Intel asserts that Fortress and VLSI "provided … select information to [Mr.Spehar] for disclosure at trial once VLSI and its allies perceived that it might advance their cause." Def.'s Mot. at 17–18. However, the Court is

unconvinced that this information was strategically "provided" to Mr.Spehar by Fortress and VLSI, particularly in light of the fact that this information was elicited at trial by *Intel's* line of questioning. *See* Pl.'s Resp. at 5, 15. Any misrepresentations that Intel believed Mr.Spehar made during his deposition should have been pointed out during cross-examination, and the Court cannot at this juncture divine ill intent based on the information in the record. Accordingly, the Court does not find VLSI's handling of this evidence to be indicative of unclean hands.

### 4. *Preclusion of evidence relating to Fortress*

Intel contends that VLSI made representations to the Court that conflicted with record evidence, allowing VLSI to exclude evidence relating to the VLSI-Fortress relationship at trial. Def.'s Mot. at 18. Intel argues that this exclusion prevented the jury from obtaining a full and accurate picture of the interests involved in the case. *Id.* at 19. More specifically, Intel notes VLSI's emphasis on the VLSI-NXP business arrangement while VLSI downplayed of Fortress's involvement in the litigation. *Id.* Intel concludes that the actions taken by VLSI to preclude this evidence from trial are akin to fabricating evidence or presenting false testimony, and that the Court should therefore find this further evidence of unclean hands. *Id.*

VLSI first notes that Intel does not point to any specific misrepresentations made by VLSI's counsel in order to obtain the Court's ruling to exclude evidence regarding Fortress. Pl.'s Resp. at 17. VLSI contends that Intel is merely repeating arguments that were already heard and rejected by the Court regarding the presentation of this evidence—in effect, seeking reconsideration of the Court's ruling under the guise of an unclean hand's motion. *Id.* Referring to its prior representations to the Court, VLSI affirms that Fortress and VLSI are distinct and independent entities and argues that said representations do not conflict with record evidence as Intel claims. *Id* at 17–18. According to VLSI, Intel presents a misleading account of the record,

and Intel's rehashed arguments should be rejected. *Id.* at 19.

In its Reply, Intel rejects VLSI's assertion that Intel is merely retreading old arguments. Def.'s Reply at 8. Intel claims that VLSI continues to be inconsistent in its presentation of the Fortress-VLSI dynamic. *Id.* As an example, Intel points to VLSI's representation that its CEO can settle cases without authorization from Fortress, despite VLSI's statement in its Response that its board (made up mostly of Fortress employees) has the "exclusive authority" to do so. *Id.*; *See* Pl.'s Resp. at 4, 17. Intel then lists several ways that Fortress is connected to VLSI's operations and reasserts that VLSI's presentation of itself and its business arrangements at trial was highly misleading. Def.'s Reply at 9. In Intel's view, this presentation allowed VLSI an unfair advantage in litigation. *Id.*

As a preliminary matter, the Court finds that Intel mischaracterizes VLSI's representations of the VLSI-Fortress relationship. Intel states that VLSI's representations "were inconsistent with deposition testimony from VLSI CEO Mr.Stolarski and various Fortress and NXP witnesses." Def.'s Mot. at 9. Yet the Court ultimately reviewed this testimony, and whatever inconsistencies existed were deemed irrelevant to the issues at trial. 2/26 Tr., ECF No. 569 at 1030:5-1032:12. Intel's claims of misrepresentation are unavailing; no evidence is offered that the facts provided by VLSI were false or improperly manipulated, even if Intel disagrees with VLSI's *legal arguments* as to the meaning of those facts. *See* Def.'s Mot. at 8–10, 18–19; *see also* Pl.'s Resp. at 17. In its consideration of the issue, the Court accepted VLSI's argument—based on a facially untainted factual record—that the connections between VLSI and Fortress did not amount to the type of "control" necessary for the VLSI-Fortress relationship to be relevant. *See* 2/22 Pre-Trial Tr., ECF No. 565 at 46:1-16; 2/26 Tr. at 1030:5-1032:12. Intel's actual complaint seems to be a disagreement with the Court's decision to classify VLSI and Fortress as separate entities, rather

than supposed misrepresentations that VLSI made in convincing the Court to do so.

The Court is far from convinced that VLSI engaged in conduct akin to "fabricat[ing] evidence or present[ing] false testimony." *See* Def.'s Mot. at 19. Even assuming that Intel's portrayal of the VLSI-Fortress relationship is accurate, Intel is merely repeating arguments that were previously heard and rejected by the Court. *See* Pl.'s Resp. at 17–18. If Intel believes that the Court improperly excluded evidence about Fortress, it may take the issue up on appeal; however, the Court will not allow an unclean hands motion to be used as a vehicle to "relitigate issues that were resolved in an earlier stage of the litigation." *See Hogan v. Raymond Corp.*, 586 F. App'x 856, 860 (3d Cir. 2014). As a result, the Court does not find Intel's arguments on this issue indicative of unclean hands.

*5.* ██████████████████████



████████████ *See Id.*; *See also* Pl.'s Resp. at 19. Intel contends that VLSI sought to unfairly support its willful and induced infringement claims for the '357 patent ████████ ██████████████████████ Def.'s Mot. at 20. Intel concludes this conduct is ██████████████████████████████ ████████. *Id.*

In response, VLSI first notes that ████████████████████████ ████████████████████. Pl.'s Resp. at 19. Furthermore, VLSI argues that matters concerning the '357 patent are irrelevant because the Court

granted Intel's motion for summary judgment as to this patent. *Id.* at 20. Finally, VLSI asserts

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████ *Id.*

        ████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████████████    ████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████ *Id.* Intel concludes

that this is further evidence that the business arrangement between VLSI and its allies is

uniquely inequitable, and that the Court should find VLSI's conduct to constitute unclean

hands. *Id.*

        ████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████, and

Intel essentially seeks an equitable remedy for its lack of diligence. It is "not the job of a court to

relieve sophisticated parties of the burdens of contracts they wish they had drafted differently

but in fact did not." *See CompoSecure, L.L.C. v. CardUX, LLC*, 206 A.3d 807, 811, n.6 (Del.

2018). The

███████████████████████████████████████
███████████████████████████████████████
████████████████████

## V. CONCLUSION

For the aforementioned reasons, the Court finds that Intel did not meet its burden of showing by clear and convincing evidence that VLSI acted with unclean hands. *See In re Omeprazole*, 483 F.3d at 1374. Many of Intel's assertions against VLSI outline missteps or inaction by Intel that VLSI simply used to its advantage, rather than the deceptive intent or fraud that typically underlies a finding of unclean hands. *See Therasense*, 649 F.3d at 1293. Intel's broader contention that the arrangement between VLSI, Fortress, and NXP was unconscionable due to the potential for litigation abuses fails for similar reasons. *See Energy Intel.* at 268 & n.4. Therefore, because the Court finds that Intel has not demonstrated that VLSI acted with unclean hands, the Court **DENIES** Intel's Rule 52 Motion for Judgment Barring Recovery.

It is therefore **ORDERED** that Intel's Rule 52 Motion is **DENIED**.

**SIGNED** this 18th day of March, 2022.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE