<span style="color:red">PUBLIC VERSION</span>

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| VLSI TECHNOLOGY LLC,<br><br>      Plaintiff,<br><br>v.<br><br>INTEL CORPORATION,<br><br>      Defendant. | Case No. 6:21-cv-00057-ADA<br><br>█████████████ |

# DEFENDANT INTEL CORPORATION'S SEALED RESPONSE IN OPPOSITION TO PLAINTIFF VLSI TECHNOLOGY LLC'S MOTION UNDER RULE 59(e) FOR PREJUDGMENT AND POSTJUDGMENT INTEREST

**TABLE OF CONTENTS**

**Page(s)**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................2

I. VLSI IS NOT ENTITLED TO ANY PREJUDGMENT INTEREST. ...............................2

    A. VLSI Is Not Entitled To Any Damages. ...............................................................2

    B. If The Jury's Verdict Is Upheld, The $2.175 Billion Damages Award Would Be More Than "Generous Enough" To Compensate VLSI Without Any Prejudgment Interest. ...............................................................................................2

II. VLSI'S PREJUDGMENT INTEREST CALCULATION OVERREACHES. ....................4

    A. If The Court Awards Prejudgment Interest, It Should Apply The T-Bill Rate Instead Of The Prime Rate. ....................................................................................4

    B. If The Court Awards Prejudgment Interest, Its Calculation Should Start In April 2019 Instead Of 2013. ..................................................................................8

III. TO THE EXTENT THE COURT CREDITS VLSI'S ARGUMENTS RELYING ON FREESCALE, THE DELAY IN BRINGING SUIT FURTHER REQUIRES DENYING OR LIMITING ANY PREJUDGMENT INTEREST. ...................................10

IV. POST-JUDGMENT INTEREST IS WARRANTED ONLY IF JUDGMENT IS ENTERED FOR VLSI. .....................................................................................................12

CONCLUSION .............................................................................................................................12

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Apple Inc. v. Samsung Electronics Co.*,
 926 F. Supp. 2d 1100 (N.D. Cal. 2013) ....................................................................................7

*BIC Leisure Products, Inc. v. Windsurfing International, Inc.*,
 761 F. Supp. 1032 (S.D.N.Y. 1991)..........................................................................................7

*Bio-Rad Laboratories, Inc. v. Nicolet Instrument Corp.*,
 807 F.2d 964 (Fed. Cir. 1986)...................................................................................................9

*California Institute of Technology v. Broadcom Ltd.*,
 No. 20-2222, 2022 WL 333669 (Fed. Cir. Feb. 4, 2022) .........................................................3

*Carnegie Mellon University v. Marvell Technology Group, Ltd.*,
 No. 09-290, 2014 WL 1320154 (W.D. Pa. Mar. 31, 2014) ............................................... 11-12

*Centocor Ortho Biotech, Inc. v. Abbott Laboratories*,
 636 F.3d 1341 (Fed. Cir. 2011).................................................................................................3

*Conceptus, Inc. v. Hologic, Inc.*,
 No. C 09-02280 WHA, 2012 WL 44064 (N.D. Cal. Jan. 9, 2012).......................................3, 7

*Cornell University v. Hewlett-Packard Co.*,
 No. 01-CV-1974, 2009 WL 1405208 (N.D.N.Y. May 15, 2009).............................................4

*Crystal Semiconductor Corp. v. TriTech Microelectronics International, Inc.*,
 246 F.3d 1336 (Fed. Cir. 2001)...............................................................................................11

*General Motors Corp. v. Devex Corp.*,
 461 U.S. 648 (1983)......................................................................................................... passim

*Hynix Semiconductor, Inc. v. Rambus Inc.*,
 No. CV-00-20905 RMW, 2006 WL 2522506 (N.D. Cal. Aug. 30, 2006) ........................5, 6, 8

*Idenix Pharmaceuticals. LLC v. Gilead Sciences Inc.*,
 941 F.3d 1149 (Fed. Cir. 2019).................................................................................................2

*Juno Therapeutics, Inc. v. Kite Pharma, Inc.*,
 10 F.4th 1330 (Fed. Cir. 2021) .................................................................................................2

