PUBLIC VERSION

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| VLSI TECHNOLOGY LLC, | |
| Plaintiff, | No. 6:21-cv-00057-ADA |
| v. | ██████████████ |
| INTEL CORPORATION, | |
| Defendant. | |

**PLAINTIFF VLSI TECHNOLOGY LLC'S OPPOSITION TO
DEFENDANT INTEL CORPORATION'S MOTION FOR A NEW TRIAL (D.I. 581)**

10927253

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     LEGAL STANDARD..........................................................................................6

III.    INTEL HAS NOT SHOWN THAT JUROR X'S CALENDAR COLLAGE
        EVIDENCES MISCONDUCT OR JUSTIFIES INTEL'S FISHING EXPEDITION.....8

        A.      Juror X's Calendar Collage Was Celebrating An Upcoming Movie Release,
                Using Stock Photographs Readily Available From Google Images ...................8

                1.      Juror X Has A Long History Of Posting Calendar Collages With
                        "Easter Eggs" Celebrating Upcoming Cinema Releases ........................8

                2.      Juror X's March 1 Collage Was Celebrating The March 18 Movie
                        Release Of "*Zach Snyder's Justice League*," A Remake In Which The
                        Character Lex Luthor Was Anticipated To Have An Expanded Role......9

                3.      The Stock Photographs Used In Juror X's March 1 Calendar Collage
                        Are All Among The Top Results Of Basic Google Images Searches ....10

        B.      Intel's Arguments Are Inaccurate And Based On Speculation ...........................11

                1.      Intel's Allegation That Juror X Communicated Any
                        "Information About This Case" Is Plainly Inaccurate ...........................11

                2.      Intel's Allegation That Juror X Conducted "Internet Research
                        About The Case" Is Based On Speculation .............................................12

                3.      Intel's Allegation That Juror X "Pre-Judged The Case Before The
                        Close Of Evidence" Is Based On Speculation And Is Legally Flawed ..13

                4.      Intel's Allegation That Juror X "Was Not Entirely Truthful"
                        With The Court Is Based On Speculation................................................15

        C.      Having Failed To Meet Its Burden, Intel Seeks A Fishing Expedition ..............16

IV.     THE DAMAGES AWARD WAS WELL-SUPPORTED BY THE RECORD,
        AND INTEL SEEKS A FISHING EXPEDITION BASED ON SPECULATION .......18

V.      CONCLUSION.....................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Bayer Healthcare v. Baxalta Inc.*,
  989 F.3d 964 (Fed. Cir. 2021)............................................................................................5, 20

*Beck v. Washington*,
  369 U.S. 541 (1962)....................................................................................................................6

*Carson v. Polley*,
  689 F.2d 562 (5th Cir. 1982) ....................................................................................................17

*Grooms v. Wainwright*,
  610 F.2d 344 (5th Cir. 1980) ....................................................................................................15

*Ham v. Tucker*,
  2008 WL 11417149 (W.D. Tex. Aug. 13, 2008) ......................................................................17

*McDonough Power Equip. v. Greenwood*,
  464 U.S. 548 (1984)..................................................................................................................16

*Powell v. Home Depot U.S.A.*,
  663 F.3d 1221 (Fed. Cir. 2011)...........................................................................................5, 20

*Remmer v. United States*,
  347 U.S. 227 (1954)....................................................................................................................7

*Scott v. United States*,
  2012 WL 13088797 (S.D. Tex. Oct. 11, 2012).............................................................6, 13, 17

*Smith v. Phillips*,
  455 U.S. 209 (1982)....................................................................................................................7

*Spectralytics, Inc. v. Cordis Corp.*,
  649 F.3d 1336 (Fed. Cir. 2011).........................................................................................5, 20

*Tow v. Speer*,
  2015 WL 12765414 (S.D. Tex. Aug. 17, 2015) ..................................................................6, 17

*United States v. Baker*,
  899 F.3d 123 (2d Cir. 2018)...............................................................................................6, 13, 17

*United States v. Benjamin*,
  958 F.3d 1124 (11th Cir. 2020) ........................................................................................6, 13, 17

*United States v. Bernard,*
    299 F.3d 467 (5th Cir. 2002) ..........................................................................6

*United States v. Cauble,*
    532 F. Supp. 804 (E.D. Tex. 1982) ..........................................................6, 7, 18

*United States v. Chiantese,*
    582 F.2d 974 (5th Cir. 1978) .....................................................................7, 17

*United States v. Collins,*
    972 F.2d 1385 (5th Cir. 1992) ...............................................................6, 15, 16

*United States v. Duzac,*
    622 F.2d 911 (5th Cir. 1980) ........................................................................17

*United States v. Ianniello,*
    866 F.2d 540 (2d Cir. 1989) ..............................................................5, 6, 13, 17

*United States v. Jordan,*
    958 F.3d 331 (5th Cir. 2020) .....................................................................7, 17

*United States v. Kelley,*
    140 F.3d 596 (5th Cir. 1998) .......................................................................6, 7

*United States v. Martinez,*
    604 F.2d 361 (5th Cir. 1979) ........................................................................18

*United States v. McKinney,*
    429 F.2d 1019 (5th Cir. 1970) ......................................................................18

*United States v. Noel,*
    905 F.3d 258 (3d Cir. 2018)..............................................................6, 7, 13, 17

*United States v. Olano,*
    507 U.S. 725 (1993)....................................................................................7

*United States v. Scott,*
    854 F.2d 697 (5th Cir. 1988) ........................................................................16

*United States v. Smith,*
    354 F.3d 390 (5th Cir. 2003) .........................................................................7

*United States v. Sylvester,*
    143 F.3d 923 (5th Cir. 1998) .....................................................................7, 17

*United States v. Wayman,*
    510 F.2d 1020 (5th Cir. 1975) ........................................................................6

**Rules**

Fed. R. Evid. 606(b)(1) .................................................................................................................17

    \* Unless otherwise noted, internal citations and subsequent history are omitted, and emphasis is added.

    \*\* Exhibits A through R are attached to the Declaration of Christopher T. Abernethy filed concurrently herewith.

