**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

VLSI TECHNOLOGY LLC,

               Plaintiff,

        v.

INTEL CORPORATION,

               Defendant.

**Case No.:** 6:21-cv-00057-ADA

**PLAINTIFF VLSI TECHNOLOGY LLC'S OPPOSITION TO
INTEL CORPORATION'S MOTION TO STAY THIS DISTRICT COURT LITIGATION
PENDING AN APPEAL OF A NONBINDING AGENGY DECISION**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .......................................................................................................1

II.   BACKGROUND ........................................................................................................2

III.  INTEL'S MOTION TO STAY IS WITHOUT MERIT .........................................4

    A.   VLSI Would Be Unduly Prejudiced By A Stay.......................................5

    B.   The Advanced Stage Of These Proceedings Strongly Weighs Against A Stay .......8

    C.   The Appeal Of The PTAB's Erroneous Decision Will Not Simplify The Issues ....9

IV.  CONCLUSION.........................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*CloudofChange, LLC v. Lightspeed POS Inc.*,
    2023 WL 3467787 (W.D. Tex. May 15, 2023) ........................................................5

*Facet Techs., LLC v. LifeScan, Inc.*,
    2024 WL 308294 (C.D. Cal. Jan. 3, 2024) ..........................................................8, 9

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
    721 F.3d 1330 (Fed. Cir. 2013)............................................................................8

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
    2020 WL 6270776 (D. Del. Oct. 26, 2020) ...........................................................5

*Kahn v. GMC*,
    889 F.2d 1078 (Fed. Cir. 1989)............................................................................5

*Kirsch Rsch. & Dev., LLC v. Tarco Specialty Prods., Inc.*,
    2021 WL 4555804 (W.D. Tex. Oct. 4, 2021) ......................................................4, 5

*Liqwd, Inc. v. L'Oreal USA, Inc.*,
    2018 WL 11189633 (D. Del. Dec. 12, 2018).....................................................9, 10

*Network-1 Sec. Sols., Inc. v. Alcatel-Lucent USA Inc.*,
    2015 WL 11439060 (E.D. Tex. Jan. 5, 2015) ........................................................6

*Papst Licensing GmbH & Co., KG v. Apple, Inc.*,
    2018 WL 3656491 (E.D. Tex. Aug. 1, 2018) .........................................................6

*Parthenon Unified Memory Architecture LLC v. HTC Corp. & HTC Am., Inc.*,
    2016 WL 3365855 (E.D. Tex. June 17, 2016) ....................................................6, 7

*Realtime Data, LLC v. Rackspace US, Inc.*,
    2017 WL 772654 (E.D. Tex. Feb. 27, 2017) ......................................................4, 5

*SenoRx, Inc. v. Hologic, Inc.*,
    2013 WL 144255 (D. Del. Jan. 11, 2013)..............................................................8

*Smart Modular Techs., Inc. v. Netlist, Inc.*,
    2016 WL 5159524 (E.D. Cal. Sept. 21, 2016).......................................................6

*Tinnus Enters., LLC v. Telebrands Corp.*,
    2017 WL 379471 (E.D. Tex. Jan. 24, 2017) ........................................................10

*United Therapeutics Corp. v. Liquidia Techs., Inc.*,
   74 F.4th 1360 (Fed. Cir. 2023) ...............................................................7, 9, 10

*UNM Rainforest Innovations v. TP-Link Techs. Co.*,
   2023 WL 2638273 (W.D. Tex. Mar. 24, 2023) .................................................1, 4, 6

*VLSI Tech. LLC v. Intel Corp.*,
   87 F.4th 1332 (Fed. Cir. 2023) .................................................................10

*XY, LLC v. Trans Ova Genetics, L.C.*,
   890 F.3d 1282 (Fed. Cir. 2018)...................................................................7

**Statutes**

35 U.S.C. § 315(b) ..................................................................................3, 9

**Other Authorities**

H.R. Rep. No. 112-98, pt. 1 (2011)...................................................................7

## I.      INTRODUCTION

After a March 2021 jury verdict awarding VLSI $1.5 billion for Intel's infringement of VLSI's '373 Patent, Intel appealed this Court's judgment. While that appeal was pending, Intel filed notices of supplemental authority with the Federal Circuit announcing the same final written decision it relies on here, in an attempt to delay this case in favor of a parallel *inter partes* review ("IPR") proceeding. *See* Ex. A. The Federal Circuit declined, instead issuing an opinion affirming the '373 Patent infringement finding, and reversing and remanding on Intel's license defense and for a limited trial on damages. Intel now asks this Court to do what the Federal Circuit would not: to stay this case in favor of an IPR that PTO Director Vidal explicitly found to be an "abuse of the IPR process." Ex. B at 54. This Court should similarly decline Intel's invitation to inject delay at the eleventh hour, to VLSI's significant prejudice.