*Kaneka Corp. v. SKC Kolon PI, Inc.*,
 198 F. Supp. 3d 1089 (C.D. Cal. 2016) ..................................................................................11

*Kowalski v. Mommy Gina Tuna Resources*,
   No. 05-00679-BMK, 2009 WL 855976 (D. Haw. Mar. 30, 2009) ................................. 6, 7, 8

*Laitram Corp. v. NEC Corp.*,
   115 F.3d 947 (Fed. Cir. 1997) ............................................................................................ 7

*Lucent Technologies, Inc. v. Gateway, Inc.*,
   543 F.3d 710 (Fed. Cir. 2008) ............................................................................................ 2

*Mars, Inc. v. Coin Acceptors, Inc.*,
   513 F. Supp. 2d 128 (D.N.J. 2007) .................................................................................... 5

*Milwaukee Electric Tool Corp. v. Snap-On Inc.*,
   288 F. Supp. 3d 872 (E.D. Wis. 2017) ..................................................................... 8-9, 12

*Oiness v. Walgreen Co.*,
   88 F.3d 1025 (Fed. Cir. 1996) ............................................................................................ 3

*Packet Intelligence LLC v. NetScout Systems, Inc.*,
   No. 2:16-CV-00230-JRG, 2018 WL 7508613 (E.D. Tex. Sept. 7, 2018) ................... 3, 4, 5

*Saint Lawrence Communications LLC v. Motorola Mobility LLC*,
   No. 2:15-CV-351-JRG, 2017 WL 6268735 (E.D. Tex. Dec. 8, 2017) ............................... 4

*Saint-Gobain Autover USA, Inc. v. Xinyi Glass North America, Inc.*,
   707 F. Supp. 2d 737 (N.D. Ohio 2010) ............................................................................ 12

*Transocean Offshore Deepwater Drilling, Inc. v. GlobalSantaFe Corp.*,
   No. H-03-2910, 2006 WL 3227315 (S.D. Tex. Nov. 6, 2006) ........................................... 5

*TransPerfect Global, Inc. v. MotionPoint Corp.*,
   No. C 10-2590 CW, 2014 WL 6068384 (N.D. Cal. Nov. 13, 2014) .................................. 4

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*,
   809 F. App'x 965 (Fed. Cir. 2020) ..................................................................................... 4

*Whirlpool Corp. v. TST Water, LLC*,
   No. 2:15-CV-01528-JRG, 2018 WL 1536874 (E.D. Tex. Mar. 29, 2018) ......................... 4

**Federal Statutes**

28 U.S.C. § 1961(a) ................................................................................................................. 12

**Exhibits**

The exhibits cited in this opposition as "Ex. __" are attached to the Declaration of Jeffrey A. Dennhardt, filed as an attachment to this opposition.

**PRELIMINARY STATEMENT**

After a jury awarded VLSI $2.175 billion in damages, VLSI now seeks an additional $846 million in prejudgment interest. The Court should deny VLSI's request for any prejudgment interest—and would be well within its discretion to do so—because the amount of the jury's award, if upheld, is already more than generous enough to compensate VLSI for any infringement. Any additional amount would be unfairly punitive to Intel.

If the Court nonetheless decides to award some amount of prejudgment interest, it should deny VLSI's exorbitant request. VLSI not only overreaches in how it calculates prejudgment interest, but it also takes wholly inconsistent positions. More specifically, VLSI contends that prejudgment interest should be calculated (1) at the prime rate and (2) starting from the beginning of the damages period in 2013, relying solely on *Freescale's* financial position in 2013 and *Freescale's* role in the hypothetical negotiation in an effort to justify that approach. Yet VLSI ignores Freescale's role as a prior patent owner when it argues that there was no delay in suing Intel.