## I.    <u>INTRODUCTION</u>

Intel contends that, because Juror X (name replaced for privacy) posted a collage including a stock photo of the courtroom where the jury spent time sitting, "it is clear that Intel did not receive a fair trial by an impartial jury and that the $2.175 billion verdict was tainted by juror misconduct." D.I. 581, Intel Br. at 1.  Intel is wrong.  Intel tries to weave an imaginative tale of juror misconduct by stacking speculation upon speculation, all while failing to inform the Court of context belying the obvious and benign explanation behind Juror X's March 1, 2021 calendar collage—that it was merely celebrating the hotly-anticipated movie release of ***Zach Snyder's Justice League***, colloquially known as ***The Snyder Cut***, which was scheduled to premiere on March 18, 2021.

Stretching back for more than a decade (*see* Ex. A), Juror X has routinely posted calendar collages for upcoming months, often decorated with images inspired by recent experiences as well as with pop culture "Easter eggs" celebrating upcoming cinema releases.  As one recent example, on February 1, 2020, Juror X posted a calendar collage celebrating the February 7, 2020 release of *Birds of Prey* (www.imdb.com/title/tt7713068/, *last visited* 2021-04-12), a movie that features Harley Quinn (yellow pants) and which is also part of the *Justice League* franchise (Ex. A at 15):



Similarly, on June 1, 2020, Juror X posted a calendar collage celebrating the June 5, 2020 expected

release date[1] of *Wonder Woman: 1984* ([www.imdb.com/title/tt7126948/](www.imdb.com/title/tt7126948/), *last visited* 2021-04-12),

a movie that features Wonder Woman (shown below in a red outfit walking under the date "1984")

and which is also part of the *Justice League* franchise (Ex. A at 11):



Like these, VLSI has identified numerous other instances where Juror X posted calendar collages

with Easter eggs celebrating cinema releases in the month featured.  *See* Part III.A.1, *infra*.

    It is thus unsurprising that, on March 1, 2021—the first day of March, and the last trial day

—Juror X posted a collage celebrating the March 18, 2021 release of *Zach Snyder's Justice League*

([www.imdb.com/title/tt12361974/](www.imdb.com/title/tt12361974/), *last visited* 2021-04-12), also known as *The Snyder Cut*:



---

[1]  The June 5, 2020 expected release date for *Wonder Woman: 1984* ultimately ended up being
delayed multiple times due to COVID-19.  *See, e.g.*, [https://io9.gizmodo.com/wonder-woman-](https://io9.gizmodo.com/wonder-woman-1984-is-delayed-but-here-are-17-other-fem-1843830051)
[1984-is-delayed-but-here-are-17-other-fem-1843830051](https://io9.gizmodo.com/wonder-woman-1984-is-delayed-but-here-are-17-other-fem-1843830051), *last visited* 2021-04-12.

Ex. A at 2.  It included a picture inspired by Juror X's recent experiences (*i.e.*, a stock photo of the courtroom Juror X had just spent a week sitting in), along with multiple Easter eggs relating to **Lex Luthor** (shown played by four actors, including Jesse Eisenberg), a character whose role in *The Snyder Cut* had been a specific subject of media anticipation.  *See* Ex. L, *Justice League: Lex Luthor's Original Role In The Snyder Cut* (Nov. 3, 2019) ("With Jesse Eisenberg revealing that he shot more scenes for Justice League, it is now clear that Lex Luthor had an expanded role in the Snyder Cut."); Ex. M, *Justice League: How The Snyder Cut Can Fix Jesse Eisenberg's Lex Luthor* (June 11, 2020) ("Lex Luthor will have more scenes in the Snyder Cut of Justice League, and that's a great opportunity for Eisenberg's performance to win fans over."); *see also* Part III.A.2, *infra*.

Intel says "[t]he photograph of the Waco courtroom used in [Juror X's] March 1 post [was] taken from the 'IP Watchdog' patent blog."  D.I. 581, Intel Br. at 4.  But that is speculation by Intel, as the same photo is available elsewhere.  In particular, that photo is available from **Google Images** (http://images.google.com), returned as the **first result** of a basic search for "**Waco courtroom**":



Ex. B at 4.  The full-sized stock photo can be copied for use directly from the Google Images search results page by simply selecting it, right clicking, and choosing "***Copy image***."  Ex. B at 5.

Further, the evidence indicates that this is very likely how Juror X obtained the stock photo, as every one of the other specific images in Juror X's collage can also be found among the top few search results of basic Google Images searches for terms like "lexcorp," "supergirl lex luthor," "smallville lex luthor president," "superman and lois wole parks," and "in science we trust":



Ex. B at 16; *see id.* at 3-15 (showing results for each of the Google Images searches above).

Moreover, even if—as Intel speculates—Juror X had hypothetically navigated to and viewed the IPWatchdog article with the same "Waco courtroom" stock photo, even that would be irrelevant, as Intel does not contend that article contained any information about this litigation. That January 20, 2021 article was published before the trial, did not mention this case or its parties, and was merely about "the courthouse's just-completed technological renovation."  D.I. 581-06. Intel conveniently ignores that the Court only instructed the jury to refrain from using the Internet "to communicate ***about this case***" or "research any information ***about this case***" (2/22 Tr. 183:10, 184:22-23; *see id.* at 183:3-185:1), not to abstain from using the Internet for unrelated purposes. Neither the court renovation article, nor Juror X's collage, ever mention this case or either party.

Finally, Intel separately alleges—without any evidence—that "the damages awarded for one patent had no basis in the record but rather appears to be based on a *New York Times* article." D.I. 581, Intel Br. at 1.  Intel's theory is factually baseless and unsupported by law.  The jury did not award an idiosyncratic number that might itself suggest a particular origin (*e.g.*, $674,987,128). It awarded $675 million for the '759 patent, which is a whole, round number that is equivalent to 80% of VLSI's $831 million ask rounded to the nearest $25 million.  A "jury is 'entitled to choose a damages award within the amounts advocated by the opposing parties.' and is 'not bound to accept a rate proffered by one party's expert but rather may choose an intermediate royalty rate.'" *Bayer Healthcare v. Baxalta Inc.*, 989 F.3d 964, 983 (Fed. Cir. 2021) (quoting *Powell v. Home Depot U.S.A.*, 663 F.3d 1221, 1241 (Fed. Cir. 2011) (quoting *Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1347 (Fed. Cir. 2011))).  Further, a particular source matching an awarded number does "not somehow put the number … off limits to the jury," as the "jury [is] entitled to choose a damages award within the amounts advocated by the opposing parties." *Spectralytics*, 649 F.3d at 1346-47.  Intel has presented no evidence that any juror ever read the *New York Times* article Intel cites or any similar source.  Intel is seeking a fishing expedition fueled purely by speculation.