Despite Intel's claim otherwise, Intel's motion to stay is an obvious attempt to leapfrog this Court's now-affirmed liability judgment in a race to finality. But a stay in this situation would be unprecedented. Intel has not cited a single case in which a post-appeal remand proceeding was stayed pending an IPR appeal, and for good reason. All three customary factors counsel against it.

*First*, a stay at this juncture would undeniably prejudice VLSI both by causing unnecessary delay and by harming VLSI's interests. The law is clear that staying this case pending an IPR appeal, for which there is no set timeline and the parties have not yet even begun briefing, constitutes prejudice to VLSI. *See, e.g.*, *UNM Rainforest Innovations v. TP-Link Techs. Co.*, 2023 WL 2638273, at *1 (W.D. Tex. Mar. 24, 2023) (Albright, J.). A stay could also needlessly delay and ultimately impede VLSI's ability to recover damages for Intel's years of adjudged infringement. Staying this case would only enable Intel's attempts to evade liability for its substantial infringement, based solely on an IPR petition that Director Vidal determined was filed

with "*a singular focus* on using an AIA proceeding *to extort money*." Ex. B at 54.

*Second*, the proceedings here have undeniably reached an advanced stage. The Court and the parties have already expended substantial resources litigating this case not only through trial, but also through appeal. Staying this case now would constitute a waste of the parties' resources, to say nothing of those expended by this Court and the Federal Circuit. Intel attempts to obscure the posture of this case, but has not cited a single case staying proceedings at as advanced a stage as these—in which liability *has already been tried and affirmed* in an Article III Court.

*Third*, simplification is far from guaranteed. If the IPR decision is reversed, as seems probable here given the procedural abuses, then no simplification will occur. But proceeding to a narrow trial on damages and (if necessary) Intel's license defense will likely finally resolve this matter. The most equitable and efficient path is therefore to proceed in accordance with the Federal Circuit's mandate. VLSI respectfully requests that the Court deny Intel's motion to stay.

## II.   BACKGROUND

VLSI served Intel with a complaint for infringement of the '373 and '759 Patents on April 11, 2019, nearly five years ago. At every opportunity since, Intel has attempted to delay these proceedings: Intel has repeatedly sought unsuccessfully to stay or transfer the case, *e.g.*, Dkts. 24, 188, 349, demanded meritless rehearing at the Federal Circuit, Ex. C, and even attempted to prevent trial in the original litigation, *e.g.*, Dkt. 366. This belated motion to stay pending the appeal from a *nonbinding* agency decision is merely the latest attempt in a pattern of delay.

In late 2019 and early 2020, Intel filed three IPR petitions challenging the patentability of VLSI's claimed inventions in the '373 and '759 Patents. The PTAB denied all three petitions, deferring to this Court's advanced proceedings. *See* Ex. D; Ex. E at 13 (IPRs would be a waste of "Board, party, and judicial resources" given the late stage of the litigation, in which the parties had

invested substantial resources litigating issues that Intel conceded had "'complete' overlap" with the proposed IPR); Ex. F. Throughout proceedings in this Court, including in the Pretrial Order, Intel pursued invalidity defenses, including prior art defenses, that mirrored those it asserted in the IPRs. On the eve of trial, Intel voluntarily elected not to present its invalidity arguments regarding the asserted claims of the '373 Patent. *See* Ex. G.

Following the jury verdict on March 2, 2021, VLSI was awarded $1.5 billion for Intel's infringement of the '373 Patent, and the Court ultimately entered judgment against Intel on its invalidity counterclaim. *See* Dkt. 701 at 1–2. In June and July of 2021, shortly after the verdict but long after Intel was barred from filing its own IPR petition, Patent Quality Assurance ("PQA"), an entity of undisclosed origin, filed an IPR petition challenging the '373 Patent. Though the PQA petition copied extensively from Intel's previously denied petitions, *see* Ex. H; Ex. B at 10, the PTAB instituted review. Intel then submitted a similarly duplicative petition, and the panel permitted Intel to join the PQA IPR over VLSI's objections. Ex. I at 25; Ex. J at 2.