VLSI cannot have it both ways. Any prejudgment interest should be calculated (1) at the T-Bill rate and (2) starting from when VLSI filed suit in April 2019, because Freescale is irrelevant to the calculation and VLSI's reliance on Freescale's poor financial condition is misplaced. But if the Court credits any of VLSI's arguments relying on Freescale, then it should consider Freescale's role across all issues. In that case, VLSI is entitled to no prejudgment interest because the asserted patents' owners—starting with Freescale—delayed several years before suing Intel. As many courts have recognized, it would be remarkably unfair for a patent owner like VLSI to receive an inflated damages amount in the form of prejudgment interest caused by that type of delay.

**ARGUMENT**

**I.      VLSI IS NOT ENTITLED TO ANY PREJUDGMENT INTEREST.**

Section 284 does not "requir[e] the award of prejudgment interest whenever infringement is found." *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655-56 (1983). Rather, "it may be appropriate to limit prejudgment interest, or perhaps deny it altogether, where the patent owner has been responsible for undue delay in prosecuting the lawsuit" or where "other circumstances" make it "appropriate not to award prejudgment interest." *Id.* at 655-57. For the reasons discussed below, this Court should deny VLSI's request for prejudgment interest.

**A.      VLSI Is Not Entitled To Any Damages.**

As a preliminary matter, VLSI is not entitled to prejudgment interest because it is not entitled to any damages. As Intel's post-trial motions explain, this Court should set aside the jury's verdict and find that Intel does not infringe the '373 and '759 patents, that the asserted claims of the '759 patent are invalid, and that VLSI is entitled to no damages. *See* Dkts. 591-593, 615-617, 620; *see also* Dkts. 348-2, 374-1, 637, 649. If the Court enters judgment in Intel's favor, there is no basis for awarding VLSI any prejudgment interest.

**B.      If The Jury's Verdict Is Upheld, The $2.175 Billion Damages Award Would Be More Than "Generous Enough" To Compensate VLSI Without Any Prejudgment Interest.**

To the extent this Court denies Intel's post-trial motions, it should still reject VLSI's request for prejudgment interest because the jury's award of $2.175 billion—which is the second largest patent damages verdict ever from a jury[1]—already would make VLSI more than "whole"

---

[1] The three other largest patent damages verdicts ever awarded by a jury have all been vacated. *See Idenix Pharms. LLC v. Gilead Sciences Inc.*, 941 F.3d 1149, 1165 (Fed. Cir. 2019) (affirming vacatur of $2.54 billion award); *Centocor Ortho Biotech, Inc. v. Abbott Labs.*, 636 F.3d 1341, 1343-44 (Fed. Cir. 2011) (vacating $1.67 billion award); *Lucent Techs., Inc. v. Gateway, Inc.*, 543 F.3d 710, 712 (Fed. Cir. 2008) (affirming vacatur of $1.538 billion award); *see also Juno Therapeutics, Inc. v. Kite Pharma, Inc.*, 10 F.4th 1330 (Fed. Cir. 2021) (reversing $1.2 billion

2

for Intel's alleged infringement. *See General Motors*, 461 U.S. at 655-56; *Conceptus, Inc. v. Hologic, Inc.*, 2012 WL 44064, at *4 (N.D. Cal. Jan. 9, 2012) (denying prejudgment interest where "[the] jury award was generous enough"); *see also Packet Intelligence LLC v. NetScout Sys., Inc.*, 2018 WL 7508613, at *1, *2 (E.D. Tex. Sept. 7, 2018) (awarding prejudgment interest on a $5.75 million verdict, but noting that a denial of prejudgment interest may "certainly be warranted in other cases" where the award is "unduly outsized").

Moreover, VLSI is a non-practicing entity that was created by hedge fund Fortress Investment Group to assert patents against Intel. Although VLSI's status as a non-practicing entity is not dispositive of its right to collect prejudgment interest, the fact that VLSI has no business other than suing Intel is further evidence that the jury's award of $2.175 billion is more than generous enough to compensate VLSI for Intel's alleged infringement. Indeed, VLSI acquired the two patents found infringed, along with more than 170 others, for a total payment of $35 million. *See* 2/24 Tr. (Sullivan) at 730:2-739:2; D-40 at 37-49; D-44; D-119 at 4, 32-36 (Annex C-D); PTX-4267 at 7. Fortress's expected return on investment for the ***entire*** patent portfolio would be $70 million (*see* Dkt. 276-3 ¶¶ 112-113; Dkt. 589-22 at 128:4-21), which shows that the jury's award of $2.175 billion is far more than enough to make VLSI "whole" for Intel's alleged infringement of just two patents.