In sum, Intel has not offered "***clear, strong, substantial and incontrovertible evidence … that a specific, non-speculative impropriety has occurred***."  D.I. 581, Intel Br. at 15, 16 (quoting *United States v. Ianniello*, 866 F.2d 540, 543 (2d Cir. 1989)).  Intel admits it undertook a "course of investigating publicly available material to determine whether jurors relied on extraneous material." *Id.* at 1.  It is thus telling that all Intel found—the sole "evidence" Intel contends shows "serious juror misconduct" and "that Intel did not receive a fair trial" (*id.* at 1, 8, 16)—is a single calendar collage celebrating an upcoming movie release, containing no information about the case, made from stock photos readily available from Google Images.  Intel's motion should be denied.

## II.   <u>LEGAL STANDARD</u>

"In evaluating a claim of juror misconduct, we begin with the presumption that the juror is impartial, and 'it is incumbent upon the defendant to prove otherwise.'"  *United States v. Collins*, 972 F.2d 1385, 1403 (5th Cir. 1992) (quoting *United States v. Wayman*, 510 F.2d 1020, 1024 (5th Cir. 1975)).  "This burden must be sustained 'not as a matter of speculation but as a demonstrable reality.'"  *Wayman*, 510 F.2d at 1024 (quoting *Beck v. Washington*, 369 U.S. 541, 558 (1962)).

A "district court's denial of a motion for new trial alleging extrinsic influence on the jury" is reviewed for "abuse of discretion."  *United States v. Kelley*, 140 F.3d 596, 608 (5th Cir. 1998). Likewise, "[t]he procedures used to investigate allegations of juror misconduct and the decision as to whether to hold an evidentiary hearing are matters which rest solely within the sound discretion of the district court."  *Id.*  Accordingly, "district courts are not required to conduct a full-blown evidentiary hearing in every instance in which an outside influence is brought to bear upon a petit jury."  *United States v. Bernard*, 299 F.3d 467, 476 (5th Cir. 2002).  "An evidentiary hearing is neither required nor appropriate for every allegation of a juror's misconduct or improper exposure to extraneous information."  *Tow v. Speer*, 2015 WL 12765414, at *3 (S.D. Tex. Aug. 17, 2015).

"The overwhelming weight of judicial authority supports the proposition that a [party] is not entitled to probe into the function of the jury unless he or she makes a substantial showing that some kind of outside influence may have tainted the jury's deliberations."  *United States v. Cauble*, 532 F. Supp. 804, 810 (E.D. Tex. 1982) (collecting cases).  To justify a hearing on jury misconduct, the moving party must first present "***clear, strong, substantial and incontrovertible evidence … that a specific, non-speculative impropriety has occurred***."  D.I. 581, Intel Br. at 15, 16 (quoting *Ianniello*, 866 F.2d at 543); *Scott v. United States*, 2012 WL 13088797, at *6 (S.D. Tex. Oct. 11, 2012); *United States v. Benjamin*, 958 F.3d 1124, 1136 (11th Cir. 2020); *United States v. Baker*, 899 F.3d 123, 130 (2d Cir. 2018); *United States v. Noel*, 905 F.3d 258, 274 (3d Cir. 2018).

As such, "[t]he court is not required to conduct an investigation into claims of exposure that are merely speculative." *United States v. Smith*, 354 F.3d 390, 394 (5th Cir. 2003); *see Noel*, 905 F.3d at 275 (court "does not abuse its discretion in denying a motion for a new trial without a hearing where the defendant 'offers nothing more than speculation'").  A "court's investigation … is premised on a colorable showing that extrinsic influence was actually made on the jury." *Kelly*, 140 F.3d at 608.  "Such a showing may be made by ***evidence*** that extrinsic factual matter tainted the jury's deliberations," not by "mere speculation." *Id.* (emphasis in original).  "[W]here the defendant relies on speculation unsupported by any evidence, '[it] should not be allowed … to conduct a fishing expedition' into the activity of the jury." *Cauble*, 532 F. Supp. at 810.

Despite all the above, Intel contends that "[a] presumption of prejudice arises when [any] outside influence is brought to the attention of the trial court," and that in such cases "failure of the trial judge to hold a hearing constitutes an abuse of discretion."  D.I. 581, Intel Br. at 8, 9, 15 (quoting *United States v. Chiantese*, 582 F.2d 974, 979 (5th Cir. 1978)).  Intel is wrong.  The prior "presumption of prejudice" has been overruled, and today "such a bright-line rule does not exist." *United States v. Jordan*, 958 F.3d 331, 336 (5th Cir. 2020) (rejecting notion that "when a district court is confronted with credible allegations of outside influence on a jury, it must hold an evidentiary hearing").  The presumption came from *Remmer v. United States*, 347 U.S. 227 (1954), but "in recent years the Supreme Court … backed away from this position, indicating that the presumption of prejudice and the assignment of the burden of proof are not triggered automatically but are imposed at the discretion of the district court." *United States v. Sylvester*, 143 F.3d 923, 933 (5th Cir. 1998) (citing *Smith v. Phillips*, 455 U.S. 209 (1982); *United States v. Olano*, 507 U.S. 725 (1993)).  Accordingly, the new and prevailing rule is that "only when the court determines that prejudice is likely should the [responding party] be required to prove its absence." *Id.* at 934.

III.    **INTEL HAS NOT SHOWN THAT JUROR X'S CALENDAR COLLAGE EVIDENCES MISCONDUCT OR JUSTIFIES INTEL'S FISHING EXPEDITION**

    A.    **Juror X's Calendar Collage Was Celebrating An Upcoming Movie Release, Using Stock Photographs Readily Available From Google Images**

        1.    **Juror X Has A Long History Of Posting Calendar Collages With "Easter Eggs" Celebrating Upcoming Cinema Releases**

For more than a decade (*see* Ex. A), Juror X has maintained a practice of posting calendar collages on Facebook, often decorated with images inspired by recent experiences as well as with Easter eggs celebrating upcoming cinema releases.  For illustration, below are a dozen examples of Juror X's calendar colleges celebrating cinema releases in the month featured, and there appear to be many more examples for those willing to look (*all sites last visited* 2021-04-12):

- June 2020 (Ex. A at 11) depicts Wonder Woman (red outfit under "1984") for the June 5, 2020 original release (*see* FN1, *supra*) of *Wonder Woman: 1984* (www.imdb.com/title/tt7126948/);