PQA's apparent purpose for filing its petition was to extort money from VLSI. During the pendency of review, Director Vidal explicitly found that "[v]iewed as a whole, **PQA's conduct has been an abuse** of the IPR process, the patent system, and the Office. The totality of **PQA's conduct evinces a singular focus** on using an AIA proceeding **to extort money**." Ex. B at 54. Indeed, "[d]espite being given the opportunity, PQA failed to offer a verifiable, legitimate basis for filing its IPR Petition, which was filed only after a district court awarded large monetary damages keyed to the subject '373 patent." *Id.*; *see also id.* at 54–55 ("Seeking an AIA trial for the primary purpose of extorting money, and representing that a party has an exclusive engagement with a witness . . . do not comport with the purpose and legitimate goals of the AIA and are abuses of process"). Director Vidal eventually dismissed PQA from the IPR proceedings, as punishment

for its "abuse of the review process." *See id.* at 5. Nevertheless, Director Vidal subsequently permitted Intel to remain in the proceedings and even elevated Intel—which at that point was time-barred from filing another IPR—to the role of lead petitioner. *Id.* at 58. And she eventually acceded to PQA's demands to be reinstated for the limited purpose of ensuring that "PQA cannot avoid possible sanctions through continued non-participation." *See* Ex. K at 4.

Despite its "improper purpose," the PQA IPR, now litigated by Intel, continued through to final written decision and is now just beginning the appeal process before the Federal Circuit. No appeal briefs have been filed and the appeal remains in its preliminary phases.

## III.    INTEL'S MOTION TO STAY IS WITHOUT MERIT

Intel's motion fails to justify a stay that would severely prejudice VLSI and waste substantial judicial resources merely to defer to a nonbinding agency decision that is likely to be reversed on appeal. "[W]hether to stay proceedings pending *inter partes* review of a patent is a matter committed to the district court's discretion." *UNM Rainforest*, 2023 WL 2638273, at *1. "[T]here is no per se rule that patent cases should be stayed pending PTO proceedings, because such a rule 'would invite parties to unilaterally derail litigation.'" *Id.* (quoting *Realtime Data, LLC v. Rackspace US, Inc.*, 2017 WL 772654, at *2 (E.D. Tex. Feb. 27, 2017)). "District courts typically consider three factors when determining whether to grant a stay pending [IPR] of a patent in suit: (1) whether the stay will unduly prejudice the nonmoving party, (2) whether the proceedings before the court have reached an advanced stage, including whether discovery is complete and a trial date has been set, and (3) whether the stay will likely result in simplifying the case before the court." *Kirsch Rsch. & Dev., LLC v. Tarco Specialty Prods., Inc.*, 2021 WL 4555804, at *2 (W.D. Tex. Oct. 4, 2021) (Albright, J.). Here, all three factors weigh against a stay.

A.      **VLSI Would Be Unduly Prejudiced By A Stay**

A stay pending the IPR appeal here would unduly prejudice VLSI for at least two reasons: (1) the stay would be of indeterminate duration, thereby depriving VLSI of the right to timely enforce its patent; and (2) the stay could further Intel's scheme to gain a tactical advantage and avoid paying damages for its adjudged infringement. This case has already lasted five years and has been litigated through an appeal that affirmed Intel's significant infringement of the '373 Patent and this Court's final judgment of validity. Further delay would only prejudice VLSI.

*First*, a stay for the lengthy and unpredictable duration of an appeal would unduly prejudice VLSI. VLSI "has an interest in the timely enforcement of its patent right," *CloudofChange, LLC v. Lightspeed POS Inc.*, 2023 WL 3467787, at *3 (W.D. Tex. May 15, 2023) (Albright, J.), and "[r]ecognition must be given to the strong public policy favoring expeditious resolution of litigation," *Kahn v. GMC*, 889 F.2d 1078, 1080 (Fed. Cir. 1989). But unlike PTAB proceedings, which operate on a schedule dictated by statute, it is "hard to predict how long the appellate process will take, although from the available statistics, it is safe to assume that it will take at least a year." *IOENGINE, LLC v. PayPal Holdings, Inc.*, 2020 WL 6270776, at *7 (D. Del. Oct. 26, 2020). "[T]hat delay . . . would be unduly prejudicial to [VLSI's] interest in the timely enforcement of its patent rights." *Id.*; *see also Kirsch*, 2021 WL 4555804, at *2.