There is no just reason for this Court to tack on additional hundreds of millions of dollars in prejudgment interest to a verdict of this magnitude. Doing so would be unfairly punitive to Intel, contrary to the rationale behind prejudgment interest. *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1033 (Fed. Cir. 1996) ("Prejudgment interest has no punitive, but only compensatory, purposes.").

---

award after finding patent invalid); *California Inst. of Tech. v. Broadcom Ltd.*, 2022 WL 333669 (Fed. Cir. Feb. 4, 2022) (vacating $1.1 billion award).

## II. VLSI'S PREJUDGMENT INTEREST CALCULATION OVERREACHES.

If the Court decides to award any prejudgment interest, it should not adopt VLSI's flawed methodology for calculating prejudgment interest. In particular, VLSI's calculation improperly (1) applies the prime rate and (2) awards VLSI interest starting from the beginning of the damages period in 2013. Dkt. 664 at 2-7; Dkt. 664-1 [Sullivan Decl.] ¶¶ 17-29, App. A-1, A-2. This approach would result in a windfall of hundreds of millions of dollars to VLSI and should be rejected.

### A. If The Court Awards Prejudgment Interest, It Should Apply The T-Bill Rate Instead Of The Prime Rate.

If the Court awards prejudgment interest, it should use the average 52-week U.S. Treasury Bill ("T-Bill") rate, instead of the prime rate. While VLSI contends that applying the prime rate is "standard practice" (Dkt. 664 at 4-5), many courts across the country—including district courts sitting in the Fifth Circuit and the Federal Circuit on appeal—have calculated prejudgment interest using the T-Bill rate. *See, e.g.*, *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 809 F. App'x 965, 977 (Fed. Cir. 2020) (affirming prejudgment interest award at T-Bill rate as "well within the court's discretion"); *Packet Intelligence*, 2018 WL 7508613 at *2 (awarding prejudgment interest at T-Bill rate); *Whirlpool Corp. v. TST Water, LLC*, 2018 WL 1536874, at *12 (E.D. Tex. Mar. 29, 2018) (same); *Saint Lawrence Commc'ns LLC v. Motorola Mobility LLC*, 2017 WL 6268735, at *6 (E.D. Tex. Dec. 8, 2017) (same); *TransPerfect Global, Inc. v. MotionPoint Corp.*, 2014 WL 6068384, at *5 (N.D. Cal. Nov. 13, 2014) (same); *Cornell Univ. v. Hewlett-Packard Co.*, 2009 WL 1405208, at *3 (N.D.N.Y. May 15, 2009) (Rader, J., sitting by designation) (awarding prejudgment interest using T-Bill rate, which "has been accepted and employed by many courts in patent cases as a reasonable method of placing a patent owner in a position equivalent to where it would have been had there been no infringement"); *Accuscan, Inc. v. Xerox Corp.*, 2000 WL

280005, at *2 (S.D.N.Y. Mar. 15, 2000) (awarding prejudgment interest at T-Bill rate, which "is the same rate set forth for awards of post-judgment interest … and has often been employed by the Federal Circuit and other courts in awarding prejudgment interest in patent cases").