- February 2020 (Ex. A at 15) depicts Harley Quinn (woman, blonde hair, yellow pants) for the February 7, 2020 release of *Birds of Prey* (www.imdb.com/title/tt7713068/);

- January 2020 (Ex. A at 16) depicts Captain Jean-Luc Picard (bald man, brown coat) for the January 23, 2020 release of the TV series *Star Trek: Picard* (www.imdb.com/title/tt8806524/);

- December 2019 (Ex. A at 17) depicts Luke Skywalker (man in middle) for December 20, 2019 release of *Star Wars: Episode IX - The Rise of Skywalker* (www.imdb.com/title/tt2527338/);

- October 2019 (Ex. A at 19) depicts the Adams Family (animated characters in background) for the October 11, 2019 release of *The Adams Family* (www.imdb.com/title/tt1620981/);

- September 2019 (Ex. A at 20) depicts Rambo (Sylvester Stallone) for the September 20, 2019 release of *Rambo: Last Blood* (www.imdb.com/title/tt1206885/);

- July 2019 (Ex. A at 22) depicts Spider Man (red and black, hanging from bridge) for the July 2, 2019 release of *Spider-Man: Far From Home* (www.imdb.com/title/tt6320628/);

- October 2018 (Ex. A at 26) depicts Venom (right, black alien-like character with many teeth) for the October 5, 2018 release of *Venom* (www.imdb.com/title/tt1270797/);

- July 2017 (Ex. A at 27) depicts Spider Man (red and blue, scaling building on right) for the July 7, 2017 release of *Spider-Man: Homecoming* (www.imdb.com/title/tt2250912);

- June 2017 (Ex. A at 28) depicts Wonder Woman (right, armor with shield and blue fur coat) for the June 2, 2017 release of *Wonder Woman* (www.imdb.com/title/tt0451279);

- December 2015 (Ex. A at 29) depicts Yoda (green creature, right) for the December 18, 2015 release of *Star Wars: Episode VII - The Force Awakens* (www.imdb.com/title/tt2488496/);

- December 2013 (Ex. A at 33) depicts Tauriel (adult elf, green dress, red hair) for the December 13, 2013 release of *The Hobbit: The Desolation of Smaug* (www.imdb.com/title/tt1170358/).

**2.      Juror X's March 1 Collage Was Celebrating The March 18 Movie Release Of "*Zach Snyder's Justice League*," A Remake In Which The Character Lex Luthor Was Anticipated To Have An Expanded Role**

Given Juror X's history of posting calendar collages celebrating cinema releases, it is unsurprising that on March 1, 2021, Juror X posted a collage celebrating the March 18, 2021 release of *Zach Snyder's Justice League* (2021) (www.imdb.com/title/tt12361974/, *last visited* 2021-04-12), also known as *The Snyder Cut*.  That Juror X chose to focus on Lex Luthor is also unsurprising, as that character's role in *The Snyder Cut* had been a particular subject of anticipation.

*The Snyder Cut* is a remake of its *Justice League* (2017) (www.imdb.com/title/tt0974015/, *last visited* 2021-04-12).  The 2017 version began production under director Zach Snyder, but was finished by director Joss Whedon after the former exited due to a family tragedy.  Exs. D, E.  After taking over, Whedon reportedly "rewrote most of Snyder's version and shot extensive reshoots." Ex. D at 4.  One major change concerned Lex Luthor.  A point of controversy in the film's prequel, *Batman v. Superman: Dawn of Justice* (2016) (www.imdb.com/title/tt2975590/, *last visited* 2021-04-12), had been the portrayal of Lex Luthor by actor Jesse Eisenberg.  *See* Ex. F, *How Jesse Eisenberg Ruined Batman v. Superman* (March 24, 2016).  Eisenberg had been working on *Justice League* (2017) with Snyder, but when Whedon took over he reportedly cut Lex Luthor from the body of the film (Ex. I), relegating Eisenberg's appearance to just a post-credits scene (Exs. J, K).

However, Whedon's *Justice League* (2017) was poorly received.  Ex. D at 5.  Fans soon began a viral campaign advocating for the movie to be redone by Snyder, tweeting the hashtag "***#ReleaseTheSnyderCut***."  Ex. D at 5; Ex. E at 4.  Actors Gal Gadot (Wonder Woman) and Ben Affleck (Batman) joined in the campaign, and the project was green-lit.  Ex. D at 6-7.  Anticipation thus abounded as to how *The Snyder Cut* (2021) would differ from *Justice League* (2017).

That anticipation extended in particular to the character Lex Luthor.  Actor Jesse Eisenberg had reported filming additional Lex Luthor scenes for Snyder, so there was particular anticipation

that *The Snyder Cut* (2021) would include an expanded role for his character.  *See, e.g.* Ex. L, *Justice League: Lex Luthor's Original Role In The Snyder Cut* (Nov. 3, 2019) ("With Jesse Eisenberg revealing that he shot more scenes for Justice League, it is now clear that Lex Luthor had an expanded role in the Snyder Cut."); Ex. M, *Justice League: How The Snyder Cut Can Fix Jesse Eisenberg's Lex Luthor* (June 11, 2020) ("Lex Luthor will have more scenes in the Snyder Cut of Justice League, and that's a great opportunity for Eisenberg's performance to win fans over.").  It is thus unsurprising that Juror X focused on Lex Luthor in celebrating the release of *The Snyder Cut*.  Indeed, both "LexCorp" images Juror X used are specifically associated with Eisenberg's Lex Luthor in the movie's prequel *Batman v. Superman: Dawn of Justice* (2016).  *Compare* Ex. A at 2, *with* Exs. G, H.  Juror X even excessively shrunk Eisenberg's picture to make him the smallest Lex Luthor shown in the collage, apparently as a not-so-veiled reference to Eisenberg having been relegated to the background by director Whedon in *Justice League* (2017).

### 3.  The Stock Photographs Used In Juror X's March 1 Calendar Collage Are All Among The Top Results Of Basic Google Images Searches

Every specific image in Juror X's March 1, 2021 collage appears to have been obtained from Google Images (http://images.google.com).  The courtroom stock photo (Ex. B at 3) is the ***first result*** of a Google Images search for "Waco courtroom" (*id.* at 4).  The two "LexCorp" photos (*id.* at 6) are ***both*** on the ***first page*** of results for "lexcorp" (*id.* at 7).  The Lex Luthor from *Smallville* (*id.* at 8) is the ***second result*** of a search for "smallville lex luthor president" (*id.* at 9).  The Lex Luthor from *Supergirl* (*id.* at 10) is the ***first result*** of a search for "supergirl lex luthor" (*id.* at 11).  The Lex Luthor from *Superman and Lois* (*id.* at 12) is the ***second result*** of a search for "superman and lois wole parks" (*id.* at 13).  And the graphic that reads "In Science WE TRUST" (*id.* at 14) is the ***fourth result*** of a search for "in science we trust" (*id.* at 15).  Google Images allows all of these full-sized images to be downloaded right from the search results page.  *Id.* at 5.