Intel argues that VLSI will not be prejudiced by this undeniable delay because VLSI is only seeking money damages, but that same argument has been rejected by this and other courts. *See Realtime Data*, 2017 WL 772654, at *4 ("The fact that Realtime is a non-practicing entity and is merely pursuing monetary damages would not preclude Realtime from experiencing prejudice . . . . Realtime has an interest in the timely enforcement of its patent rights."); *CloudofChange*, 2023 WL 3467787, at *3 (even if "seeking only monetary relief can diminish this

prejudice," the patentee "has an interest in the timely enforcement of its patent right" such that this factor "weighs against granting a stay").

Instead, courts routinely deny or dissolve stays during the pendency of an appeal because of an appeal's prejudicial duration, during which memories fade and witnesses may become harder to find. *See, e.g.*, *UNM Rainforest*, 2023 WL 2638273, at *2 (denying stay before claim construction had even occurred because "[a] stay may prejudice UNMRI by causing a loss of evidence as witnesses become unavailable and their memories fade" as the Federal Circuit appeal would likely take "at least a year" to conclude); *Papst Licensing GmbH & Co., KG v. Apple, Inc.*, 2018 WL 3656491, at *2 (E.D. Tex. Aug. 1, 2018) (rejecting argument that "Papst would suffer little prejudice because Papst is a patent licensing entity that does not compete with Samsung" and denying stay because "the additional prejudice that would be suffered if this case were to be stayed as to the '449 patent pending exhaustion of appeals of the other four patents is considerable"); *Network-1 Sec. Sols., Inc. v. Alcatel-Lucent USA Inc.*, 2015 WL 11439060, at *5 (E.D. Tex. Jan. 5, 2015) ("[T]he additional delay that would be incurred by maintaining the stay pending exhaustion of appeals is considerable."); *Smart Modular Techs., Inc. v. Netlist, Inc.*, 2016 WL 5159524, at *3 (E.D. Cal. Sept. 21, 2016) (same). That logic is especially pertinent here, where the Federal Circuit directed this Court to hold a trial on damages and adjudicate Intel's license defense, and three years have already elapsed since the first trial on VLSI's '373 Patent.

***Second***, Intel's stay request evinces a clear attempt to gain a tactical advantage, a factor that weighs heavily against a stay. *See, e.g.*, *Parthenon Unified Memory Architecture LLC v. HTC Corp. & HTC Am., Inc.*, 2016 WL 3365855, *2 (E.D. Tex. June 17, 2016) ("The Court finds this factor disfavors a stay because Defendants did not file their IPRs expeditiously and are most likely seeking a stay to gain a tactical advantage over Parthenon."). In *Parthenon*, Defendant's "motion

to stay rest[ed] partly on IPR petitions filed by third-party Samsung" "three months after the '1 year' period under which Defendants could have filed their own IPRs." *Id.* at \*3. The *Parthenon* court rejected the requested stay because "[g]ranting a stay based on IPRs filed outside of the 1 year period runs counter to the purpose of the post-grant review process." *Id.* Once IPRs were not instituted within the one-year period, "Parthenon was entitled to anticipate defending its patents in District Court." *Id.* (quoting H.R. Rep. No. 112-98, pt. 1, at 47–48 (2011)). Here, PQA filed its extortionate IPR over ***two years*** after VLSI filed this lawsuit, after Intel was time-barred from initiating an IPR, and after the jury in this Court rendered its verdict. After the PTAB declined to institute IPRs on Intel's IPR petitions, VLSI was entitled to and did defend its patents in this Court.

Intel's behavior also confirms that it is seeking a stay for an improper tactical advantage: to prevent this Court from entering a collectible judgment before any PTAB decision becomes final.[1] The Federal Circuit has conclusively held that, unlike a district court judgment, a "final written decision" is not a "final judgment" with preclusive effect ***unless and until*** it is affirmed by the Federal Circuit. *United Therapeutics Corp. v. Liquidia Techs., Inc.*, 74 F.4th 1360, 1372 (Fed. Cir. 2023) ("[W]e have previously held that an IPR decision does not have collateral estoppel effect until that decision is affirmed or the parties waive their appeal rights."); *XY, LLC v. Trans*