As courts have explained, "the T-Bill rate should be used as a baseline investment rate, absent evidence that the *patent holder* is entitled to a better rate, either because it had to borrow at a higher rate to cover the lost funds, or because it would have invested at a better rate." *Mars, Inc. v. Coin Acceptors, Inc.*, 513 F. Supp. 2d 128, 132-33, 136 (D.N.J. 2007) (emphasis added). Here, there is no evidence (or argument) that *VLSI* borrowed any money to cover "lost funds" or that VLSI would have "invested at a better rate" than the T-Bill rate. *See Packet Intelligence*, 2018 WL 7508613, at *2 (awarding T-Bill rate where there was "no evidence that [patentee] borrowed money at any rate, or borrowed any money at all"). The T-Bill rate thus "reflects the *least speculative* proposed measure to compensate [the patent owner] for its forgone use of the royalty payments without punishing [the accused infringer]." *Hynix Semiconductor, Inc. v. Rambus Inc.*, 2006 WL 2522506, at *1-2 (N.D. Cal. Aug. 30, 2006) (emphasis added); *see Mars*, 513 F. Supp. 2d at 136-37 (applying T-Bill rate because, among other reasons, it avoids "the speculation involved with determining whether possibly higher-yielding, but riskier, investments would have been successful for the patent holder"); *Transocean Offshore Deepwater Drilling, Inc. v. GlobalSantaFe Corp.*, 2006 WL 3227315, at *5 (S.D. Tex. Nov. 6, 2006) (awarding prejudgment interest at T-Bill rate where patentee failed "to demonstrate that [other] interest rates or rates of return are necessary to fully compensate it for [defendant's] infringement").

Rather than articulate any reason why applying the prime rate is necessary to compensate *VLSI*, VLSI instead asserts that "awarding prejudgment interest at the prime rate would place *Freescale* in nearly as good an economic position as it would have been had Intel paid a royalty

5

rather than infringe." Dkt. 664 at 5 (emphasis added). But Freescale is not a party to this litigation, has no current ownership rights in the patents found to be infringed, and no longer exists as a company. Nor did Freescale's business (developing and selling semiconductor products) resemble VLSI's business (buying patents and suing Intel) in any way. Freescale's financial position is therefore irrelevant to determining how to compensate VLSI for any foregone use of money. *See Kowalski v. Mommy Gina Tuna Resources*, 2009 WL 855976, at *6 (D. Haw. Mar. 30, 2009) (awarding prejudgment interest at T-Bill rate where only evidence of borrowing presented was for plaintiff's company, not the plaintiff who owned the patent).[2]

Even if VLSI could rely on Freescale's past borrowing, that still would not support using the prime rate here. VLSI speculates that "[h]ad Intel paid Freescale lump-sum royalties upfront, Freescale *could have* avoided taking out … new loans (at rates that exceeded the prime rate) and instead used the royalties to pay off its unwanted debt." Dkt. 664 at 5 (emphasis added). But VLSI neglects to mention that Freescale had $747 million in cash on hand in 2013 (*see* Ex. 1 at 33),[3] and still chose to borrow money at above-prime rates rather than use that cash to pay off debt. As a result, there is no certainty that Freescale would have in fact used a $2.175 billion royalty payment (either in whole or in significant part) to avoid borrowing or to pay down its debt. VLSI's speculation that Freescale "could have" done so is insufficient to support using the prime rate to calculate prejudgment interest. *See Hynix*, 2006 WL 2522506, at *1-2 (applying T-Bill rate because it "reflects the *least speculative* proposed measure").

Nor has VLSI shown that Freescale borrowed money *because* it lacked access to money

---

[2] [redacted]

[3] Freescale had roughly $700 million to $800 million in cash on hand at the end of each year from 2011 to 2014. *See* Ex. 1 at 33.