Intel notes that Juror X also posted a calendar collage on February 1, 2021.  *See* D.I. 581, Intel Br. at 2.  That collage's photos are likewise available from Google.  The photo of Abraham Lincoln (Ex. C at 3) is the ***fifth result*** of a Google Images search for "abraham lincoln real photo" (*id.* at 4); the Lincoln quote (*id.* at 5) is the ***first result*** of a search for "abraham lincoln rightful masters" (*id.* at 6); and the "Official Jury Summons Enclosed" photo (*id.* at 7) is the ***fourth result*** of a search for "jury summons enclosed" (*id.* at 8).  The Courthouse photo (*id.* at 9) definitively came from Google Maps ([www.google.com/maps](www.google.com/maps)), found by searching "800 Franklin Ave, Waco, Texas" and opening "Street View" (*id.* at 10).  For proof, the collage (*id.* at 11) and Google Maps photo (*id.* at 12) have three identical "***©2020Google***" watermarks and identical window reflections of parked cars.  The evidence thus overwhelmingly shows that Juror X uses Google to find photos.

### B.    Intel's Arguments Are Inaccurate And Based On Speculation

#### 1.    Intel's Allegation That Juror X Communicated Any "Information About This Case" Is Plainly Inaccurate

Intel first contends that Juror X violated the Court's instruction to "not ***communicate*** any ***information about this case*** through any means or by any tools of technology."  D.I. 581, Intel Br. at 10 (quoting  2/22 Tr. 183:3-10).  But that is inaccurate, as Juror X's collage plainly contains no "***information about this case***."  *Id.*  It does not mention this case, either party, or any facts at issue. Its only visible words are "In Science WE TRUST," "LexCorp," and "March 2021."  Ex. A at 2. Intel nevertheless argues:  "That the post was about this case is evidenced by the fact that it features a photograph … of the Waco courtroom."  D.I. 581, Intel Br. at 10.  But that is a non-sequitur, as a stock courtroom photo does not disclose information about any case.  Further, given Lex Luthor's presence, it could be intended to represent a fictional court in Metropolis, where LexCorp is based. *See* Ex. N.  That would make sense, as one of Lex Luthor's most notable recent scenes was in a Metropolis courtroom.  *See* [www.youtube.com/watch?v=NnA4P51lDjk](www.youtube.com/watch?v=NnA4P51lDjk), *last visited* 2021-04-12.

The Court instructed the jury not to "communicate any information about this case." 2/22 Tr. 183:3-10.  It did not bar them from using the Internet for other purposes.  *See id.* at 184:8 (acknowledging that "we live in a new era with the Internet.").  As the Court noted, jurors could communicate "about the Dallas Cowboys or the recent freeze or anything you'd like" other than information "about the case."  *Id.* at 184:4-7.  The same applies to celebrating an upcoming movie.

### 2. Intel's Allegation That Juror X Conducted "Internet Research About The Case" Is Based On Speculation

Intel next contends the calendar collage shows that Juror X was "conducting internet research about the case and using it during trial."  D.I. 581, Intel Br. at 11.  That is pure speculation.

The Court instructed the jury not to "conduct any independent investigation ***of this case***" or "research any information ***about this case***."  2/22 Tr. 184:8-185:1.  The jury remained free to research "the Dallas Cowboys or the recent freeze or anything you'd like" that is not "about the case."  *Id.* at 184:4-7.  The same applies to searching Google Images for unrelated stock photos.

Intel says "[t]he photograph of the Waco courtroom used in [Juror X's] March 1 post [was] taken from the 'IP Watchdog' patent blog."  D.I. 581, Intel Br. at 4.  But that is speculation, as that photo is also the first result of a Google Images search for "Waco courtroom."  Ex. B at 4-5.  The evidence overwhelmingly indicates Juror X used Google to obtain photos.  *See* Part III.A.3, *supra*.

But even if Juror X had viewed the IPWatchdog article with the same courtroom photo, it would be irrelevant, as Intel does not contend that article contained any information whatsoever about this case.  That article was published before the trial, did not mention this case or its parties, and was merely about "the courthouse's just-completed technological renovation."  D.I. 581-06.

Intel nevertheless argues that the court renovations article is "highly prejudicial to Intel" because it notes that this Court is "the number one patent litigation venue in the United States."  D.I. 581, Intel Br. at 11.  Intel says this is information the Court "excluded in its in limine rulings."

*Id.* at 11 & n.8.  This argument is meritless, as Intel omits that this was ***VLSI's*** MIL No. 2.7 that ***precluded Intel*** from making "any reference to VLSI allegedly engaging in forum shopping or litigation abuse" by selecting "a popular venue for patent litigation."  D.I. 364 at 7-8; D.I. 507 at 3 (granted against Intel).  Thus, if any party had cause to complain it would be VLSI, not Intel.

Abandoning the court renovations article, Intel next speculates that Juror X may have researched "***[o]ther blog posts*** on IPWatchdog."  D.I. 581, Intel Br. at 11.  Intel further speculates that in doing so, Juror X could have found articles with "information about the parties and the asserted patents, including information that is unfavorable to Intel."  *Id.* at 11-12.  Intel then further speculates that Juror X could have found and read three specific articles Intel dug up.  *Id.* at 12.

Intel stacks speculation upon speculation, without providing any evidence that Juror X even viewed the benign court renovations article, much less was "conducting internet research about the case and using it during trial."  *Id.* at 11.  Intel has plainly failed to show "***clear, strong, substantial and incontrovertible evidence … that a specific, non-speculative impropriety has occurred***."  D.I. 581, Intel Br. at 15, 16 (quoting *Ianniello*, 866 F.2d at 543); *Scott*, 2012 WL 13088797, at *6; *Benjamin*, 958 F.3d at 1136; *Baker*, 899 F.3d at 130; *Noel*, 905 F.3d at 274.