---

[1] Intel argues that it is not "seeking a stay to leapfrog VLSI in the 'race to finality,'" but only by claiming the IPR proceedings are already closer to finality. Mot. at 1. Intel's suggestion that this case (filed years before the IPR) is too far behind to "win the race" ignores key facts. First, while any appeal from this Court's damages retrial will raise narrow issues with which the Federal Circuit is already familiar, and is thus likely to be swift, the IPR appeal will require the Federal Circuit to consider highly technical arguments in the first instance. Indeed, the IPR appeal is at its most nascent stages and will not proceed on a fixed schedule; whereas this Court may quickly dispense with the few issues the Federal Circuit has explicitly remanded. Second, Intel glosses over the real possibility, discussed *infra*, that the Federal Circuit will reverse and remand the PTAB decision for further proceedings. In that scenario, this Court's judgment could easily be collectible before PTAB proceedings are completed, and any stay would only inject unnecessary delay. Regardless, this Court need not guess at how long certain proceedings might take; it can simply proceed with this case as the Federal Circuit directed and allow VLSI to timely enforce its patent.

*Ova Genetics, L.C*., 890 F.3d 1282, 1294 (Fed. Cir. 2018). But it is settled law that once this Court enters a "final damages judgment ending a suit," then "the cancellation of a patent's claims cannot be used to reopen" that judgment. *Fresenius USA, Inc. v. Baxter Int'l, Inc*., 721 F.3d 1330, 1340 (Fed. Cir. 2013). That is, the IPR appeal has bearing on this Court's proceedings only if it is finally concluded before this Court enters a collectible judgment. Intel's desire to avoid resolution of this case, and delay entry of a collectible judgment for its years of infringement, cannot justify a stay. Instead, Intel's improper tactical purpose provides an independent basis for denying Intel's motion.

Intel cites no case that has allowed a stay based upon such a belatedly filed IPR, particularly after the underlying infringement action has already been partially affirmed and remanded for limited further proceedings. Because a stay would work substantial undue prejudice on VLSI while providing unjust tactical advantage to Intel, the Court should deny Intel's motion.

**B.    The Advanced Stage Of These Proceedings Strongly Weighs Against A Stay**

The highly-advanced posture of this case strongly weighs against granting a stay. These proceedings are at a far more advanced stage than any that Intel cites in support of its motion, and are more advanced than the PTAB's interlocutory decision itself. Because "the Court and the parties have already expended significant resources" litigating this case through trial and appeal, "the principle of maximizing the use of judicial and litigant resources is best served by seeing the case through to its conclusion." *SenoRx, Inc. v. Hologic, Inc.*, 2013 WL 144255, at \*5 (D. Del. Jan. 11, 2013). Discovery is largely complete, and all that remains is a limited retrial on the issue of damages and potentially Intel's license defense. *Cf. Facet Techs., LLC v. LifeScan, Inc.*, 2024 WL 308294, at \*2 (C.D. Cal. Jan. 3, 2024) (despite limited "reopened discovery and vacat[ing] the pretrial and trial deadlines[,]" "this case is not in its early stages" and "the stage of the litigation disfavors a stay here"). Indeed, Intel's efforts to portray this case as comparable to its cited case

law are simply disingenuous—here, **_trial has already occurred and the Court's finding of infringement has been affirmed_**, making this case **_far more advanced_** than the PTAB's decision.

Intel's only real argument on this factor is that significant work remains ahead. But put simply, "the work behind the parties and Court far exceeds the work ahead in this action." _Facet_, 2024 WL 308294, at *2. Accordingly, this factor strongly disfavors a stay.

**C.      The Appeal Of The PTAB's Erroneous Decision Will Not Simplify The Issues**

As Intel implicitly concedes, the PTAB's final written decision will simplify the issues before this Court only if it is affirmed by the Federal Circuit. Mot. at 5; _Therapeutics_, 74 F.4th at 1372. Yet that mere possibility does not negate the powerful reasons to deny Intel's motion set forth above, including Intel's tactical games and the incredibly advanced stage of this case.

Further, as Intel conceded when it dropped all of its invalidity arguments against the '373 Patent on the eve of trial in this case, its case for invalidity is weak and likely to be reversed on appeal. _See Liqwd, Inc. v. L'Oreal USA, Inc._, 2018 WL 11189633, at *3 (D. Del. Dec. 12, 2018), _report and recommendation adopted_, 2019 WL 1873281 (D. Del. Apr. 26, 2019) (denying stay on patent held invalid in final written decision after conducting assessment of merits).