resulting from Intel's alleged infringement, as Federal Circuit law requires. *See Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 955 (Fed. Cir. 1997) (applying T-Bill rate over prime rate because "there [is] no evidence … there was a causal connection between any borrowing and the loss of the use of the money awarded as a result of [the] infringement"). Freescale was borrowing money because it chose to take on large amounts of debt because of a buyout, and its financial problems began well before Intel's alleged infringement in 2013. *See* Ex. 2 (*Dallas Morning News* article explaining that "Freescale's debt went from about $1 billion to $10 billion overnight" after 2006 buyout, resulting in "a mountain of debt" that placed Freescale in "debt free-fall" and in "serious trouble"); Ex. 3 (Reuters article quoting Moody's Investors Service describing Freescale as having an "unsustainable debt capital structure" that "may become a source of significant financial distress"). Thus, even if the Court considers Freescale's financial position (though it should not), it would be unfair to require Intel to pay prejudgment interest at the prime rate where Freescale's loans were a consequence of its poor financial condition, which had existed prior to the alleged infringement. *See BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 761 F. Supp. 1032, 1040-41 (S.D.N.Y. 1991) (holding patentee "has not demonstrated that interest at a rate higher than the [T-Bill] rate is necessary to compensate it for economic loss caused by [the] infringement"), *vacating damages for recalculation of royalty*, 1 F.3d 1214 (Fed. Cir. 1993); *see also Apple Inc. v. Samsung Elecs. Co.*, 926 F. Supp. 2d 1100, 1107-08 (N.D. Cal. 2013) (applying T-Bill rate where no evidence that patentee "borrowed any money ***because*** it was deprived of the damages award" (emphasis added)); *Conceptus*, 2012 WL 44064, at *4 (rejecting debt-based prejudgment interest rate because patentee's debt was "unrelated to infringement"); *Kowalski*, 2009 WL 855976, at *6 (applying T-Bill rate where "[n]o causal link between Defendants' infringement and the loans taken out by [plaintiff's company] has ever been proven").

7

Finally, VLSI argues that awarding prejudgment interest at the prime rate is required to provide "complete compensation." Dkt. 664 at 6. But as explained above, the jury's award of $2.175 billion is already more than enough to provide VLSI with "complete compensation." If the Court nonetheless decides to award prejudgment interest, it should not apply the prime rate because doing so would improperly compensate VLSI for the cost of *Freescale's* indebtedness. *See Kowalski*, 2009 WL 855976, at *6 (explaining that "it is Mr. Kowalski, not HISI [his company], that is to be compensated for Defendants' infringement" and "[j]ust as profits cannot be presumed to flow through HISI to Mr. Kowalski, neither can Mr. Kowalski be compensated for the cost of HISI's indebtedness"). Any prejudgment interest should instead be calculated using the less speculative and less punitive T-Bill rate. *See Hynix*, 2006 WL 2522506, at *1-2.[4]

**B.    If The Court Awards Prejudgment Interest, Its Calculation Should Start In April 2019 Instead Of 2013.**

VLSI also overreaches by urging that prejudgment interest should be calculated starting from the beginning of the damages period—i.e., April 2013 for the '373 patent and June 2013 for the '759 patent. Dkt. 664 at 2-3. VLSI, however, did not exist at that time. VLSI was not created until several years later in 2016. *See* Dkt. 535 at 4; 2/22 Tr. [Spehar] at 299:9-10; 2/24 Tr. [Sullivan] at 686:1-2. VLSI did not acquire the '373 and '759 patents until December 2018. 2/24 Tr. [Sullivan] at 734:11-737:7; PTX-4267; D-44 at 2, 5. And although VLSI acquired the patents for the sole purpose of suing Intel, it then waited until April 2019 to actually file the present action. Given these facts, any calculation of prejudgment interest should start no earlier than April 2019— when VLSI filed this lawsuit. *See General Motors*, 461 U.S. at 657 (explaining that "it may be appropriate to limit prejudgment interest"); *Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, 288 F.

---

[4] Applying the 52-week T-Bill rate and awarding prejudgment interest starting from the beginning of the damages period would result in prejudgment interest of $161,809,263. Davis Decl. ¶ 9.

8

Supp. 3d 872, 907-08 (E.D. Wis. 2017) (limiting prejudgment interest to period after suit was filed).[5]

Calculating prejudgment interest starting in 2013 instead of 2019, moreover, would unfairly result in a windfall of more than $600 million for VLSI. *See* Davis Decl. ¶ 10. The purpose of prejudgment interest, when awarded, is to place the patent owner in "'as good a position as he would have been had the infringer entered into a reasonable royalty agreement'" and to "compensate the patentee for its 'foregone use of the money … between the time of the infringement and the date of the judgment.'" *Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986) (quoting *General Motors*, 461 U.S. at 655-56). But because VLSI did not even exist or own the asserted patents until years later (and then delayed until April 2019 to sue Intel), it could not have invested the money received from any royalty paid in 2013.