### 3.    Intel's Allegation That Juror X "Pre-Judged The Case Before The Close Of Evidence" Is Based On Speculation And Is Legally Flawed

Intel next contends that Juror X's March 1, 2021 collage—posted on the last day of trial— "shows that he pre-judged the case before the close of evidence."  D.I. 581, Intel Br. at 13.  Intel asserts that the "Lex Luthor imagery" purportedly "conveys a firm conviction on the merits of the case—and against Intel in particular."  *Id.*  Intel's allegation is both speculative and legally flawed.

First, Intel speculates that Juror X "equated Intel with an evil technology corporation."  D.I. 581, Intel Br. at 13.  In doing so, Intel calls LexCorp a "***technology*** company," like Intel.  *Id.*  But LexCorp is ***not*** a "technology company."  To the contrary, even the source Intel cites describes

LexCorp as a "mega-conglomerate" that "essentially owned all of Metropolis."  Ex. O at 4; D.I. 581, Intel Br. at 13 n.13 (citing same source as Ex. O); *see also* Ex. N (LexCorp's "Industry" is "Multinational conglomerate").  As a mega-conglomerate, "LexCorp has an interest in virtually every business based in Metropolis."  Ex. P at 6.  It is "the city's largest private employer," with "vast holdings" including "many subsidiaries under the LexCorp umbrella."  Ex. Q at 2.  LexCorp is in "the world of high finance" with multiple banks, the oil industry with "LexOil," the travel industry with "LexAir," the broadcast industry with "LexCom," the newspaper industry with the "*Daily Planet*," and many "additional holdings" in industries ranging from armored car services, to disposal services, to supermarkets, to restaurants, to breweries.  Ex. R at 233.  Intel and LexCorp simply have little in common beyond both being corporations.  But *VLSI* is also a corporation, as are *NXP*, *Freescale*, and *SigmaTel*, the predecessor owners of the patents-in-suit.  Intel does not explain why it thinks Juror X's collage was directed "against Intel in particular" (D.I. 581, Intel Br. at 13) rather than to any of the other corporations at issue—or, as is more likely given Juror X's other calendar collages, to just celebrating an upcoming movie release (*see* Part III.A, *supra*).

Second, after presuming that Juror X "equated Intel with an evil technology corporation," Intel further speculates that Juror X "had unfairly prejudged the case against Intel before the close of evidence."  D.I. 581, Intel Br. at 13.  Intel does not cite any case in support of this argument.  That is because its theory is legally flawed.  Intel focuses on a statement made in passing by Judge Manske in his "Welcome to jury duty" speech (2/22 Tr. 6:19), during which he encouraged potential jurors to find "jury service to be deeply rewarding" and to "not try to prejudge a case and assume that you know where the trial is going" (*id.* at 9:16-10:2).  However, Intel ignores the actual "PRELIMINARY JURY INSTRUCTION[]" given by Judge Albright, which more specifically stated: "Do not *discuss* this case amongst yourselves or with other jurors until the end of the case

when I tell you that it is okay for you to begin to **deliberate**."  2/22 Tr. 181:21, 183:13-16.  Intel

concedes it has no evidence as to "whether other jurors were aware of" Juror X's calendar collage

(D.I. 581, Intel Br. at 16), much less that any discussed it before deliberations began the next day.

What Intel really alleges is a premature expression.  For allegations that "jurors may have

made premature expressions as to guilt, [the Fifth Circuit will] generally defer to the district court's

decision as to whether the defendant received a fair trial by an impartial jury, as the court is in 'a

far better position to judge the mood at trial and the predilections of the jury.'"  *United States v.*

*Collins*, 972 F.2d 1385, 1404 (5th Cir. 1992).  Here, the allegation that Juror X was referring to

Intel is speculative.  But even if true, it would not evidence preexisting bias, as Juror X posted on

the last day of trial.  *See Grooms v. Wainwright*, 610 F.2d 344, 348 (5th Cir. 1980) ("judge acted

well within his discretion when he denied Grooms' motion for a new trial without interrogating the

jury," because "a juror's statement that '(from) what I heard already he's guilty' at the conclusion

of the prosecutor's case and before the defendant presents any evidence does not reflect serious

prejudice, but only an objective evaluation of the evidence presented to date in the trial.").

### 4.      Intel's Allegation That Juror X "Was Not Entirely Truthful" With The Court Is Based On Speculation

For its final theory, Intel argues that the March 1, 2021 collage "shows [Juror X] was not

entirely truthful in answering a material question on [the] juror questionnaire."  D.I. 581, Intel Br.

at 13.  Juror Question 26 asked: ████████████████████████████

D.I. 581-03.  On December 18, 2020, two months before trial, Juror X answered: ██████████ *Id.*

Intel now says Juror X lied.  Suggesting it knows what Juror X's opinion was, Intel says Juror X

████████████████████████████████████████████████████████████

D.I. 581, Intel Br. at 14.  Intel says that had Juror X "revealed" this "correct response," it "would

have supported a valid challenge for cause."  *Id.* at 13-14.  Intel's allegations are pure speculation.

First, Intel speculates that Juror X's collage "equates *Intel* with *Lexcorp*," *and* that Juror X views LexCorp unfavorably.  D.I. 581, Intel Br. at 14.  But that speculation is unsupported (*see* Part III.B.3, *supra*) and is further undercut by the fact that Juror X was likely celebrating the release of *The Snyder Cut* (*see* Part III.A, *supra*).  Indeed, Juror X appears to be a big fan of a Lex Luthor and LexCorp.  Regardless, there is no link between LexCorp and Intel, or any other real company.

Second, even assuming such a link, there is no support for Intel's speculation that any views about *Intel* on the *last day of trial* show that Juror X ███████████████████████████ █████████████████████████████████████████████████████████████████ answered *two months before trial*.  D.I. 581, Intel Br. at 14.  Intel does not know what █████████ ████████████████████ Juror X held at any time, much less two months before trial.

Intel's reliance on *United States v. Scott*, 854 F.2d 697 (5th Cir. 1988), citing *McDonough Power Equip. v. Greenwood*, 464 U.S. 548 (1984), is misplaced.  The Fifth Circuit "do[es] not believe the *McDonough* framework is applicable here, as it implicitly presumes a case in which a juror concealed an *objective material fact*."  *Collins*, 972 F.2d at 1403-04 (citing *Scott*, 854 F.2d at 699 ("material fact[]" that "*his brother was a deputy sheriff*")).  "In cases like this one," the Court "generally defer[s] to the district court's decision as to whether the defendant received a fair trial by an impartial jury."  *Id*.  Intel has shown no evidence that it was deprived of a fair trial.