In addition to VLSI's arguments on the '373 Patent's merits, the PTAB's unprecedented decision to allow Intel to not only join but lead an untimely IPR that the Director explicitly determined was brought in an "abuse of the IPR process" creates substantial and additional grounds for reversal on appeal. Ex. B at 54. Because the IPR is procedurally invalid, in violation of VLSI's due process rights, and barred under 35 U.S.C. § 315(b), it should have been dismissed when Director Vidal ejected PQA from the proceedings, and presents unique facts making it much more likely to be reversed than a typical IPR decision.

Perhaps realizing this possibility and the corresponding weakness in its argument, Intel

contends that the stay will still simplify the issues by saving this Court from having to decide whether "'there are even claims left to litigate' at trial in view of the PTAB's final written decision." Mot. at 7 (quoting *Tinnus Enters., LLC v. Telebrands Corp.*, 2017 WL 379471, at *3 (E.D. Tex. Jan. 24, 2017)). But the Federal Circuit has already conclusively determined that final written decisions have no preclusive effect unless and until they are affirmed on appeal. *Therapeutics*, 74 F.4th at 1372. Thus, the key reasoning undergirding Intel's *Tinnus* case is contrary to law. *Cf. Tinnus*, 2017 WL 379471, at *3; *see also Liqwd*, 2018 WL 11189633, at *3 (denying stay and granting preliminary injunction on patent held invalid in IPR that was on appeal because "[t]he PTAB's . . . decision is not binding on this court" and the "infringement and invalidity claims could remain in the case if the Federal Circuit overrules the PTAB's decision"). In contrast to the PTAB's administrative decision, once this Article III Court enters final judgment following a brief retrial on damages, the Court's judgment will be binding and preclusive unless and until reversed on appeal.

Ultimately, the Federal Circuit implicitly rejected all of Intel's arguments here when it declined to comment on the IPRs either at oral argument or in its opinion. *E.g. VLSI Tech. LLC v. Intel Corp.*, 87 F.4th 1332 (Fed. Cir. 2023). Rather, well aware of the final written decisions, the Federal Circuit nonetheless chose not to stay this proceeding, and explicitly directed this Court to hold "a new trial limited to damages." *Id.* at 1335. This Court should not take a different course.

## IV.   CONCLUSION

Because each of the three factors disfavors a stay, including because a stay would unduly prejudice VLSI while needlessly postponing final adjudication of the limited issues on remand from the Federal Circuit, VLSI respectfully requests that the Court deny Intel's motion.

Dated: March 27, 2024

By:

       */s/ Andy Tindel*
J. Mark Mann (Texas Bar No. 12926150)
mark@themannfirm.com
G. Blake Thompson (Texas Bar No. 24042033)
blake@themannfirm.com
**MANN | TINDEL | THOMPSON**
300 W. Main Street
Henderson, TX 75652
Telephone: (903) 657-8540
Facsimile:  (903) 657-6003

Andy Tindel (Texas Bar No. 20054500)
atindel@andytindel.com
**MANN | TINDEL | THOMPSON**
112 E. Line Street, Suite 304
Tyler, Texas 75702
Telephone: (903) 596-0900
Facsimile:  (903) 596-0909

Morgan Chu (*pro hac vice*)
Benjamin W. Hattenbach  (*pro hac vice*)
Iian D. Jablon  (*pro hac vice*)
Alan J. Heinrich  (*pro hac vice*)
Ian Robert Washburn  (*pro hac vice*)
Amy E. Proctor  (*pro hac vice*)
Elizabeth C. Tuan  (*pro hac vice*)
Dominik Slusarczyk  (*pro hac vice*)
Charlotte J. Wen  (*pro hac vice*)
Benjamin Monnin  (*pro hac vice*)
Jordan Nafekh  (*pro hac vice*)
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, California   90067
Telephone: (310) 277-1010
Facsimile: (310) 203-7199
mchu@irell.com
bhattenbach@irell.com
ijablon@irell.com
aheinrich@irell.com
iwashburn@irell.com
aproctor@irell.com
etuan@irell.com
dslusarczyk@irell.com

cwen@irell.com
bmonnin@irell.com
jnafekh@irell.com

Babak Redjaian  (*pro hac vice*)
**IRELL & MANELLA LLP**
840 Newport Center Drive, Suite 400
Newport Beach, California   92660
Telephone: (949) 760-0991
Facsimile: (949) 760-5200
bredjaian@irell.com

*Attorneys for VLSI Technology LLC*

## **CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing instrument was served or delivered electronically via ECF, to all counsel of record, on March 27, 2024.

_____ */s/ Andy Tindel*_____
Andy Tindel