Unable to show that VLSI itself would have experienced any "foregone use of the money" dating back to 2013, VLSI instead relies on *Freescale's* role as the party to the hypothetical negotiation in an attempt to justify its request for prejudgment interest starting from 2013. Dkt. 664 at 1, 5. But prejudgment interest is intended to compensate the ***current patent owner***—here, VLSI. It is not meant to compensate a different entity that had an entirely different business, has no current ownership rights in the asserted patents, and no longer exists as a company. Indeed, if Freescale had received a $2.175 billion royalty payment from Intel in 2013 (as VLSI's argument assumes), VLSI never would have bought the patents or even been formed as a company. *See* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[5] Applying the 52-week T-Bill rate and awarding prejudgment interest starting in April 2019 would result in prejudgment interest of $43,543,572. Davis Decl. ¶ 11. Applying the prime rate (which the Court should not do as explained above) and awarding prejudgment interest starting in April 2019 would result in prejudgment interest of $246,122,975. *Id.* ¶ 10.

9

█████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████.

Thus, even under VLSI's assumed scenario, VLSI is entitled to no prejudgment interest—and certainly not to prejudgment interest calculated starting from 2013.

### III. TO THE EXTENT THE COURT CREDITS VLSI'S ARGUMENTS RELYING ON FREESCALE, THE DELAY IN BRINGING SUIT FURTHER REQUIRES DENYING OR LIMITING ANY PREJUDGMENT INTEREST.

The Supreme Court has explained that "it may be appropriate to limit prejudgment interest, or perhaps deny it altogether, where the patent owner has been responsible for undue delay in prosecuting the lawsuit." *General Motors*, 461 U.S. at 655-57. VLSI contends that there was no such delay here because *VLSI* asserted the patents "within several months of acquiring them." Dkt. 664 at 2.[6] But as discussed above, VLSI's arguments for calculating prejudgment interest all rely on *Freescale's* financial position in 2013 and *Freescale's* role in the hypothetical negotiation. If the Court gives weight to any of those arguments, then—as a matter of fairness—it should also consider Freescale's role when evaluating the patent owners' delay in suing Intel.[7]

If Freescale is considered, then the Court should find that VLSI is entitled to no prejudgment interest because VLSI and the previous patent owners delayed several years in filing this lawsuit. More specifically, the '373 patent issued in 2009 and the '759 patent issued in 2010. PTX-4; PTX-5. Freescale owned both patents until it was acquired by NXP in 2015. Ex. 4; Ex.

---

[6] VLSI initially asserted the '759 patent in March 2019 in Delaware and then voluntarily dismissed that action. *VLSI Tech. LLC v. Intel Corp.*, No. 19-cv-426-CFC, Dkt. 15 (D. Del. Apr. 11, 2019). There is no reason that Intel should pay prejudgment interest based on VLSI's forum shopping.

[7] VLSI also relied on its relationship with NXP at trial. *E.g.*, 2/22 Tr. [VLSI Opening] 212:6-213:23; *id.* [Spehar] at 274:8-276:10; PDX3.12; PDX13.3; 2/23 Tr. [Bearden] 330:12-20; 3/1 Tr. [VLSI Closing] 1558:11-21. It thus cannot ignore NXP's role in delaying suit against Intel.

5; 2/22 Tr. [Spehar] at 298:14-299:8. ███████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ VLSI then purchased the patents from NXP in December 2018. 2/22 Tr. [Spehar] at 300:25-301:5; *see* Ex. 4; Ex. 5. Yet despite VLSI's allegations that Intel first infringed the '373 patent in 2011 and the '759 patent in 2013 (Dkt. 664 at 1), neither Freescale nor NXP ever sued Intel for infringement. Instead, VLSI—who claims that it "is working with Freescale (NXP)" (Dkt. 664 at 2)—waited until April 2019 to file this action. In other words, VLSI and the prior patent owners waited until ***six years*** after the first alleged infringement of the '759 patent and ***eight years*** after the first alleged infringement of the '373 patent before suing Intel.