## C.   Having Failed To Meet Its Burden, Intel Seeks A Fishing Expedition

Intel contends that "an evidentiary hearing with all jurors is required to fully examine the scope of the [alleged] misconduct."  D.I. 581, Intel Br. at 1; *see also id.* at 9, 15.  Intel is wrong.

As an initial matter, there is nothing further to investigate regarding Intel's *first* allegation that Juror X's March 1, 2021 calendar collage violated the Court's instruction "not communicate any information about this case."  *Id.* at 10.  That allegation is resolved by the calendar collage itself (Ex. A at 2), which on its face contains no "information about this case."  *See* Part B.1, *supra*.

There is also nothing to investigate for Intel's ***third*** claim that Juror X "prejudged the case" (D.I. 581, Intel Br. at 13) or ***fourth*** claim that Juror X untruthfully hid "anti-corporate animus" (*id.* at 14), as Rule 606(b) forbids inquiry into "mental processes." Fed. R. Evid. 606(b)(1). As such, "***juror testimony regarding the subjective prejudices or improper motives of individual jurors is barred by Rule 606(b)***." *Ham v. Tucker*, 2008 WL 11417149, at *6 (W.D. Tex. Aug. 13, 2008) (despite "suggestion of juror prejudice," courts are "confined to the limitations of Rule 606(b)"); *see Carson v. Polley*, 689 F.2d 562, 581 (5th Cir. 1982) ("[S]ubjective thoughts and emotions that may have influenced a juror's deliberations are shielded from inquiry."); *United States v. Duzac*, 622 F.2d 911, 913 (5th Cir. 1980) ("'[I]nquiries that seek to probe the mental processes of jurors … are impermissible.'"); *Tow v. Speer*, 2015 WL 12765414, at *3 (S.D. Tex. Aug. 17, 2015) ("[A] hearing is inappropriate when the alleged influence has to do with a juror's internal state of mind.").

That leaves Intel's ***second*** allegation that Juror X was "conducting internet research about the case and using it during trial." D.I. 581, Intel Br. at 11; *see* Part III.B.2, *supra*. Intel says that because it alleges external influence, "the Court should presume the [alleged] misconduct was prejudicial to Intel," and that "failure of the trial judge to hold a hearing constitutes an abuse of discretion." *Id.* at 15 (quoting *Chiantese*, 582 F.2d at 979). Intel is wrong. The prior "presumption of prejudice" has been overruled, and today "such a bright-line rule does not exist." *Jordan*, 958 F.3d at 336. The new rule is that "only when the court determines that prejudice is likely should the [responding party] be required to prove its absence." *Sylvester*, 143 F.3d at 934. Intel clearly has not shown prejudice, as it has not even met its initial burden to show "***clear, strong, substantial and incontrovertible evidence … that a specific, non-speculative impropriety has occurred***." D.I. 581, Intel Br. at 15 (quoting *Ianniello*, 866 F.2d at 543); *Scott*, 2012 WL 13088797, at *6; *Benjamin*, 958 F.3d at 1136; *Baker*, 899 F.3d at 130; *Noel*, 905 F.3d at 274. The calendar collage

does not provide evidence of Juror X "conducting internet research about the case" (D.I. 581, Intel Br. at 11), as the photos used are all available from Google Images (Part III.A.3, *supra*), and even the article with the same courtroom photo was about mere court renovations (Part III.B.2, *supra*).

Yet, Intel tries to add even more speculations.  Intel argues that Juror X "stated during voir dire that he spends his time 'sitting at home … playing on my computer all day,' and that his hobbies and interests are '[j]ust basically surfing the web.'"  D.I. 581, Intel Br. at 16 (citing 2/22 Tr. 119:16-123:11).  Intel then speculates "that [Juror X] *likely* accessed other extra-record information *during trial*," including "extra-record material *about the case*."  *Id.*  Intel apparently contends a hearing is required whenever a juror is an Internet user—which in 2021, will be always.

Intel further argues that "[a]n evidentiary hearing would also allow investigation into … *whether the other jurors* conducted any such research."  *Id.* at 16-17.  But Intel plainly "should not be allowed … to conduct a fishing expedition."  *Cauble*, 532 F. Supp. at 810.

Finally, Intel incorrectly cites *United States v. McKinney*, 429 F.2d 1019 (5th Cir. 1970), which "has never been adopted," because "[o]n rehearing, *McKinney* was reversed."  *United States v. Martinez*, 604 F.2d 361, 364 (5th Cir. 1979).  "[T]he decision to hold a hearing to determine whether juror misconduct has occurred is within the sound discretion of the trial judge."  *Id.*

## IV.    THE DAMAGES AWARD WAS WELL-SUPPORTED BY THE RECORD, AND INTEL SEEKS A FISHING EXPEDITION BASED ON SPECULATION

Finally, Intel contends that "a second basis justif[ies] an evidentiary hearing of all jurors," arguing "there is good *reason to believe* that *someone* on the jury conducted internet research that led to at least part of the jury's damages award."  D.I. 581, Intel Br. at 17.  However, Intel "has not alleged any specific acts of misconduct on the part of any juror."  *Cauble*, 532 F. Supp. at 810.

Noting that VLSI's expert proposed $1.61 billion in damages for the '373 patent and the jury awarded $1.5 billion, Intel *speculates* that "the jury rejected Dr. Sullivan's damages analysis"

and based its award on "the $1.5 billion lump sum that Intel paid pursuant to the Nvidia settlement." D.I. 581, Intel Br. at 17.  Intel then uses that speculative assumption to speculate further.

Noting that VLSI proposed $831 million for the '759 patent and the jury awarded $675 million, Intel speculates that "*[i]t would not be surprising if* the jury *similarly* looked to *another* Intel settlement in deciding what to award in damages for the '759 patent." *Id.*  Intel then speculates that "*if* the jury" had disregarded the Court's orders, an "internet search *would have* led to the *New York Times* article (as well as other articles) disclosing that Intel had paid $675 million to settle litigation with Intergraph." *Id.*  Intel speculates that the jury's $675 million award "*appears to be* based on [the] *New York Times* article" because that figure is not "in the trial record." *Id.* at 1, 17. Intel seeks a hearing to "*explore whether* [Juror X], or *any other juror*, researched or was in any way influenced by extra-record material." *Id.* at 17-18.  Clearly, Intel seeks a fishing expedition.