This multi-year delay prejudiced Intel by driving up the volume of allegedly infringing sales and the time period over which VLSI is now seeking prejudgment interest, compounded annually. The magnitude of the jury's damages award and VLSI's requested prejudgment interest show that Intel would clearly be prejudiced by an award of prejudgment interest—particularly one calculated starting from 2013—following the patent owners' considerable delay in bringing suit.

VLSI and the previous patent owners' multi-year delay in bringing suit thus provides an independent basis for denying prejudgment interest here. *See, e.g.*, *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1361-62 (Fed. Cir. 2001) (affirming denial of prejudgment interest where patentee delayed two years in bringing suit); *Kaneka Corp. v. SKC Kolon PI, Inc.*, 198 F. Supp. 3d 1089, 1124 (C.D. Cal. 2016) (denying prejudgment interest where "delay resulted in prejudice to Defendants"); *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,

2014 WL 1320154, at *3-8 (W.D. Pa. Mar. 31, 2014) (denying prejudgment interest on $1.16 billion award in light of patentee's "exceptional delays in prosecuting this case and its corresponding failure to timely investigate the infringement allegations," where the patentee had also "been sufficiently compensated for its losses of the reasonable royalties through the jury's verdict"), *vacated in part on other grounds*, 807 F.3d 1283 (Fed. Cir. 2015); *Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*, 707 F. Supp. 2d 737, 766-67 (N.D. Ohio 2010) (finding request for "prejudgment interest is not warranted" where patent owner "unduly delayed in bringing suit"). At a minimum, the patent owners' undue delay provides an additional reason to deny prejudgment interest for the period before VLSI filed suit in April 2019. *See Milwaukee Elec. Tool Corp.*, 288 F. Supp. 3d at 907-08 (denying prejudgment interest for pre-suit period where delay in filing suit "needlessly inflated the potential prejudgment interest sum").

## IV.  POST-JUDGMENT INTEREST IS WARRANTED ONLY IF JUDGMENT IS ENTERED FOR VLSI.

Pursuant to 28 U.S.C. § 1961(a), an award of post-judgment interest at the federal statutory rate "shall be allowed on any money judgment in a civil case recovered in a district court." Therefore, if the Court enters final judgment for VLSI, Intel does not dispute that the Court should include post-judgment interest at the statutory rate.

## CONCLUSION

For the above reasons, Intel respectfully requests that the Court deny VLSI's request for prejudgment interest. If the Court does award prejudgment interest, Intel submits that the amount should be no more than $43,543,572 (calculated using the T-Bill rate and starting from April 2019, *see supra* note 5) for the reasons discussed above and as explained in the accompanying Declaration of Julie Davis.

Dated: February 25, 2022

OF COUNSEL:
William F. Lee (*Pro Hac Vice*)
Louis W. Tompros (*Pro Hac Vice*)
Kate Saxton (*Pro Hac Vice*)
WILMER CUTLER PICKERING HALE
  & DORR LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
Email: william.lee@wilmerhale.com
Email: louis.tompros@wilmerhale.com
Email: kate.saxton@wilmerhale.com

Gregory H. Lantier (*Pro Hac Vice*)
Amanda L. Major (*Pro Hac Vice*)
WILMER CUTLER PICKERING HALE
  & DORR LLP
1875 Pennsylvania Avenue
Washington DC 20006
Tel: (202) 663-6000
Email: gregory.lantier@wilmerhale.com
Email: amanda.major@wilmerhale.com

Respectfully submitted,

/s/ *J. Stephen Ravel*

J. Stephen Ravel
Texas State Bar No. 16584975
Kelly Ransom
Texas State Bar No. 24109427
KELLY HART & HALLMAN LLP
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6429
Email: steve.ravel@kellyhart.com
Email: kelly.ransom@kellyhart.com


James E. Wren
Texas State Bar No. 22018200
1 Bear Place, Unit 97288
Waco, Texas 76798
Tel: (254) 710-7670
Email: james.wren@baylor.edu

*Attorneys for Intel Corporation*

## **CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record are being served with a copy of the foregoing document via electronic mail on February 25, 2022.

>                      */s/ J. Stephen Ravel*
>                      J. Stephen Ravel