Noticeably absent is any *evidence* that (a) the jury actually based its awards on the Nvidia or Intergraph licenses, or (b) any juror actually read the *New York Times* (or any similar) article. Intel speculates about a purportedly "matching" number outside the record, but such speculation is unwarranted.  The jury did not award an idiosyncratic number that might suggest a particular origin (*e.g.*, $674,987,128).  The jury awarded *$675 million* for the '759 patent, which is a whole, round number equivalent to *80% of VLSI's $831 million ask rounded to the nearest $25 million*. It is unsurprising that a round number might randomly "match" many sources outside the record.[2]

---

[2]  *See, e.g.*, http://www.wsj.com/articles/SB976832453959254356 ("Intel is expected to realize another *$675 million* in interest and investment income in its fourth-quarter earnings."); http://www.azurecap.com/vmware (company that "virtualizes the Intel hardware architecture … acquired … for *$675M*"); http://abcnews.go.com/Technology/story?id=7574974&page=1 ("Intel's fine surpassed the *$675 million* penalty the Commission levied against Microsoft"); http://www.smh.com.au/technology/apple-ordered-to-pay-675-million-for-patent-infringement-20150225-13oyqs.html ("Apple ordered to pay *$675 million* for patent infringement"); http://www.paleudislaw.com/agreement-between-nokia-and-samsung-highlights-the-financial-imp.html ("Nokia currently generates about *$675 million* per year from at least 50 licensees."); http://pando.com/2013/09/09/rpx-and-the-complicated-business-of-stockpiling-patents-for-good-not-evil/ ("RPX … has purchased *$675 million* worth of patents …"), *all last visited* 2021-04-12.

A jury may award any amount "within the range encompassed by the record as a whole." *Bayer*, 989 F.3d at 984.  Thus, "a jury is 'entitled to choose a damages award within the amounts advocated by the opposing parties' and is 'not bound to accept a rate proffered by one party's expert but rather may choose an intermediate royalty rate.'"  *Id.* at 983 (quoting *Powell*, 663 F.3d at 1241 (quoting *Spectralytics*, 649 F.3d at 1347)).  Here, the jury's damages awards were well-supported by the record, as for both patents the jury awarded amounts between those advocated by the parties.

Moreover, the existence of a non-comparable license with a number does "not somehow put the number … off limits to the jury."  *Spectralytics*, 649 F.3d at 1346.  In *Spectralytics*, Cordis argued "that the jury may have based the 5-percent royalty rate on the 5-percent sales commission paid to Jack Lundeen."  *Id.* at 1346.  But the Federal Circuit disagreed, holding that "'Cordis ***does not really know*** if the jury based its award on Lundeen's commission,' and the 'fact that Lundeen's commission was five percent ***did not somehow put the number five off limits to the jury***.'"  *Id.*

Finally, Intel contends that "VLSI's counsel during his closing argument … stated that ***Intel's settlements*** had been reported in the *New York Times*."  D.I. 581, Intel Br. at 17.  Not so.  VLSI put up a slide discussing "that Intel paid ***MicroUnity*** $300 million."  3/1 Tr. 1622:1.  Intel objected that the slide had "material that's under seal."  *Id.* at 1622:9-10.  VLSI merely responded: "No. That's not so. The ***MicroUnity*** situation was published in the New York Times."  *Id.* at 1622:11-12.  VLSI thus clearly did not refer to multiple of "Intel's settlements" or to Intergraph.  VLSI just noted that the ***MicroUnity*** settlement—***that was before the jury***—was already public.  As the Court noted at the time, "the jury's heard whatever the numbers are."  *Id.* at 1622:15-16.  The jury had no incentive to search the *New York Times* for numbers already presented in court.

## V.     <u>CONCLUSION</u>

For the foregoing reasons, VLSI requests that the Court deny Intel's motion in its entirety.

Respectfully submitted,

Dated:  April 12, 2021

By: _/s/ Andy Tindel_____

Morgan Chu (*pro hac vice*)
Benjamin W. Hattenbach  (*pro hac vice*)
Iian D. Jablon  (*pro hac vice*)
Alan J. Heinrich  (*pro hac vice*)
Christopher T. Abernethy (*pro hac vice*)
Ian Robert Washburn  (*pro hac vice*)
Amy E. Proctor  (*pro hac vice*)
Dominik Slusarczyk  (*pro hac vice*)
Elizabeth C. Tuan  (*pro hac vice*)
Charlotte J. Wen  (*pro hac vice*)
Brian Weissenberg  (*pro hac vice*)
Benjamin Monnin  (*pro hac vice*)
Jordan Nafekh  (*pro hac vice*)
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, California   90067
Telephone: (310) 277-1010
Facsimile: (310) 203-7199
mchu@irell.com
bhattenbach@irell.com
ijablon@irell.com
aheinrich@irell.com
cabernethy@irell.com
iwashburn@irell.com
aproctor@irell.com
dslusarczyk@irell.com
etuan@irell.com
cwen@irell.com
bweissenberg@irell.com
bmonnin@irell.com
jnafekh@irell.com

Babak Redjaian  (*pro hac vice*)
**IRELL & MANELLA LLP**
840 Newport Center Drive, Suite 400
Newport Beach, California   92660
Telephone: (949) 760-0991
Facsimile: (949) 760-5200
bredjaian@irell.com

J. Mark Mann (Texas Bar No. 12926150)
mark@themannfirm.com
G. Blake Thompson (Texas Bar No. 24042033)
blake@themannfirm.com
**MANN | TINDEL | THOMPSON**
300 W. Main Street
Henderson, TX 75652
Telephone: (903) 657-8540
Facsimile:  (903) 657-6003

Andy Tindel (Texas Bar No. 20054500)
atindel@andytindel.com
**MANN | TINDEL | THOMPSON**
112 E. Line Street, Suite 304
Tyler, Texas 75702
Telephone: (903) 596-0900
Facsimile:  (903) 596-0909

Craig D. Cherry (Texas Bar No. 24012419)
ccherry@swclaw.com
**STECKLER, WAYNE, COCHRAN, CHERRY, PLLC**
100 N. Ritchie Road, Suite 200
Waco, Texas 76701
Telephone: (254) 776-3336
Facsimile:  (254) 776-6823

*Attorneys for VLSI Technology LLC*

## **CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing instrument was served or delivered electronically via email, to all counsel of record, on April 12, 2021.


_/s/ Andy Tindel_
Andy Tindel